**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 16-CR-10343-ADB |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL L.  BABICH, et al | ) | |
| | ) | |
| | ) | |

### GOVERNMENT'S OPPOSITION TO DEFENDANTS' RENEWED MOTION FOR A BILL OF PARTICULARS

#### Introduction

Defendants Michael Babich, Michael Gurry, Richard Simon, Sunrise Lee, Joseph Rowan, and John Kapoor (collectively, the "Defendants") have moved for an order requiring the United States to file a bill of particulars for the Second Superseding Indictment (the "SSI" or "Indictment").   Defendant's Motion should be denied, as it seeks particulars that go beyond the requirements of Rule 7(f) of the Federal Rules of Criminal Procedure and established precedent. As shown below, the detailed Indictment, as well as the timing and substance of the discovery already provided, more than provide Defendants with sufficient information to prepare their defenses, avoid unfair surprise at trial, and protect against double jeopardy.

#### Background

The SSI alleges that Defendants violated the Racketeering Influenced and Corrupt Organizations Act ("RICO") by knowingly joining a conspiracy, the objective of which was to operate an enterprise—Insys—through a pattern of racketeering activity consisting of multiple acts of a specified crime or crimes, all in violation of 18 U.S.C. §1962(d).   The pattern of racketeering activity in this case was pled in a so-called <u>Glecier</u> format, under which an indictment is sufficient despite the fact that it does not list specific predicate acts in which defendant(s) are involved so long as the indictment alleges that defendants(s) knowingly joined a

conspiracy, the objective of which was to operate the enterprise through a pattern of racketeering activity consisting of multiple acts of a specified crime or crimes.  See United States v. Glecier, 923 F.2d 496, 500-01 (1991); see also Salinas v. United States, 552 U.S. 52, 63 (1997) (noting that unlike the general federal conspiracy statute, 18 U.S.C. §371, which requires that at least one of the conspirators have committed an act to effect the object of the conspiracy, "there is no requirement of some overt act or specific act" in §1962(d) and "[t]he RICO conspiracy provision, then, is even more comprehensive than the general conspiracy offense in §371"); United States v. Applins, 637 F.3d 59, 81 (2d Cir. 2011) (because a RICO conspiracy charge "need not specify the predicate or racketeering acts that the defendants agreed would be committed, it is sufficient to allege and prove that the defendants agreed to the commission of multiple violations of a specific statutory provision that qualifies as RICO racketeering activity") (internal citation omitted).  The narrative Indictment describes the alleged Glecier racketeering conspiracy, including the conspiratorial agreement, the types of racketeering activity, and the object of the alleged conspiracy.  SSI at ¶¶23-26.  Under Glecier, it is not necessary for an indictment charging a RICO conspiracy to allege specific racketeering acts.  923 F.2d at 500 ("Neither overt acts, nor specific predicate acts that the defendant agreed personally to commit, need be alleged or proved for a section 1962(d) offense.") (internal citations omitted).

Following the initial description of the Glecier racketeering conspiracy, the SSI describes the manner and means used to accomplish the alleged racketeering activity.  See SSI at ¶¶27- 62 (Manner and Means: Bribing Practitioners); SSI at ¶¶63-70 (Manner and Means: Fraudulent Prior Authorization Requests); and SSI at ¶¶71-73 (Manner and Means: Avoiding Detection).  While the RICO Conspiracy statute, 18 U.S.C. §1962(d), does not require proof of overt acts, the SSI gives specific, and at times extensive, examples of the conduct of each defendant in the conspiracy.  As a conspiracy, some of the allegations against each of the Defendants overlap;

however, the SSI identifies the role played by each Defendant with specificity.  Compare SSI at ¶¶48-49, 52, 54-55, 59-60, 63-65,  67, and 70-73 (references to Kapoor) with SSI at  ¶¶44-45, 48-49, 52,  54-60, 63-65, 67-73 (references to Babich); SSI at  ¶¶44, 48-50, 52, 54-56, 59-60, 63, and 71 (references to Simon); SSI at  ¶¶48-49, 52, 57-60, 63, 69, and 71 (references to Rowan); SSI at  ¶¶ 44, 48-49, 52,  56, 59-60, 63, and 71 (references to Lee); and SSI at ¶¶54, 63-65, and 67-70 (references to Gurry).

In addition to the SSI, each of the Defendants received comprehensive discovery following their initial arraignment in the case.  Specifically, Defendants were provided almost immediate access to documents and information far beyond that which they are entitled under the Federal Rules of Criminal Procedure and the Local Rules of this District.  As such, each of the Defendants have, for nearly a year, had access to Grand Jury materials including 55 transcripts from roughly 45 witnesses, as well as approximately 730 exhibits.  Defendants have also received more than 300 reports of interviews created by agents assigned to the prosecution team (e.g., Federal Bureau of Investigation 302 reports and formal memoranda of interviews). Further, in the course of discovery, acting upon a request of Defendants, the government has provided agent notes underlying the previously provided reports.

In addition to the investigative materials described above, the government provided Defendants with third-party materials in its possession, including all documents obtained from Insys, all medical records, all insurance records (including recorded calls), all Centers for Medicare and Medicaid Services records, and all Drug Enforcement Administration ("DEA") records in the possession of the United States Attorney's Office for the District of Massachusetts. Further, the government has provided Defendants with copies of investigative materials produced to this Office by United States Attorneys' Offices in Alabama, Arkansas, California, Connecticut, Florida, New Hampshire, New York, and Rhode Island.

With each production, the government has provided Defendants with indices that describe the type of materials produced and their corresponding bates ranges.  The indices and the searchable databases enable Defendants to conduct targeted searches pertaining to particular witnesses and issues.[1]

## Legal Principles

Rule 7(c)(1) of the Federal Rules of Criminal Procedure provides, in relevant part, that an indictment "must be a plain, concise and definite written statement of the essential facts constituting the offense charged . . ." Fed. R. Crim. P. 7(c)(1).  An indictment need not be "infinitely specific," nor identify all evidence the government will present at trial.  United States v. Sepulveda, 15 F.3d 1161, 1192 (1st Cir. 1993); see also United States v. Nabors, 45 F.3d 238, 240 (8th Cir. 1995) ("[T]e government does not have to name the other members of the alleged enterprise until trial.  There being no equivalent in criminal procedure to the motion for summary judgment that may be made in a civil case, see Fed. R. Civ .P. 56(c), the government has no duty to reveal all of its proof before trial.").  To the contrary, an indictment is sufficiently particular if it "elucidates the elements of the crime, enlightens a defendant as to the nature of the charge against which she must defend, and enables her to plead double jeopardy in bar of future prosecution of the same offense."  Sepulveda, 15 F.3d at 1192 (citing Hamling v. United States, 418 U.S.  87, 117 (1974)).  Defendants therefore have the burden of showing that the absence of a bill of particulars will lead to prejudicial surprise or the obviation of opportunities for meaningful defense preparation.  See United States v. Perry, Criminal No. 12-10293-DJC, 2013 WL 3158078, at *5 (D. Mass. June 19, 2013) (Dein, M.J.).  That is so because where the

---

[1] Defendants assert that the volume of discovery provided necessitates a bill of particulars, see Def. Mem.  at 9; while at the same time seeking an unprecedented volume of discovery, see Defendants' Motion for an Order Requiring The Government To Produce Exculpatory Material In The Possession Of Sister USAOs and Federal Agencies (ECF 311); Defendant's Motion For An Order Requiring The Government To Produce Certain Patient Records (ECF 313).

indictment provides the sought after details, or where the information necessary for the preparation of the defense can be obtained through other means, such as discovery, a bill of particulars is unnecessary and unwarranted.  See, e.g., Sepulveda, 15 F.3d at 1193.

Indeed, the right to meaningful defense preparation does not require the government to disclose all of the evidence it will present at trial.  "[B]ecause a bill of particulars strictly confines the government's proof at trial within its four corners… judges are reluctant to order particulars which, in their requirement for detail or otherwise, amount to the imposition of a straitjacket on the prosecution."  United States v. Ackerly, Criminal No. 16-10233-RGS, 2017 WL 5484673, at *3 (D. Mass. Nov. 15, 2017) (citing United States v. Smith, 776 F.2d 1104, 1111 (3d Cir.  1985)).  Rule 7(f) is "not a tool of discovery, and its purpose is not to obtain disclosure of evidence, witnesses to be offered at trial, or the government's legal theories." United States v.  Stryker Biotech, LLC, Criminal No. 09-10330-GAO, 2010 WL 2900684, *2 (D. Mass. July 21, 2010) (Dein, M.J.); see also United States v. Allen, Criminal No. 09-10148-JLT2009 WL 2496472, at *1 (D. Mass. 2009) (Bowler, M.J.) ("A defendant is not entitled to recover evidentiary matters by filing a motion for a bill of particulars.").   A bill of particulars, in other words, "is not a general investigative tool, a discovery device, or a means to compel the government to disclose evidence or witnesses to be offered prior to trial."  United States v. Nunez, Criminal No. 00-121-RCC, 2001 WL 917098, at *5 (S.D.N.Y. Feb. 1, 2001).  Nor should a bill of particulars be granted where the consequence would be to restrict unduly the government's ability to present its case at trial.  See United States v. Gibson, 175 F. Supp. 2d 532, 536 (S.D.N.Y. 2001) (rejecting request in securities fraud case for names of investors to whom misrepresentations were made); United States v. Feola, 651 F. Supp. 1068, 1132 (S.D.N.Y. 1987) (explaining that because a bill of particulars "confines the Government's proof

to particulars furnished, requests for a bill of particulars should not be granted where the consequence would be to restrict unduly the Government's ability to present its case").

## Argument

Despite the detailed narrative Indictment and the extensive discovery provided by the government in this case, Defendants seek a bill of particulars related to 12 separate requests.  The 12 defense requests are divided into four categories: (A) Alleged Honest Services Fraud Scheme, (B) Alleged Insurance Fraud Scheme, (C) Alleged Illicit Distribution Scheme, and (D) Venue Allegations.  That motion should be denied for the reasons set forth below.

### 1. Request A.1

Defendants first request particulars identifying all forms of bribes or kickbacks the government intends to introduce at trial.  See Def. Mem. at 10; United States October 18, 2018 written response to Defendants' request for additional particulars ("October 18th letter") at 3.  This request should be denied.

The SSI, together with the governments October 18th letter, identify four forms of bribes and kickbacks allegedly offered to the co-conspirator practitioners in this case.  They are:

    a.  bribes and kickbacks disguised as speaker program honoraria, SSI at ¶29 and ¶¶ 46-52);

    b.  services of Insys employees used as bribes and kickbacks, SSI at ¶29 and  ¶¶53-58;

    c.  sham dinners that occurred in Massachusetts, October 18th Letter at 3-4;

    d.  agreements to pay bribes in the form of volume discounts to C&R pharmacy in Alabama, Benzer Pharmacy in Michigan, and United Pharmacy in Arkansas, October 18th Letter at 3-4.

In addition, while the SSI alleges a nationwide conspiracy, the government has identified 13 alleged co-conspirator practitioners.   SSI at ¶¶35-42; Government's 28-Day letter, dated September 25, 2018 ("28-Day Letter") at ¶4.E.  The government has provided the entire grand

jury presentation, expert disclosure, responded in detail to multiple defense motions, all email, and reports of interview regarding all 13 alleged co-conspirators in the government's possession. The Indictment, as well as the substance and timing of discovery, eliminate the risk of unfair surprise at trial and provide Defendants with adequate information necessary to prepare a defense in this case.

### 2. Request A.2.

Defendants next request particulars identifying all speaker program events that the government intends to allege were shams. This request should be denied.

In its October 18th letter, the government informed Defendants that sham dinners that occurred here in Massachusetts were overt acts in furtherance of the alleged conspiracy. October 18th letter at 4. Defendants were provided discovery at the time of arraignment, which included the testimony of an Insys sales employee who scheduled and attended sham speaking programs in Massachusetts for practitioners identified as co-conspirators in the case. Receipts for these dinners, as well as company "sign-in" forms were marked as exhibits, reviewed by the witness during her testimony, and provided to Defendants in discovery.

The October 18th letter also informed Defendants that the government reserves the right to introduce evidence of uncharged crimes at trial. United States v. Ramirez-Rivera, 800 F.3d 1, 44 (1st Cir. 2015); United States v. DeCologero, 530 F.3d 36, 54 (1st Cir. 2008); United States v. Weiner, 3 F.3d 17, 22 (1st Cir. 1993) ("[D]espite the dismissal of the separate counts, the jury was entitled to consider this evidence [underlying those counts] in support of the RICO counts"). The government in this case has provided such notice, in part, because while each of the eight practitioners identified in the SSI were paid bribes disguised as honoraria for numerous speaker programs, some of those programs never occurred, or were mere social events for office staff and friends of the respective practitioner.

In many cases, co-conspirators were paid honoraria bribes for more than one engagement per week over extended periods of time.  The statements and testimony of Insys employees, as well as co-conspirator practitioners, provided to Defendants in discovery establish that witnesses have difficulty providing the specifics of each speaker program.   Unlike United States v. Davidoff, 845 F.2d 1151, 1154 (2d. Cir. 1988), a case cited by Defendants, the government in this case has provided all schedules, speaker honoraria payments, sworn testimony, email, sign-in sheets, receipts, program evaluations, and reports of interview with attendees in its possession regarding each of the eight alleged co-conspirator practitioners identified in the SSI.  Moreover, in Davidoff, the indictment alleged extortion aimed at one company while the trial evidence showed extortion aimed at different companies, which is not the case here.  See United States v. Bonventre, 646 Fed. Appx. 73, 79 (2d Cir. 2016) (affirming denial of bill of particulars and distinguishing Davidoff on this basis), cert. denied, 137 S. Ct. 676 (2017).  Defendants thus are plainly in a position to test the government's allegations at trial, including the memory and accuracy of prospective witnesses.

The Indictment, as well as the substance and timing of discovery, eliminate the risk of unfair surprise at trial and provide Defendants with adequate information necessary to prepare a defense to the government's allegations regarding sham dinners.  See United States v. Cadden, Criminal No. 14-10363-RGS, 2015 WL 13683815, at *2 (D. Mass. Nov. 10, 2015) (Boal, M.J.) ("A bill of particulars is not designed to be a discovery device or to permit defendants to preview the evidence or the government's theory of the case)  (collecting cases); United States v.  Giese, 597 F.2d 1170, 1181 (9th Cir. 1979) (holding that a bill of particulars is not to be used as a discovery device, with a defendant interrogating the government as to the precise details of every alleged act).

### 3.  Requests A.3 and A.4.

Defendants request particulars identifying (a) "office staff" whose salaries the government intends to allege at trial that Insys paid as a bribe or kickback,[2] (b) Insys employees whom the government intends to allege at trial performed "administrative tasks" as a bribe or kickback, and (c) the nature of the administrative tasks that the government claims were bribes or kickbacks.  This request should be denied.

The SSI identifies the services of three Insys employees that the government alleges were paid as bribes to three of the eight co-conspirator practitioners identified in the Indictment.  SSI at ¶¶56-58.  Further, in its October 18th letter, the government stated that sales representatives were instructed to provide administrative assistance filling our prior authorization paperwork.  October 18th letter at 3.

It is settled that a bill of particulars is intended to give the defendant only that minimum amount of information necessary to permit the defendant to conduct his own investigation.  See United States v. Smith, 776 F.2d 1104, 1111 (3d Cir. 1985).  As described above, the government has identified 13 alleged co-conspirator practitioners.  See SSI at ¶¶35-42; Government's 28-Day letter at ¶4.E.  The government has provided sworn testimony, email, and reports of interview demonstrating that sales representatives received direction, and at times carried out their instructions, to fill out prior authorization paperwork, including "opt-in" forms, for the 13 co-conspirator practitioners identified in the government's 28-day letter.  As such, Defendants have been provided adequate information necessary to eliminate the risk of unfair surprise at trial and provide Defendants with adequate information necessary to prepare a

---

[2] The government has identified more than office staff.  Specifically, the government has identified the services of employees paid by Insys who worked inside the medical office of prescribing practitioners and related pharmacies as bribes and kickbacks.  SSI at ¶¶53-58.

defense in this case to allegations that Defendants used the services of Insys employees as bribes and kickbacks.

### 4. Requests A.5, A.6. and A.7.

Defendants request particulars identifying the manner and means, patients, and legal theories it intends to present at trial regarding honest services mail and wire fraud. This request should be denied.

The Indictment, which alleges a <u>Glecier</u> racketeering conspiracy, identifies five types of racketeering activity through which Defendants agreed to conduct and participate in the affairs of the enterprise, including both honest services mail fraud and honest services wire fraud. SSI at ¶24(b) and (e). In a section entitled "Demand: The Role of the Practitioner," the Indictment identifies the duty owed by practitioners to their patients. SSI at ¶¶6-7. In a section entitled, "Manner and Means: Bribing Practitioners," the SSI states that Defendants provided bribes and kickbacks "in exchange for the practitioners: (1) increasing the number of new Subsys prescriptions; and (2) increasing the dosage and number of units for new and existing prescriptions." SSI at ¶27. The SSI also gives examples of the bribes paid. SSI at ¶¶50-51 and ¶¶56-58.

The SSI explicitly states that bribes and kickbacks paid to practitioners were the manner and means by which Defendants sought to accomplish each of the alleged racketeering activities, including both forms of honest services fraud. SSI at ¶27. Similarly, the SSI states that the "defendants used bribes and kickbacks to: … b. deprive patients of the honest services of their practitioners." SSI at ¶30(b).

Courts have recognized that a bill of particulars should not be used to conduct discovery of the government's theory of a case. <u>See</u> <u>Stryker Biotech</u>, Criminal No. 09-10330-GAO, 2010 WL 2900684, *2; <u>United States v. Mannino</u>, 480 F. Supp. 1182, 1185 (S.D.N.Y. 1979).

Notably, Defendants fail to cite a case requiring the government to list its legal theories and arguments in a bill of particulars. The SSI explicitly informs Defendants of the government's allegations regarding honest services fraud. As such, the Indictment eliminates the risk of unfair surprise at trial and provides Defendants with adequate information necessary to prepare a defense in this case.

### 5. Request A.7.

Defendants' request particulars identifying the specific patients that the government intends to allege at trial were tangibly harmed by the alleged honest services fraud scheme. This request should be denied.

The Indictment alleges a RICO conspiracy and, as such, the government does not have to establish that the alleged scheme was successful or resulted in any actual harm to any victim. See United States v. Morosco, 822 F.3d 1, 9 n.2 (1st Cir.), cert. denied, 137 S. Ct. 251, 137 S. Ct. 403 (2016). Nor is the government required to prove that Defendants knew the identity of their victims. See United States v. Tum, 707 F.3d 68, 75 (1st Cir. 2013). In support of its request, Defendants rely upon two cases, United States v. Davidoff, and United States v. Butt, 745 F. Supp. 34, 41 (D. Mass. 1990). As explained in Section 2 (A.2.) above, Davidoff is inapposite because, unlike here, the Second Circuit held in that case that the denial of the defendant's request for a bill of particulars was reversible error in which the defendant had been indicted for extortionate schemes directed at one company in a RICO prosecution, but was confronted at trial with evidence of extortions aimed at entirely different companies. Davidoff, 845 F.2d at 1154. The Second Circuit cautioned, however, that "[w]e do not mean to imply that even in a RICO case the prosecution must always disclose in advance of trial every act it will prove that may violate some criminal statute." Id.

Butt too, when read in context, is inapposite.  First, the section of the Butt opinion regarding a bill of particulars offers no insight into the district court's decision-making; rather, Judge Young simply wrote that after a hearing, he would modify the order of the Magistrate. Butt, 745 F. Supp. at 41.  Furthermore, Judge Young did not grant a bill of particulars, but instead directed the government to provide the names and addresses twenty days before trial.  Id.

Accordingly, Defendants' request for the names of patients is not an effort to understand the charge against them, but rather an effort to obtain a court order requiring the government to produce a list of its witnesses at trial.  The government intends to provide a witness list as required by the Pre-Trial Order in this case.  See Pretrial Order, dated January 24, 2018 (ECF 277).

### 6.  Request "B."

Defendants request particulars identifying "[*a]ny* allegedly false, misleading, or otherwise fraudulent communications between Insys and insurance companies or pharmacy benefit managers that the government intends to allege at trial, other than the 154 telephone calls listed in its disclosure of August 21, 2018."  Defendant's Motion at 2 (emphasis added).  This request should be denied.

The government's October 18th letter informed the Defendants that it anticipates relying upon a list of approximately 150 calls provided to the defense as part of a bill of particulars for the First Superseding Indictment.  Defendants take issue with the government's notice that it reserves the right to amend the list.  Demands for exhaustive lists of, and specific detail regarding, every false statement that the government may use in proving a conspiracy or scheme to defraud are consistently and routinely rejected as exceeding the requirements of Rule 7(f). See, e.g., United States v. Godfrey, Criminal No. 11-10279-RWZ, 2013 WL 1414887, at *1 (D. Mass. Apr. 5, 2013); United States v. Lacerda, Criminal  No. 12-303 (NLH/AMD), 2013 WL

3146835, at *15 (D.N.J. June 19, 2013) (A "request to compel the Government to identify any and all false and fraudulent statements made as part of the alleged criminal scheme is beyond the proper scope of a bill of particulars.") (citation and internal quotation marks omitted); United States v. Zoernack, Criminal No. 04-868 (LTS), 2005 WL 1837962, at *4 (S.D.N.Y. Aug. 2, 2005).

The Indictment, as well as the substance and timing of discovery, eliminate the risk of unfair surprise at trial and provide Defendants with adequate information necessary to prepare a defense to the allegations of fraud in this case.

### 7.  Request C.1

Defendants request particulars identifying, "the acts in violation of the Controlled Substances Act that the government intends to allege at trial, including the specific illicit Subsys prescriptions, if any, that the government intends to allege at trial are attributable to the charged conduct."  Defendants' Motion at 2.  This request should be denied.

The Indictment, which is pled in the Glecier format, identifies five types of racketeering activity through which the Defendants agreed to conduct and participate in the affairs of the enterprise, including offenses involving the distribution of controlled substances in violation of the Controlled Substances Act ("CSA"), 21 U.S.C. § 841(a)(1).  SSI at ¶24(c).  In a section entitled "Demand: The Role of the Practitioner," the Indictment asserts, "a prescription for a controlled substance must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice."  SSI at ¶6.  Further, the Indictment alleges that Subsys could only be prescribed by a licensed medical practitioner in the usual course of professional practice, for a legitimate medical purpose.  Id.   In a section entitled, "Manner and Means: Bribing Practitioners," the SSI states that the Defendants provided bribes and kickbacks "in exchange for the practitioners: (1) increasing the number of new Subsys

prescriptions; and (2) increasing the dosage and number of units for new and existing prescriptions." SSI at ¶27. The SSI also gives examples of the bribes paid. SSI at ¶¶50-51 and ¶¶56-58.

The SSI explicitly states that bribes and kickbacks paid to practitioners were a manner and means by which the Defendants sought to accomplish each of the alleged racketeering activities, including illegal distribution of fentanyl. SSI at ¶27. Similarly, the SSI states that the "defendants used bribes and kickbacks to: … c. cause practitioners to prescribe Subsys without regard to the medical condition affecting individual patients, and therefore, outside the usual course of professional practice and not for a legitimate medical purpose." SSI at ¶30(c).

Accordingly, Defendants request for "the acts" in violation of the CSA is, in effect, a request for the government to list every bribe or kickback paid during the alleged conspiracy. That request here is not supported by established precedent. See United States v. Reichel, Criminal No. 15-0324-DPW, Dkt. No. 21 (D. Mass. Feb. 10, 2016) (Boal, M.J.) (listing cases). Here, the SSI explicitly informs Defendants of the government's allegations regarding illegal distribution of fentanyl. As such, the Indictment eliminates the risk of unfair surprise at trial and provides the Defendants with adequate information necessary to prepare a defense.

**8. Request C.2.**

Defendants' request particulars identifying the specific patients that the government intends to allege at trial were tangibly harmed as a result of being prescribed Subsys. This request should be denied for the same reasons set forth above with respect to request A.7.

**9. Request C.3.**

Defendants request particulars identifying the manner and means by which Defendants or their alleged co-conspirators allegedly sought to impair, impede, or obstruct the DEA, other than the allegations in SSI paragraphs 72 and 73. This request should be denied.

As described above, the government focused its allegations on 13 alleged co-conspirator

practitioners.  SSI at ¶¶35-42; Government's 28-Day letter, dated September 25, 2018 ("28-Day

Letter") at ¶4.E.  The government has provided the government's entire grand jury presentation,

all email, and reports of interview regarding all 13 alleged co-conspirators in the government's

possession.  The Indictment, as well as the substance and timing of discovery, eliminate the risk

of unfair surprise at trial and provide Defendants with adequate information necessary to prepare

a defense in this case.

### 10.  Request D.1.

Defendants request particulars identifying the acts in Massachusetts that the government

intends to allege at trial as being in furtherance of the alleged RICO.  Defendants' Motion at 2.

This request should be denied.

It is settled that "in a conspiracy case venue is proper in any district in which an act in

furtherance of the charged conspiracy has taken place, even if a particular coconspirator was not

himself physically present in that district." United States v. Santiago, 83 F.3d 20, 25 (1st Cir.

1996).  It is also long settled that specific acts in the district of prosecution need not be unlawful

to constitute overt acts giving rise to venue in the District of Massachusetts.  See United States v.

Medina, 761 F.2d 12, 15 (1st Cir. 1985).  Moreover, venue for RICO offenses lies in any district

where the RICO enterprise conducted business.  See United States v.  Pepe, 747 F.2d 632, 664

n.56 (11th Cir. 1984); United States v. Aiken, 76 F. Supp. 2d 1346, 1349-51 (S.D. Fla. 1999)

(venue appropriate where, "the activities of the enterprise are alleged to touch a number of

districts across the United States, including [the District where the case prosecuted]."); United

States v.  Napolitano, 552 F. Supp. 465, 482 (S.D.N.Y. 1982) (denying motion to transfer venue

on ground that certain acts took place outside the Southern District because "[t]he government

alleges that the criminal enterprise which the indictment charges, operated in this district").

Here, the Indictment alleges that Insys operated in interstate commerce, including in the District of Massachusetts.  SSI at ¶1.  The Indictment also alleges that he Defendants sought to arrange, coordinate, and pay bribes and kickbacks to targeted practitioners throughout the United States, including in the District of Massachusetts.  SSI at ¶32.  The government's letter of October 18, 2018, informed the Defendants:

> We note that this office has previously provided discovery that includes evidence that Insys sold Subsys in Massachusetts, that Insys employees worked in the District, and faxed and emailed information to corporate headquarters from the District.  Further, the government has provided sworn testimony from former Insys employees, as well as dinner receipts, of fraudulent speaker programs that occurred in this District.  The government has also provided sworn testimony of a former Insys sales manager assigned to the District of Massachusetts, who described (a) instruction to have sales reps fill our prior authorizations for Subsys on behalf of the practitioner, (b) pressure to sell Subsys for non-cancer related pain, and (c) a process, announced by the company, to remove from the speaker program those practitioners that were not writing adequate numbers of prescriptions for Subsys.

October 18th letter at 4.

The Indictment, the substance and timing of discovery, as well as the government's October 18, 2018 letter eliminate the risk of unfair surprise at trial and provide Defendants with adequate information necessary to address venue in this case.[3]

---

[3] If Defendants intend to seek a change a venue, the United States requests they be ordered to do so prior to trial.

## Conclusion

WHEREFORE, for the reasons set forth above, this Court should deny Defendants'

Renewed Motion for a Bill of Particulars.

Date:   October 30, 2018                                Respectfully submitted,

                                                        ANDREW E.  LELLING
                                                        United States Attorney

                                     By:     /s David G. Lazarus_____
                                             DAVID G. LAZARUS (BBO 624907)
                                             K.  NATHANIEL YEAGER (BBO 630992)
                                             Assistant U.S.  Attorneys
                                             One Courthouse Way, Ste.  9200
                                             Boston, MA  02210
                                             (617) 748-3100
                                             nathaniel.yeager@usdoj.gov
                                             david.lazarus2@usdoj.gov


## Certificate of Service

I, David G. Lazarus, hereby certify that the foregoing document filed through the ECF system will be sent electronically to counsel for the defendants.

                                     By:     /s/ David G. Lazarus_____
                                             DAVID G. LAZARUS
                                             Assistant United States Attorney