# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

UNITED STATES

v.

MICHAEL L. BABICH et al.,

Defendants.

Criminal No. 16-CR-10343-ADB

## **DEFENDANTS' PROPOSED JURY INSTRUCTIONS**

Pursuant to Federal Rule of Criminal Procedure 30(a) and the Court's scheduling order, the undersigned Defendants respectfully submit the following proposed jury instructions.

Defendants submit their proposed jury instructions in three parts:

Part I contains Defendants' proposed preliminary instructions, to be given at the beginning of trial.

Part II contains Defendants' proposed instructions for during trial.

Part III contains Defendants' proposed final instructions on matters of evidence, the substantive law regarding the offense and predicate acts alleged in the indictment, and the jury's deliberations.

Defendants reserve their right to supplement, amend, and withdraw these proposed jury instructions based on the requests, if any, filed by the government, the ruling of this Court on Defendants' pending motion to dismiss and motions *in limine*, other rulings of the Court before or during trial, the evidence admitted at trial, and for any other reason.

Dated: December 5, 2018

/s/ Joseph Sedwick Sollers
Joseph Sedwick Sollers, III
(admitted *pro hac vice*)
wsollers@kslaw.com
Mark Jensen (admitted *pro hac vice*)
mjensen@kslaw.com
King & Spalding LLP
1700 Pennsylvania Avenue NW
Washington, D.C. 20006
Telephone: (202) 737-0500

William H. Kettlewell (BBO# 270320)
bill.kettlewell@hoganlovells.com
Hogan Lovells US LLP
100 High Street
Boston, MA 02110
Telephone: (617) 371-1037

*Attorneys for Michael Babich*

/s/ Steven A. Tyrrell
Steven A. Tyrrell (admitted *pro hac vice*)
steven.tyrrell@weil.com
Patrick J. O'Toole, Jr. (BBO# 559267)
patrick.otoole@weil.com
Weil, Gotshal & Manges LLP
2001 M Street NW
Washington, D.C. 20036
Telephone: (202) 682-7213

*Attorneys for Richard Simon*

/s/ Michael Kendall
Michael Kendall (BBO# 544866)
michael.kendall@whitecase.com
Alexandra Gliga (BBO# 694959)
alexandra.gliga@whitecase.com
White & Case LLP
75 State Street
Boston, MA 02109
Telephone: (617) 939-9310

*Attorneys for Joseph Rowan*

Respectfully submitted,

/s/ Tracer A. Miner
Tracy A. Miner (BBO# 547137)
tminer@demeollp.com
Megan Siddall (BBO# 568979)
msiddall@demeollp.com
Demeo LLP
200 State Street
Boston, MA 02109
Telephone: (617) 263-2600

*Attorneys for Michael Gurry*

/s/ Peter C. Horstmann
Peter C. Horstmann (BBO# 556377)
pete@horstmannlaw.com
Law Offices of Peter Charles Horstmann
450 Lexington Street, Suite 101
Newton, MA 02466
Telephone: (617) 723-1980

*Attorney for Sunrise Lee*

/s/ Kosta S. Stojilkovic
Beth A. Wilkinson (*admitted pro hac vice*)
bwilkinson@wilkinsonwalsh.com
Alexandra M. Walsh (*admitted pro hac vice*)
awalsh@wilkinsonwalsh.com
Kosta S. Stojilkovic (admitted *pro hac vice*)
kstojilkovic@wilkinsonwalsh.com
Wilkinson Walsh + Eskovitz LLP
2001 M Street NW
Washington, D.C. 20036
Telephone: (202) 847-4000

Brien T. O'Connor (BBO# 546767)
brien.o'connor@ropesgray.com
Aaron M. Katz (BBO# 662457)
aaron.katz@ropesgray.com
Ropes & Gray LLP
Prudential Tower 800 Boylston Street
Boston, MA 02199
Telephone: (617) 951-7000

*Attorneys for Dr. John Kapoor*

2

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document will be served on counsel for all parties of record through the ECF system.

/s/ Kosta S. Stojilkovic
Kosta S. Stojilkovic
Counsel for Dr. John Kapoor

# TABLE OF CONTENTS

I.    **PRELIMINARY INSTRUCTIONS** ................................................................ **7**

Duties of the Jury ............................................................................................ 7

Juror Conduct ................................................................................................. 8

Nature of the Indictment; Presumption of Innocence ..................................... 11

Separate Consideration of Multiple Defendants ............................................. 14

Impermissible to Infer Participation from Mere Presence or Association ........ 15

Preliminary Statement of Elements of Crime ................................................. 16

Off-Label Use of Prescription Drugs .............................................................. 19

Speaker Program; Patient Support Program ................................................... 20

Bribes and Kickbacks Insufficient to Convict ................................................ 21

Direct Shipping .............................................................................................. 22

Not Here To Decide Or Opine on Policy ........................................................ 23

Evidence; Objections; Rulings; Bench Conferences ....................................... 24

Credibility of Witnesses.................................................................................. 26

Notetaking ...................................................................................................... 27

Outline of the Trial......................................................................................... 28

Conduct of Counsel........................................................................................ 30

II.    **INSTRUCTIONS DURING TRIAL** ...................................................... **31**

First Recess .................................................................................................... 31

Publicity—Reminder ...................................................................................... 32

Evidence Admitted As to Certain Defendant(s) (If Applicable) ...................... 33

Reference to Anti-Kickback Statute (If Applicable) ........................................ 34

Reference to Return on Investment or "ROI" (If Applicable)........................... 35

III.A   **FINAL INSTRUCTIONS:  GENERAL CONSIDERATIONS** ................................ **36**

Juror Attentiveness......................................................................................... 36

Duty of the Jury to Find Facts and Follow Law .............................................. 37

Presumption of Innocence; Proof Beyond a Reasonable Doubt....................... 38

Separate Consideration of Multiple Defendants .............................................. 40

The Government As a Party ............................................................................. 41

Conduct of Counsel........................................................................................ 42

III.B   **FINAL INSTRUCTIONS: MATTERS OF EVIDENCE** .............................................. **43**

What is Evidence; Inferences........................................................................... 43

Kinds of Evidence: Direct and Circumstantial ................................................ 44

Credibility of Witnesses ................................................................................... 45

What is Not Evidence ...................................................................................... 46

Improper Considerations .................................................................................. 48

Defendants' Constitutional Right Not to Testify ............................................. 49

Impermissible to Infer Participation  from Mere Presence or Association ...... 50

Executive or Managerial Role ......................................................................... 51

Weighing Testimony of an Expert Witness ..................................................... 52

Cautionary and Limiting Instructions as to Particular Kinds of Evidence ...... 53

Caution as to Cooperating Witnesses .............................................................. 54

Bias or Hostility .............................................................................................. 57

Testimony of Law Enforcement Or Government Official ................................ 58

Impeachment By Prior Inconsistent Statement ............................................... 59

Hearsay Testimony (If Applicable) ................................................................. 60

Missing Witness (If Applicable) ...................................................................... 61

Character Evidence (If Applicable) .................................................................. 62

Statements by Defendant(s) (If Applicable) .................................................... 63

Cross-Examination of Witness on Defendant's Character (If Applicable) ...... 64

Opinion as to Character of Witness to Impeach Witness's Credibility (If
    Applicable) ................................................................................................. 65

Stipulations (If Applicable) ............................................................................. 66

Charts and Summaries—Admitted As Evidence (If Applicable) .................... 67

Charts and Summaries—Not Admitted As Evidence (If Applicable) ............. 68

Markings on Exhibits ...................................................................................... 69

**III.C.  FINAL INSTRUCTIONS: ELEMENTS OF THE OFFENSE ................................. 70**

Overview of the Indictment ............................................................................. 70

The RICO Conspiracy Statute ......................................................................... 71

Prejudice from the Word "Racketeering" ........................................................ 72

Elements of the Offense ................................................................................... 73

First Element: Existence of the Enteprise ....................................................... 74

Second Element: Effect on Interstate or Foreign Commerce .......................... 75

Third Element: Association or Employment .................................................... 76

Fourth Element: Conspiracy To Violate RICO ............................................... 78

Fifth Element: Membership in the Conspiracy ................................................ 80

Sixth Element: Participation in Conduct or Affairs ......................................... 82

Seventh Element: Agreement to Commit Predicate Acts ................................. 83

First Racketeering Act: Illegal Distribution of A Controlled Substance .......................... 85

Second and Third Racketeering Acts: Honest Services Mail and Wire Fraud ............................................................................................................ 87

Fourth Racketeering Act: Mail Fraud .............................................................. 91

Fifth Racketeering Act: Wire Fraud ................................................................ 93

Good Faith .......................................................................................................... 95

Meaning of "Usual Course of Professional Practice" and "Legitimate Medical Purpose".................................................................................... 97

Fraud By Omission (If Applicable) ................................................................ 100

Off-Label Use of Prescription Drugs............................................................. 102

Speaker Programs ............................................................................................ 104

Return on Investment or "ROI" ..................................................................... 105

Patient Support Programs .............................................................................. 106

Bribes and Kickbacks Insufficient To Convict............................................ 107

Direct Shipping ................................................................................................ 108

Violation of Company Policy Or Industry Code  is Not a Crime (If Applicable)....................................................................................... 109

Venue .................................................................................................................. 110

**III.D.  DELIBERATIONS AND VERDICT** ........................................................ **112**

Foreperson's Role; Unanmity ........................................................................ 112

Consideration of Evidence.............................................................................. 113

Reaching Agreement........................................................................................ 114

Return of Verdict Form.................................................................................... 115

Communications With Court .......................................................................... 116

Each Defendant Separately; Unanimity........................................................ 117

# I.    PRELIMINARY INSTRUCTIONS

## Defendants' Proposed Preliminary Instruction No. 1

## DUTIES OF THE JURY[1]

Ladies and gentlemen:  You now are the jury in this case, and I want to take a few minutes to tell you something about your duties as jurors and to give you some instructions.  At the end of the trial I will give you more detailed instructions.  Those instructions will control your deliberations.

It will be your duty to decide from the evidence what the facts are.  You, and you alone, are the judges of the facts.  You will hear the evidence, decide what the facts are, and then apply those facts to the law I give to you.  That is how you will reach your verdict. In doing so you must follow that law whether you agree with it or not.  The evidence will consist of the testimony of witnesses, documents and other things received into evidence as exhibits, and any facts on which the lawyers agree or which I may instruct you to accept.

You should not take anything I may say or do during the trial as indicating what I think of the believability or significance of the evidence or what your verdict should be.

---

[1] First Circuit Pattern Instruction 1.01 (Updated 10/5/2012).

**Defendants' Proposed Preliminary Instruction No. 2**

**JUROR CONDUCT[2]**

To ensure fairness, you as jurors must obey the following rules:

*First*, do not talk among yourselves about this case, or about anyone involved with it, until the end of the case when you go to the jury room to decide on your verdict.

*Second*, do not talk with anyone about this case, or about anyone who has anything to do with it, until the trial has ended and you have been discharged as jurors. "Anyone" includes members of your family and your friends. You may tell them that you are a juror, but do not tell them anything about the case until after you have been discharged by me.

*Third*, do not let anyone talk to you about the case or about anyone who has anything to do with it. That includes your family and friends. If you discuss the case with someone other than the other jurors during deliberations, it could create the perception that you may be influenced in your verdict by their opinions. That would not be fair to the parties and it may result in the verdict being thrown out and the case having to be retried. If someone should try to talk to you, please report it to me immediately.

*Fourth*, during the trial do not talk with or speak to any of the parties, lawyers or witnesses involved in this case—you should not even engage in small talk with any of them. It is important not only that you do justice in this case, but that you also give the appearance of doing justice. If a person from one side of the lawsuit sees you talking to a person from the other side—even if it is simply to pass the time of day—an unwarranted and unnecessary suspicion

---

[2] Adapted from First Circuit Pattern Instruction 1.07 (Updated 4/29/13); Eighth Circuit Pattern Instruction 1.08 (2017); O'Malley et al., *Federal Jury Practice and Instructions (Crim.)* § 10:01 (2018); Sand et al., *Modern Federal Jury Instructions (Crim.)*, Inst. 2-14 (2018) (Publicity–Preliminary Statement).

about your fairness might be aroused.  If any lawyer, party, or witness does not speak to you when you pass in the hall, ride the elevator or the like, it is because they are not supposed to talk or visit with you.  That lawyer, party, or witness lawyer is not being rude, cold, or unfriendly, but is simply doing what I have ordered all of the lawyers to do in this case.

*Fifth*, do not read any news stories or articles about the case or about anyone involved with it, or listen to any radio or television reports about the case or about anyone involved with it.  That includes information you may find on Facebook, Twitter, Instagram, Snapchat, or other social media outlets.  You must insulate yourselves from all outside information about this case, to ensure that you decide this case based solely on what comes to you in this courtroom.  So, when you leave here and go to your home and pick up the paper, turn on the television, or logon to the internet, if you see something about the case, you must put the paper down right away, change the channel, or close the website.

*Sixth*, do not do any research on the internet about anything in the case or consult blogs or dictionaries or other reference materials, and do not make any investigation about the case on your own.

*Seventh*, do not discuss the case or anyone involved with it, or your status as a juror, on any social media or look up any of the participants there.

*Eighth*, if you need to communicate with me simply give a signed note to my courtroom deputy to give to me.

*Ninth*, do not make up your mind about what the verdicts should be until after you have gone to the jury room to decide the case and you and your fellow jurors have discussed the evidence.  Keep an open mind until then.

These rules exist because each of the defendants is entitled to a fair trial, rendered by an impartial jury, and you must conduct yourself throughout this trial so as to maintain the integrity of the trial process.  If you decide a case based on information not presented in court, you will have denied the parties a fair trial and you will have done an injustice.  It is very important that you abide by these rules.  Failure to follow these instructions could result in the case having to be retried.

**Defendants' Proposed Preliminary Instruction No. 3**

**NATURE OF THE INDICTMENT; PRESUMPTION OF INNOCENCE[3]**

This criminal case has been brought by the United States government.  I will sometimes refer to the government as the prosecution.  The government is represented at this trial by several assistant United States attorneys.  They are Mr. Nat Yeager, Mr. Fred Wyshak, Mr. David Lazarus, and Mr. Mark Quinlivan.

The fact that the prosecution is brought in the name of the United States of America entitles the government to no greater consideration than that accorded to any other party to a litigation.  By the same token, it is entitled to no less consideration.  All parties, whether government or individuals, stand as equals before the law.

The defendants are Mr. Michael Babich, Mr. Michael Gurry, Mr. Richard Simon, Ms. Sunrise Lee, Mr. Joseph Rowan, and Dr. John Kapoor.  Each of them is represented by lawyers.  Wick Sollers and Mark Jensen represent Mr. Babich.  Tracy Miner represents Mr. Gurry.  Steven Tyrrell represents Mr. Simon.  Peter Horstmann represents Ms. Lee.  Michael Kendall represents Mr. Rowan.  Beth Wilkinson and Kosta Stojilkovic represent Dr. Kapoor.

The defendants were officers, executives, and employees of a company called Insys Therapeutics, which developed and distributed—and, indeed, still develops and distributes—pharmaceutical medications.  One of those medications is called Subsys.  Subsys is a pain

---

[3] Adapted from First Circuit Pattern Instruction 1.02 (Updated 7/27/2007); Sand et al., *Modern Federal Jury Instructions (Crim.)*, Inst. 2-5 (Government As a Party) & Inst. 52-27 (Prejudice from the Word Racketeering) (2018); additional language regarding the presumption of innocence and burden of proof is adapted from this Court's preliminary instruction in *United States v. Facteau*, No. 15-CR-10076, Dkt. No. 440 at 13 (D. Mass. Aug. 4, 2016).

medication in the class of medications called Transmucosal Immediate Release Fentanyl, or TIRF, products.

Each defendant has been charged by the government with a violation of federal criminal law related to the sale of Subsys by Insys Therapeutics.  Specifically, each defendant has been charged by the government with conspiring to conduct or participate in the affairs of a criminal enterprise through a pattern of racketeering activity—that is, they are charged with having conspired to violate the Racketeering and Corrupt Organizations Act, commonly known as RICO.

The word "racketeering" has certain implications in our society.  Use of that term in this statute and in this courtroom should not be regarded as having anything to do with your determination of whether the guilt of this defendant has been proven.  The term is only a word used by Congress to describe the statute.

The charge against the defendants is contained in a document known as the indictment. The indictment alleges that Insys was a criminal enterprise.  It further alleges that between May 2012 and December 2015 the defendants and their co-conspirators sought to increase profits for this enterprise and themselves by conspiring to conduct the affairs of Insys through specific crimes.  In particular, the indictment alleges that the defendants and their co-conspirators agreed: first, to induce health care practitioners to illegally distribute Subsys by prescribing Subsys outside the course of professional practice and without any legitimate medical purpose; second, to induce health care practitioners to breach their fiduciary duty to their patients; and third, to instruct Insys employees to make materially false statements to insurance companies.

The indictment is simply the description of the allegations against the defendants; it is not evidence of anything.

Each defendant pleaded not guilty to the charge and denies committing the crime.  It is a bedrock principle of our system of justice that every person accused of a crime is presumed to be innocent unless and until his guilt is established beyond a reasonable doubt.  This presumption of innocence is critically important.  The defendants have the benefit of that presumption throughout the trial.  A defendant may not be found guilty by you unless all of you unanimously find that the government has proven his or her guilt beyond a reasonable doubt.

None of the defendants has to prove his or her innocence.  They do not have to put on any evidence.  They do not have to testify.  It is always the government's burden to establish guilt by proving each element of the crimes charged beyond a reasonable doubt.  The defendants have the right to rely upon the failure or inability of the government to establish beyond a reasonable doubt any essential element of a crime charged against them.  That being said, the law does not require the government to prove guilt beyond all possible doubt.  Proof beyond a reasonable doubt is necessary to convict.

**Defendants' Proposed Preliminary Instruction No. 4**

**SEPARATE CONSIDERATION OF MULTIPLE DEFENDANTS[4]**

There are six separate defendants on trial before you.  The defendants are being tried together because the government has alleged that they conspired together to conduct or participate in the affairs of a criminal enterprise through a pattern of racketeering activity.  But you will have to give separate consideration to the case against each defendant.  Do not think of the defendants as a group; you must return a separate verdict of guilty or not guilty for each defendant.

In reaching your verdict for each defendant, bear in mind that guilt is personal and so you must consider the evidence against each defendant separately.  The case against each defendant stands or falls upon the proof or lack of proof against that defendant alone and your verdict as to any defendant should not influence your decision as to any other defendant.  You may not decide that one defendant is guilty because you conclude one or more of the other defendants are guilty.

---

[4] Adapted from First Circuit Pattern Instruction 1.02 (Updated 7/27/2007); Sand et al., *Modern Federal Jury Instructions (Crim.)*, Inst. 3-7 (2018).

**Defendants' Proposed Preliminary Instruction No. 5**

**IMPERMISSIBLE TO INFER PARTICIPATION
FROM MERE PRESENCE OR ASSOCIATION[5]**

As you listen to the evidence in this case, you may not infer that a defendant is a member of the conspiracy alleged in the indictment merely from the fact that he or she was present at the time and place when the conspiracy was being carried on and had knowledge that it was being carried on, assuming you find that such a conspiracy did indeed exist.

Likewise, you may not infer that any defendant agreed to join the conspiracy alleged in the indictment merely from the fact that he or she associated with or worked with other people who were members of the conspiracy, assuming you find that such a conspiracy did indeed exist.

---

[5] Adapted from *United States v. Diez*, 736 F.2d 840, 843, 844 n.1 (2d Cir. 1984) (mere presence or mere knowledge that a crime is being committed is insufficient); *United States v. McDonough*, 727 F.3d 143, 159 (1st Cir. 2013) (mere association or mere knowledge of illegal activity is insufficient); *United States v. Dehertogh*, 696 F.3d 162, 168 (1st Cir. 2012) ("[J]ust being friends with or associating with the wrong people, even if you know they're committing a crime, doesn't make you a criminal and you're under no obligation to report it."); Sand et al., *Modern Federal Jury Instructions (Crim.)*, Inst. 6-3 and 6-4 (2018).

**Defendants' Proposed Preliminary Instruction No. 6**

**PRELIMINARY STATEMENT OF ELEMENTS OF CRIME[6]**

In order to help you follow the evidence, I will now give you a brief summary of the elements of the crime alleged, each of which the government must prove beyond a reasonable doubt to make its case.

As I noted a few moments ago, the defendants are charged with conspiring to violate the Racketeering and Corrupt Organizations Act, more commonly known as RICO.  In order to establish this charge, the government must prove each of the following things beyond a reasonable doubt as to each defendant.

In order to prove that a defendant violated Section 1962(d), the Government must establish beyond a reasonable doubt each of the following seven elements of the offense:

*First*, that at or about the time alleged in the indictment, the enterprise alleged in the indictment existed.

*Second*, that the enterprise alleged in the indictment affected interstate or foreign commerce.

*Third*, that the defendant in question was employed by or associated with the enterprise.

*Fourth*, that there was an agreement—also known as a "conspiracy"—among two or more persons to participate in the conduct or affairs of the enterprise through a pattern of racketeering activity.

---

[6] Adapted from First Circuit Pattern Instruction 1.04 (Updated 6/14/02); *United States v. Ramirez-Rivera*, 800 F.3d 1, 18 (1st Cir. 2015); First Circuit Pattern Instruction 4.18.371(1) (Conspiracy Under 18 U.S.C. § 371; 21 U.S.C. § 846) (Updated 5/9/18); Sand et al., *Modern Federal Jury Instructions (Crim.)*, Inst. 52-28 (2018); Eleventh Circuit Pattern Instruction O75.2 (RICO—Conspiracy Offense) (2017 ed.).

*Fifth*, that the defendant in question knowingly and willfully agreed to be a member of the criminal conspiracy alleged in the indictment.

*Sixth*, that the defendant in question knowingly and willfully agreed to conduct, or to participate in the conduct, of the affairs of the enterprise.

*Seventh*, that when the defendant in question agreed to become a member of the criminal conspiracy alleged in the indictment, he or she agreed and specifically intended that a member of the conspiracy would commit conduct that constitutes two or more racketeering acts.

I appreciate that I may have said some unfamiliar words, such as "conspiracy," "enterprise," and "pattern of racketeering activity." These terms have specific legal meanings that I will explain to you after you have heard all the evidence.

I just told you that the government must prove beyond a reasonable doubt that the defendants agreed to commit at least two racketeering acts. The government has alleged that the defendants agreed to commit the following five racketeering acts: distribution of a controlled substance in violation of the Controlled Substances Act; honest services mail fraud; honest services wire fraud, mail fraud, and wire fraud.

For you to find that a defendant agreed to distribute a controlled substance in violation of the Controlled Substances Act, you must be convinced that the government has proven beyond a reasonable doubt that the defendant specifically intended and agreed for health care practitioners to prescribe Subsys outside the course of professional practice and without any legitimate medical purpose.

For you to find that a defendant agreed to commit honest services mail or wire fraud, you must be convinced that the government has proven beyond a reasonable doubt that the defendant specifically intended and agreed for health care practitioners to breach their fiduciary duty to

their patients by prescribing Subsys outside the usual course of professional practice in a manner that lacked a legitimate medical purpose.  You must also find beyond a reasonable doubt that the defendant specifically intended and agreed for the health care practitioners to deceive their patients about the nature of the healthcare practitioners' financial relationship with Insys.

For you to find that a defendant agreed to commit mail fraud, you must be convinced that the government has proven beyond a reasonable doubt that the defendant specifically intended and agreed for Insys employees to make materially false statements to insurance companies about payments that Insys allegedly provided to healthcare practitioners through the mails.

For you to find that a defendant agreed to commit wire fraud, you must be convinced that the government has proven beyond a reasonable doubt that the defendant specifically intended and agreed for Insys employees to make materially false statements to insurance companies in telephone calls about insurance coverage for patients who were prescribed Subsys.

You should understand that what I have just given you is only a preliminary outline.  At the end of the trial I will give you a final instruction on these matters.  If there is any difference between what I just told you, and what I tell you in the instruction I give you at the end of the trial, the instructions given at the end of the trial govern.

**Defendants' Proposed Preliminary Instruction No. 7**

**OFF-LABEL USE OF PRESCRIPTION DRUGS**

During this trial, the government may offer evidence about the medical practice of prescribing Subsys and other medications for uses not approved by the FDA—a practice referred to as prescribing "off-label." Prescribing and using approved medications off-label is a common and legal practice in medicine.[7] Although the FDA regulates the label that appears on medications and how pharmaceutical companies may market those medications, it does not regulate the practice of medicine or how and when physicians prescribe drugs. In fact, it specifically permits healthcare practitioners to prescribe drugs for off-label use. In other words, healthcare practitioners are allowed to prescribe a drug for uses for which it has not been approved by the FDA. A healthcare practitioner is permitted to prescribe a medication for any indication if it is that healthcare practitioner's medical judgment that doing so is in the best interests of the patient.[8] An off-label use may even be the kind of care that healthcare practitioners are expected to provide when treating certain conditions.

---

[7] FDA, Understanding Unapproved Use of Drugs "Off label," <https://www.fda.gov/forpatients/other/offlabel/default.htm> (last visited Nov. 27, 2018); *United States v. Caronia*, 703 F.3d 149, 152 (2d Cir. 2012).

[8] *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 350 (2001) ("[T]he 'FDA itself recogniz[es] the value and propriety of off-label use[.]'") (citation omitted); *see also Sita v. Danek Med., Inc.*, 43 F. Supp. 2d 245, 262–63 n.13 (E.D.N.Y. 1999); *Ortho Pharm. Corp. v. Cosprophar, Inc.*, 32 F.3d 690, 692 (2d Cir. 1994); *see also* 21 U.S.C. § 396 ("Nothing in [the Federal Food, Drug and Cosmetic Act] shall be construed to limit or interfere with the authority of a health care practitioner to prescribe or administer any legally marketed device to a patient for any condition or disease within a legitimate health care practitioner-patient relationship.");

**Defendants' Proposed Preliminary Instruction No. 8**

**SPEAKER PROGRAM; PATIENT SUPPORT PROGRAM**

During the trial, you may hear evidence that Insys paid healthcare practitioners to speak to other healthcare professionals about their experience with Subsys over dinner at a restaurant or other similar venue.  Paying a healthcare practitioner to speak to other healthcare professionals about their experience with Subsys is not illegal.  Nor is it illegal to target the high prescribers of a particular drug to become speakers.  Such "speaker programs" are a common way for pharmaceutical companies to help educate and inform healthcare professionals about the benefits, risks, and appropriate uses of medications.

Likewise, you may hear evidence that Insys established a separate department that contacted insurance companies directly in order to seek approval of insurance reimbursements on behalf of patients who were prescribed Subsys.  Establishing such a department is not illegal.  Such patient support programs have been established by other pharmaceutical companies to help patients secure reimbursement for their prescriptions.

**Defendants' Proposed Preliminary Instruction No. 9**

**BRIBES AND KICKBACKS INSUFFICIENT TO CONVICT**

The government claims that it will offer evidence that bribes or kickbacks were provided to healthcare providers in order to increase the number of prescriptions they wrote or to increase the dosage of those prescriptions.  The defendants dispute that they agreed to any such bribes or kickbacks.  However, even if you find in the government's favor on this point, you cannot convict the defendants on that basis.  Rather, as I will explain to you in more detail after you have heard all of the evidence, the government must prove, among other things,  that defendants agreed and specifically intended for Subsys to be prescribed outside the course of professional practice and without a legitimate medical purpose.

**Defendants' Proposed Preliminary Instruction No. 10**

**DIRECT SHIPPING**

During the trial, you may hear evidence that Insys engaged in direct distribution or "direct shipping" to certain pharmacies. Engaging in so-called "direct shipping" to pharmacies is not illegal.

Pharmaceutical manufacturers have two main options when distributing their products to pharmacies. *First*, the manufacturer can use a large wholesaler. You may have heard of some of these wholesalers, such as McKesson and Cardinal Health. *Second*, the manufacturer can use a third-party logistics company. This second option is often called "direct shipping" because the manufacturer is not using a wholesaler, but is selling directly to pharmacies, even though a third-party logistics company is actually arranging storage and transportation of the drug to the pharmacy.

Although wholesaling is the dominant way to distribute branded drugs in this country, the use of a third-party logistics company to "direct ship" to pharmacies is increasingly common.[9] And the DEA has acknowledged that "direct shipping' agreements are not prohibited."[10]

---

[9] Kathleen Iacocca & Yao Zhao, *Resell vs. Direct Models: US Branded Drug Distribution in the Future*, PharmaExec (July 17, 2015), *available at* http://www.pharmexec.com/resell-vs-direct-models-us-branded-drug-distribution-future.

[10] Letter from N. Yeager to defense counsel of Oct. 26, 2018.

**Defendants' Proposed Preliminary Instruction No. 11**

**NOT HERE TO DECIDE OR OPINE ON POLICY**

Having mentioned off-label prescribing, speaker programs, and patient support programs, I want to caution you more generally that this case is not a referendum about healthcare policy in the United States.  Some of you may find the incentive structure that surrounds the delivery of medical care in this country to be flawed.  It may be that you believe that prescription medications are too expensive.  You may have other beliefs about health care policy in this country.

But that's not what this case is about.  Your role as jurors in this case is to decide whether the government has met its burden to prove to you beyond a reasonable doubt that a particular criminal violation has been committed by one or more of the defendants.  Whatever opinions you may hold about health care policy issues, those beliefs are not relevant to your impartial evaluation of the evidence in this case.

**Defendants' Proposed Preliminary Instruction No. 12**

**EVIDENCE; OBJECTIONS; RULINGS; BENCH CONFERENCES[11]**

I have mentioned the word "evidence."  Evidence includes the testimony of witnesses, documents and other things received as exhibits, and any facts that have been stipulated—that is, formally agreed to by the parties.

There are rules of evidence that control what can be received into evidence.  When a lawyer asks a question or offers an exhibit into evidence, and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. This simply means that the lawyer is requesting that I make a decision on a particular rule of evidence.

Then it may be necessary for me to talk with the lawyers out of the hearing of the jury, either by having a bench conference here while the jury is present in the courtroom, or by calling a recess.  Please understand that while you are waiting, we are working.  The purpose of these conferences is to decide how certain evidence is to be treated under the rules of evidence, and to avoid confusion and error.  We will, of course, do what we can to keep the number and length of these conferences to a minimum.

Certain things are not evidence. I will list those things for you now:

1.  Statements, arguments, questions and comments by lawyers representing the parties in the case are not evidence.

2.  Objections are not evidence.  Lawyers have a duty to their client to object when they believe something is improper under the rules of evidence.  You should not be influenced by the objection.  If I sustain an objection, you must ignore the

---

[11] Adapted from First Circuit Pattern Instruction 1.05 (Updated 6/14/2002).

question or exhibit and must not try to guess what the answer might have been or the exhibit might have contained.  If I overrule the objection, the evidence will be admitted, but do not give it special attention because of the objection.

3.   Testimony that I strike from the record, or tell you to disregard, is not evidence and must not be considered.

4.   Anything you see or hear about this case outside the courtroom is not evidence, unless I specifically tell you otherwise during the trial.

Furthermore, a particular item of evidence is sometimes received for a limited purpose only.  That is, it can be used by you only for a particular purpose, and not for any other purpose. I will tell you when that occurs and instruct you on the purposes for which the item can and cannot be used.

Finally, some of you may have heard the terms "direct evidence" and "circumstantial evidence."  Direct evidence is testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is indirect evidence, that is, it is proof of one or more facts from which one can find or infer another fact.  You may consider both direct and circumstantial evidence.  The law permits you to give equal weight to both, but it is for you to decide how much weight to give to any evidence.

**Defendants' Proposed Preliminary Instruction No. 13**

**CREDIBILITY OF WITNESSES**[12]

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe.  You may believe everything a witness says or only part of it or none of it.

In deciding what to believe, you may consider a number of factors, including the following:  (1) the witness's ability to see or hear or know the things the witness testifies to; (2) the quality of the witness's memory; (3) the witness's manner while testifying; (4) whether the witness has an interest in the outcome of the case or any motive, bias or prejudice; (5) whether the witness is contradicted by anything the witness said or wrote before trial or by other evidence; and (6) how reasonable the witness's testimony is when considered in the light of other evidence which you believe.

---

[12] Adapted from First Circuit Pattern Instruction 1.06 (Updated 6/14/2002).

**Defendants' Proposed Preliminary Instruction No. 14**

**NOTETAKING**[13]

I am going to permit you to take notes in this case, and the courtroom deputy has distributed pencils and pads for your use.  I want to give you a couple of warnings about taking notes, however.

First of all, do not allow your note-taking to distract you from listening carefully to the testimony that is being presented.  If you would prefer not to take notes at all but simply to listen, please feel free to do so.  Please remember also from some of your grade-school experiences that not everything you write down is necessarily what was said.  Your notes are not evidence.  Thus, when you return to the jury room to discuss the case, do not assume simply because something appears in somebody's notes that it necessarily took place in court.  Instead, it is your collective memory that must control as you deliberate upon the verdict.

Please take your notes to the jury room at every recess.  I will have the courtroom deputy collect them at the end of each day and place them in the vault.  They will then be returned to you the next morning.  When the case is over, your notes will be destroyed to protect the secrecy of your deliberations.  These steps are in line with my earlier instruction to you that it is important that you not discuss the case with anyone or permit anyone to discuss it with you.

---

[13] Adapted from First Circuit Pattern Instruction 1.08 (Updated 6/14/2002).

**Defendants' Proposed Preliminary Instruction No. 15**

**OUTLINE OF THE TRIAL[14]**

I will now give you a brief outline of the trial.  The first step in the trial will be the

opening statements.  The government in its opening statement will tell you about the evidence

that it intends to put before you, so that you will have an idea of what the government's case is

going to be.  Just as the indictment is not evidence, the opening statement is also not evidence.

Its purpose is only to help you understand what evidence the government expects to put before

you and what the government will try to prove.

After the government's opening statement, each of the defendants' attorneys may, if they

choose, make an opening statement.  At this point in the trial, no evidence has been offered by

either side.

Next the government will offer evidence that it says will support the charge against each

of the defendants.  The government's evidence in this case will consist of the testimony of

witnesses, and it may include documents and other exhibits.

After the government's evidence, the lawyers for the defendants may present evidence on

their client's behalf, but they are not required to do so.  I remind you that each defendant is

presumed innocent, and the government must prove the guilt of each defendant beyond a

reasonable doubt.  None of the defendants has to show you evidence to prove <u>that he or she is not

guilty</u>.

After you have heard all the evidence on both sides, the government and the defense will

each be given time for their final, or closing, arguments.  In their closing arguments the lawyers

---

[14] Adapted from First Circuit Pattern Instruction 1.09 (Updated 6/14/02).

for the government and the defendants will attempt to summarize and help you understand the evidence that was presented.  I just told you that the opening statements by the lawyers are not evidence.  The same applies to the closing arguments.  They are not evidence either.

The final part of the trial occurs when I instruct you about the rules of law that you are to use in reaching your verdict.  After hearing my instructions, you will leave the courtroom together to make your decisions.  Your deliberations will be secret.  You will never have to explain your verdict to anyone.

**Defendants' Proposed Preliminary Instruction No. 16**

**CONDUCT OF COUNSEL[15]**

As the trial proceeds, the lawyers for the government or the defendants may object during the testimony of a witness.

It is the duty of the attorney for each side of a case to object when the other side offers testimony or other evidence that the attorney believes is not properly admissible.  Counsel also have the right and duty to ask the court to make rulings of law and to request conferences at the side bar out of the hearing of the jury.  All those questions of law must be decided by me, the court.  You should not show any prejudice against an attorney or his client because the attorney objected to the admissibility of evidence, or asked for a conference out of the hearing of the jury or asked the court for a ruling on the law.

As I already indicated, my rulings on the admissibility of evidence do not indicate any opinion about the weight or effect of such evidence.  You are the sole judges of the credibility of all witnesses and the weight and effect of all evidence.

---

[15] Sand et al., *Modern Federal Jury Instructions (Crim.)*, Inst. 2-8 (2018).

## II.     INSTRUCTIONS DURING TRIAL

### Defendants' Proposed Interim Jury Instruction No. 1

### FIRST RECESS[16]

We are about to take our first recess.  Remember, until the trial is over, you are not to discuss this case with anyone, including other jurors, members of your household and family, people involved in the trial, or anyone else.  You may not permit others to discuss the case with you.  If anyone approaches you and tries to talk to you about the case, please let me know about it immediately.  Do not read or listen to any news reports of the trial or use the internet or other tools to do independent research.  Finally, you must keep an open mind until all the evidence has been received and you have heard the arguments of counsel, the instructions of the court, and the views of your fellow jurors.

If you need to speak with me about anything, please write me a note, sign it, and give it to my courtroom deputy, who will give it to me.

---

[16] Adapted from O'Malley et al., *Federal Jury Practice and Instructions (Civ.)* § 102:01 (2018).

**Defendants' Proposed Interim Jury Instruction No. 2**

**PUBLICITY—REMINDER[17]**

Let me remind you once again not to read about the case on the Internet or in the newspapers, watch any news concerning the case on television or listen to any radio accounts of the case.  Please be mindful of my admonition that you must limit the information you get about the case to what comes to you in the courtroom through the rules of evidence.

---

[17] Sand et al., *Modern Federal Jury Instructions (Crim.)*, Inst. 2-15 (2018).

**Defendants' Proposed Interim Jury Instruction No. 3**

**EVIDENCE ADMITTED AS TO CERTAIN DEFENDANT(S) (IF APPLICABLE)[18]**

You are about to hear **[description of evidence]**.  You can consider this evidence only in the case against **[defendant or defendants]**.  You must not consider that evidence in the case against the other defendants **[preferably identify such defendants by name]**.  Each defendant is entitled to have his or her case decided solely on the evidence that applies to him or her.

---

[18] Adapted from Third Circuit Pattern Instruction 2.12 (2017).

**Defendants' Proposed Interim Jury Instruction No. 4**

**REFERENCE TO ANTI-KICKBACK STATUTE (IF APPLICABLE)**

The lawyer for the government and this witness have just referred to a federal law called the Anti-Kickback Statute.  The Anti-Kickback Statute is a law that governs relationships between healthcare companies, like Insys Therapeutics, and healthcare practitioners, like doctors who prescribe Subsys.

The defendants are not charged with violations of the Anti-Kickback Statute.  Your role as the jury in this trial is not to determine whether the defendants violated the Anti-Kickback Statute.  The only question that will be asked of you at the end of this case is whether each defendant engaged in a RICO conspiracy.

The RICO law and the Anti-Kickback Statute are separate and distinct.  You may treat evidence that a defendant believed that his or her conduct complied with the Anti-Kickback Statute, or evidence that a defendant tried to comply or encouraged others to comply with the Anti-Kickback Statute, as evidence that the defendant in question acted in good faith.  But you may not treat evidence that a defendant violated the Anti-Kickback Statute as establishing that he or she is guilty of the RICO conspiracy charge that is the subject of this trial.

**Defendants' Proposed Interim Jury Instruction No. 5**

**REFERENCE TO RETURN ON INVESTMENT OR "ROI"**
**(IF APPLICABLE)[19]**

This witness has referred to an "ROI," or "Return on Investment," analysis that he conducted regarding the healthcare practitioners who served as Insys speakers.  I instruct you that the ROI analysis that the witness has described was not a violation of any federal law.  Although you may consider as evidence this witness's testimony that he conducted the ROI analysis—and you may give it whatever weight you think it is entitled to—it does not violate any law for a pharmaceutical company to analyze whether healthcare practitioners whom it is paying to be speakers are prescribing the company's product.

---

[19] This cautionary instruction is consistent with the final jury charge that Judge Woodlock gave in *United States v. Reichel*, No. 15-CR-10324, Dkt. No. 244 (D. Mass. June 17, 2016).  As Judge Woodlock explained, the government must prove a *quid pro quo* relationship, and a defendant cannot be convicted "merely because he sought to cultivate a business relationship or create a reservoir of goodwill that might ultimately affect one or more unspecified purchase or order decisions."  *Id.* at 5.

### III.A   FINAL INSTRUCTIONS:  GENERAL CONSIDERATIONS

### Defendants' Proposed Final Instruction No. 1

### JUROR ATTENTIVENESS[20]

Ladies and gentlemen, you are about to enter your final duty, which is to decide the fact issues in the case.

Before you do that, I will instruct you on the law.  You must pay close attention to me now.  I will go as slowly as I can and be as clear as possible.

I told you at the very start of the trial that your principal function during the taking of testimony would be to listen carefully and observe each witness who testified.  It has been obvious to me and to counsel that you have faithfully discharged this duty.  Your interest never flagged, and it is evident that you followed the testimony with close attention.

I ask you to give me that same careful attention, as I instruct you on the law.

---

[20] Adapted from Sand et al., *Modern Federal Jury Instructions (Crim.)*, Inst. 2-1 (2018).

**Defendants' Proposed Final Instruction No. 2**

**DUTY OF THE JURY TO FIND FACTS AND FOLLOW LAW[21]**

It is your duty to find the facts from all the evidence admitted in this case. To those facts you must apply the law as I give it to you. The determination of the law is my duty as the presiding judge in this court.  It is your duty to apply the law exactly as I give it to you, whether you agree with it or not.  You must not be influenced by any personal likes or dislikes, prejudices or sympathy.  That means that you must decide the case solely on the evidence before you and according to the law.

You will recall that you took an oath promising to do so at the beginning of the case.  In following my instructions, you must follow all of them and not single out some and ignore others; they are all equally important.  You must not read into these instructions, or into anything I may have said or done, any suggestions by me as to what verdict you should return—that is a matter entirely for you to decide.

---

[21] First Circuit Pattern Instruction 3.01 (Updated 6/14/2002).

**Defendants' Proposed Final Instruction No. 3**

**PRESUMPTION OF INNOCENCE; PROOF BEYOND A REASONABLE DOUBT[22]**

It is a cardinal principle of our system of justice that every person accused of a crime is presumed to be innocent unless and until his or her guilt is established beyond a reasonable doubt.

The presumption is not a mere formality. It is a matter of the most important substance. The presumption of innocence alone may be sufficient to raise a reasonable doubt and to require the acquittal of a defendant. The defendants before you, Mr. Babich, Mr. Gurry, Mr. Simon, Ms. Lee, Mr. Rowan, and Dr. Kapoor, have the benefit of that presumption throughout the trial, and you are not to convict any defendant of a particular charge unless you are persuaded of his or her guilt of that charge beyond a reasonable doubt.

The presumption of innocence until proven guilty means that the burden of proof is always on the government to satisfy you that each defendant is guilty of the crime with which he or she is charged beyond a reasonable doubt. It is a heavy burden, but the law does not require that the government prove guilt beyond all possible doubt; proof beyond a reasonable doubt is sufficient to convict. This burden never shifts to the defendants. It is always the government's burden to prove each of the elements of the crime charged beyond a reasonable doubt by the evidence and the reasonable inferences to be drawn from that evidence. Each defendant has the right to rely upon the failure or inability of the government to establish beyond a reasonable doubt any essential element of a crime charged against him or her.

---

[22] First Circuit Pattern Instruction 3.02 (Updated 4/8/2016).

If, after fair and impartial consideration of all the evidence, you have a reasonable doubt as to a defendant's guilt of a particular crime, it is your duty to find him or her not guilty of that crime.  On the other hand, if, after fair and impartial consideration of all the evidence, you are satisfied beyond a reasonable doubt of a defendant's guilt of a particular crime, you should find him or her guilty of that crime.

### Defendants' Proposed Final Instruction No. 4

### SEPARATE CONSIDERATION OF MULTIPLE DEFENDANTS[23]

There are six separate defendants on trial in this case.  The defendants are being tried together because the government has charged that they conspired together to conduct or participate in the affairs of a criminal enterprise through a pattern of racketeering activity.  But you will have to give separate consideration to the case against each defendant.  Do not think of the defendants as a group; you must return a separate verdict of guilty or not guilty for each defendant.

In reaching your verdict for each defendant, you must consider the evidence against each defendant separately.  The case against each defendant stands or falls based on the proof or lack of proof against that defendant alone.  Your verdict as to any defendant should not influence your decision as to any other defendant.  In other words, you may not decide that one defendant is guilty because one or more of the other defendants are guilty.

Some of the evidence in this case was limited to one defendant.  Let me emphasize that any evidence admitted solely against one defendant may be considered only with respect to that defendant and may not enter into your deliberations for any other defendant.

---

[23] Adapted from First Circuit Pattern Instruction 1.02 (Updated 7/27/2007); Sand et al., *Modern Federal Jury Instructions (Crim.)*, Inst. 3-5 (Consider Each Defendant Separately) and Inst. 3-7 (Multiple Defendants—One Count) (2018).

**Defendants' Proposed Final Instruction No. 5**

**THE GOVERNMENT AS A PARTY**[24]

The fact that the prosecution is brought in the name of the United States of America entitles the government to no greater consideration than that accorded to any other party to a litigation.  By the same token, it is entitled to no less consideration.  All parties, whether government or individuals, stand as equals before the law.

---

[24] Adapted from Sand et al., *Modern Federal Jury Instructions (Crim.)*, Inst. 2-5 (2018).

**Defendants' Proposed Final Instruction No. 6**

**CONDUCT OF COUNSEL**[25]

As you have now seen, sometimes lawyers for the government or for the defendants will voice an objection in the course of the proceedings.

As I said at the outset, it is the duty of the attorney for each side of a case to object when the other side offers testimony or other evidence that the attorney believes is not properly admissible.  Counsel also have the right and duty to ask the court to make rulings of law and to request conferences at the side bar out of the hearing of the jury.  All those questions of law must be decided by me, the court.  You should not show any prejudice against an attorney or his client because the attorney objected to the admissibility of evidence, or asked for a conference out of the hearing of the jury or asked the court for a ruling on the law.

My rulings on the admissibility of evidence do not indicate any opinion about the weight or effect of such evidence.  You are the sole judges of the credibility of all witnesses and the weight and effect of all evidence.

---

[25] Adapted from Sand et al., *Modern Federal Jury Instructions (Crim.)*, Inst. 2-8 (2018).

### III.B.   FINAL INSTRUCTIONS: MATTERS OF EVIDENCE

### Defendants' Proposed Final Instruction No. 7[26]

### WHAT IS EVIDENCE; INFERENCES

The evidence from which you are to decide what the facts are consists of sworn testimony of witnesses, both on direct and cross-examination, regardless of who called the witness; the exhibits that have been received into evidence; and any facts to which the lawyers have agreed or stipulated. A stipulation means simply that the government and the defendants accept the truth of a particular proposition or fact. Since there is no disagreement, there is no need for evidence apart from the stipulation. You must accept the stipulation as fact to be given whatever weight you choose.

Although you may consider only the evidence presented in the case, you are not limited in considering that evidence to the bald statements made by the witnesses or contained in the documents. In other words, you are not limited solely to what you see and hear as the witnesses testify. You are permitted to draw from facts that you find to have been proven such reasonable inferences as you believe are justified in the light of common sense and personal experience.

---

[26] First Circuit Pattern Instruction 3.04 (Updated 8/10/2007).

**Defendants' Proposed Final Instruction No. 8**

**KINDS OF EVIDENCE: DIRECT AND CIRCUMSTANTIAL**[27]

There are two kinds of evidence: direct and circumstantial. Direct evidence is direct proof of a fact, such as testimony of an eyewitness that the witness saw something. Circumstantial evidence is indirect evidence, that is proof of a fact or facts from which you could draw the inference, by reason and common sense, that another fact exists, even though it has not been proven directly. You are entitled to consider both kinds of evidence. The law permits you to give equal weight to both, but it is for you to decide how much weight to give to any evidence.

---

[27] First Circuit Pattern Instruction 3.05 (Updated 6/14/2002).

**Defendants' Proposed Final Instruction No. 9**

**CREDIBILITY OF WITNESSES[28]**

Whether the government has sustained its burden of proof does not depend upon the number of witnesses it has called or upon the number of exhibits it has offered, but instead upon the nature and quality of the evidence presented.  You do not have to accept the testimony of any witness if you find the witness not credible.  You must decide which witnesses to believe and which facts are true.  To do this, you must look at all the evidence, drawing upon your common sense and personal experience.

You may want to take into consideration such factors as the witnesses' conduct and demeanor while testifying; their apparent fairness or any bias they may have displayed; any interest you may discern that they may have in the outcome of the case; any prejudice they may have shown; their opportunities for seeing and knowing the things about which they have testified; the reasonableness or unreasonableness of the events that they have related to you in their testimony; and any other facts or circumstances disclosed by the evidence that tend to corroborate or contradict their versions of the events.

---

[28] First Circuit Pattern Instruction 3.06 (Updated 6/14/2002).

**Defendants' Proposed Final Instruction No. 10**

**WHAT IS NOT EVIDENCE**[29]

Certain things are not evidence.  I will list them for you:

1.  Arguments and statements by lawyers are not evidence.  The lawyers are not
    witnesses. What they say in their opening statements, closing arguments and at other
    times is intended to help you interpret the evidence, but it is not evidence.  If the facts
    as you remember them from the evidence differ from the way the lawyers have stated
    them, your memory of them controls.

2.  Questions and objections by lawyers are not evidence.  Lawyers have a duty to their
    clients to object when they believe a question is improper under the rules of evidence.
    You should not be influenced by the objection or by my ruling on it.

3.  Anything that I have excluded from evidence or ordered stricken and instructed you
    to disregard is not evidence.  You must not consider such items.

4.  Anything you may have seen or heard when the court was not in session is not
    evidence.  You are to decide the case solely on the evidence received at trial.

5.  The indictment is not evidence.  This case, like most criminal cases, began with an
    indictment.  You will have that indictment before you in the course of your
    deliberations in the jury room.  That indictment was returned by a grand jury, which
    heard only the government's side of the case.  I caution you, as I have before, that the
    fact that there has been an indictment filed against Mr. Babich, Mr. Gurry, Mr.
    Simon, Ms. Lee, Mr. Rowan, and Dr. Kapoor is no evidence whatsoever of any of

---

[29] First Circuit Pattern Instruction 3.08 (Updated 7/27/2007).

their guilt.  The indictment is simply an accusation.  It is the means by which the

allegations and charges of the government are brought before this court. The

indictment proves nothing.

**Defendants' Proposed Final Instruction No. 11**

**IMPROPER CONSIDERATIONS[30]**

It would be improper for you to consider, in reaching your decision as to whether the government sustained its burden of proof, any personal feelings you may have about the defendant's race, religion, national origin, sex or age.  All persons are entitled to the presumption of innocence and the government has the burden of proof, as I will discuss in a moment.

It would be equally improper for you to allow any feelings you might have about the nature of the crime charged to interfere with your decision-making process.

To repeat, your verdict must be based exclusively upon the evidence or the lack of evidence in the case.

---

[30] Adapted from Sand et al., *Modern Federal Jury Instructions (Crim.)*, Inst. 2-11 (2018).

Defendants' Proposed Final Instruction No. 12

**DEFENDANTS' CONSTITUTIONAL RIGHT NOT TO TESTIFY**[31]

**[If one or more defendants do not testify]:**  Mr. Babich, Mr. Gurry, Mr. Simon, Ms. Lee, Mr. Rowan, and Dr. Kapoor [**as applicable**] chose not to testify in this case.  Each defendant has a constitutional right not to testify because it is the government's burden to prove a defendant guilty beyond a reasonable doubt.  A defendant is never required to prove that he or she is innocent.

As a result, you must not attach any significance to the fact that a given defendant did not testify.  No inference of guilt, or of anything else, may be drawn from the fact that the defendants did not testify.  For any of you to draw such an inference would be wrong; indeed, it would be a violation of your oath as a juror.

---

[31] Adapted from Adapted from First Circuit Pattern Instruction 3.03 (Updated 2/10/2016); Sand et al., *Modern Federal Jury Instructions (Crim.)*, Inst. 5-21 (2018).

**Defendants' Proposed Final Instruction No. 13**

**IMPERMISSIBLE TO INFER PARTICIPATION
FROM MERE PRESENCE OR ASSOCIATION**[32]

If you find there was a conspiracy, you may not infer that a defendant is a member of the conspiracy merely from the fact that he or she was present at the time and place when the conspiracy was being carried on and had knowledge that it was being carried on.

Likewise, if you find there was a conspiracy, you may not infer that any defendant agreed to join the conspiracy merely from the fact that he or she associated with or worked with other people who were members of the conspiracy.

---

[32] Adapted from *United States v. Diez*, 736 F.2d 840, 843, 844 n.1 (2d Cir. 1984) (mere presence or mere knowledge that a crime is being committed is insufficient); *United States v. McDonough*, 727 F.3d 143, 159 (1st Cir. 2013) (mere association or mere knowledge of illegal activity is insufficient); *United States v. Dehertogh*, 696 F.3d 162, 168 (1st Cir. 2012) ("[J]ust being friends with or associating with the wrong people, even if you know they're committing a crime, doesn't make you a criminal and you're under no obligation to report it."); Sand et al., *Modern Federal Jury Instructions (Crim.)*, Inst. 6-3 and 6-4 (2018).

**Defendants' Proposed Final Instruction No. 14**

**EXECUTIVE OR MANAGERIAL ROLE**[33]

You have heard evidence that the defendants held executive or managerial positions at Insys Therapeutics.  Even if a defendant holds an executive or managerial position at Insys, that is not a basis to convict the defendant of the RICO conspiracy charge in the indictment.  A healthcare company executive's or manager's failure to correct or prevent misconduct at the company does not constitute a violation of the RICO statute.  In other words, even if you think that a defendant should have known about certain conduct, should have done more to correct or prevent such conduct, or should be responsible for the conduct of company employees, you cannot convict the defendant on this basis.  Such considerations have no place in this case.

---

[33] As this Court is aware, a healthcare executive's or manager's mere failure to "correct or prevent" healthcare offenses committed by corporate colleagues that he or she is responsible for overseeing is, at most, a misdemeanor offense under the Food, Drug, and Cosmetic Act. *United States v. Facteau*, No. 15-CR-10076, Dkt. No. 395 at 42 (D. Mass. Aug. 4, 2016) (final jury instructions on "Responsible Corporate Officer" misdemeanor charge).

**Defendants' Proposed Final Instruction No. 15**

**WEIGHING TESTIMONY OF AN EXPERT WITNESS**[34]

You have heard testimony from persons described as experts.  An expert witness has special knowledge or experience that allows the witness to give an opinion.

You may accept or reject such testimony.  In weighing the testimony, you should consider the factors that generally bear upon the credibility of a witness as well as the expert witness's education and experience, the soundness of the reasons given for the opinion and all other evidence in the case.

Remember that you alone decide how much of a witness's testimony to believe, and how much weight it should be given.

---

[34] Adapted from First Circuit Pattern Instruction 2.07 (Updated 3/25/2015).

**Defendants' Proposed Final Instruction No. 16**

**CAUTIONARY AND LIMITING INSTRUCTIONS
AS TO PARTICULAR KINDS OF EVIDENCE**[35]

A particular item of evidence is sometimes received for a limited purpose only.  That is, it can be used by you only for one particular purpose, and not for any other purpose.  I have told you when that occurred, and instructed you on the purposes for which the item can and cannot be used.

---

[35] Adapted from First Circuit Pattern Instruction 3.07 (Updated 6/14/2002).

**Defendants' Proposed Final Instruction No. 17**

**CAUTION AS TO COOPERATING WITNESSES**[36]

You have heard the testimony of [**name of witness**].

[**He/She**]:

1. provided evidence under agreements with the government; [**and/or**]

2. participated in the crime charged against the defendants as a so-called "accomplice";

   [**and/or**]

3. received money [**or . . .**] from the government in exchange for providing information;

   [**and/or**]

4. testified under a grant of immunity.

[**Repeat above for each such witness**]

I will provide you with some cautionary instructions with respect to such witnesses.

[**Immunity—if applicable:**] "Immunity" means that the witness's testimony may not be used against him or her in any subsequent criminal proceeding. However, if the witness testified untruthfully, the witness could be prosecuted for perjury or making a false statement, even though he or she was testifying under a grant of immunity.

Some people in this position are entirely truthful when testifying.  Still, you should consider the testimony of an immunized witness with  greater care than the testimony of an ordinary witness.  You should scrutinize it closely to determine whether or not it is colored in such a way as to place guilt upon one or more of the defendants in order to further the witness'

---

[36] Adapted from First Circuit Pattern Instruction 2.08 & cmt. (Updated 4/1/2015); Sand et al., *Modern Federal Jury Instructions (Crim.)*, Insts. 7-3, 7-5, 7-8 (2018).

own interests.  That is so because immunized witnesses, confronted with the realization that they

can win own freedom by helping to convict another, have a motive to falsify their testimony.

**[Interest in outcome—if applicable:]** In deciding whether such a witness is credible,

you must determine whether his or her testimony has been affected by any interest in the

outcome of this case and by any of the benefits her or she has received or will receive from the

government.

An interest in the outcome creates a motive to testify falsely and may sway the witness to

testify in a way that advances his or her own interests.  You should bear that factor in mind when

evaluating the credibility of the testimony of such a witness and accept it with great care.

This is not to suggest that every witness who has an interest in the outcome of a case will

testify falsely.  It is for you to decide to what extent, if at all, the witness' interest has affected or

colored his or her testimony.

**[Accomplice—if applicable:]**  You have heard witnesses who testified they were

actually involved in the conspiracy alleged in the indictment, including in the planning and

carrying out of certain activities.  There has been a great deal said about these so-called

accomplice witnesses in the summations of counsel and whether or not you should believe them.

The government argues, as it is permitted to do, that it must take the witnesses as it finds

them.  It argues that only people who themselves take part in criminal activity have the

knowledge required to show criminal behavior by others.

For those very reasons, the law allows the use of accomplice testimony.  However, it is

also the case that accomplice testimony is of such nature that it must be scrutinized with great

care and viewed with particular caution when you decide how much of that testimony to believe.

**[Guilty plea—if applicable:]** Some of the witnesses you heard from have also pled guilty to one or more crimes.  You may consider the witness's guilty plea in assessing his or her credibility, but you are not to consider the witness's guilty plea as evidence against these defendants in any way.  In other words, you may not infer that a defendant engaged in criminal conduct or had criminal intent on the basis that the witness before you pled guilty to the same or similar crime that the defendant is charged with.

In addition, it is impermissible for you to convict a defendant based solely on the unsupported testimony of a witness who has plead guilty unless you believe the witness's testimony beyond a reasonable doubt.

**Defendants' Proposed Final Instruction No. 18**

**BIAS OR HOSTILITY**[37]

In connection with your evaluation of the credibility of the witnesses, you should specifically consider evidence of resentment or anger that some government witnesses may have towards one or more of the defendants.

Evidence that a witness is biased, prejudiced or hostile toward a defendant requires you to view that witness' testimony with caution, to weigh it with care, and subject it to close and searching scrutiny.

---

[37] Adapted from Sand et al., *Modern Federal Jury Instructions (Crim.)*, Inst. 7-2 (2018).

**Defendants' Proposed Final Instruction No. 19**

**TESTIMONY OF LAW ENFORCEMENT OR GOVERNMENT OFFICIAL**[38]

You have heard the testimony of a**[name]**, who is a **[law enforcement official/an employee of the federal government]**.  The fact that **[name]** may be employed by the federal government as a law enforcement or other official does not mean that **[his/her]** testimony is necessarily deserving of more or less consideration or greater or lesser weight than that of an ordinary witness.

At the same time, it is quite legitimate for defense counsel to try to attack the credibility of a witness who is a law enforcement or other government official on the grounds that his testimony may be colored by a personal or professional interest in the outcome of the case.

It is your decision, after reviewing all the evidence, whether to accept the testimony of the witness and to give to that testimony whatever weight, if any, you find it deserves.

---

[38] Adapted from Sand et al., *Modern Federal Jury Instructions (Crim.)*, Inst. 7-16 (2018).

**Defendants' Proposed Final Instruction No. 20**

**IMPEACHMENT BY PRIOR INCONSISTENT STATEMENT[39]**

You have heard evidence that before testifying at this trial, some witnesses made statements concerning the same subject matter as their testimony in this trial.  For each such witness, you may consider the earlier statements to help you decide how much of the witnesses' testimony to believe.  If you find that the prior statement was not consistent with the witness's testimony at this trial, then you should decide whether that affects the believability of witness's testimony at this trial.

---

[39] Adapted from First Circuit Pattern Instruction 2.03 (Updated 6/14/02).

**Defendants' Proposed Final Instruction No. 21**

**HEARSAY TESTIMONY (IF APPLICABLE)[40]**

You have heard about a number of statements made outside of court by witnesses who did not testify here in court. When a witness's out-of-court statement has been admitted, that witness's credibility may be attacked, and if attacked may be supported, in the same manner as if the witness had testified in court.

---

[40] *See* Fed. R. Evid. 806; *Carver v. United States*, 164 U.S. 694, 697 (1897).

**Defendants' Proposed Final Instruction No. 22**

**MISSING WITNESS (IF APPLICABLE)[41]**

If it is peculiarly within the power of the government to produce a witness who could give material testimony, or if a witness, because of **[his/her]** relationship to the government, would normally be expected to support the government's version of events, the failure to call that witness may justify an inference that **[his/her]** testimony would in this instance be unfavorable to the government.  You are not required to draw that inference, but you may do so.

---

[41] Adapted from First Circuit Pattern Instruction 2.12 (Updated 1/6/2015).

### Defendants' Proposed Final Instruction No. 23

### CHARACTER EVIDENCE (IF APPLICABLE)[42]

**[Defendant]** presented evidence to show that **[he/she]** enjoys a reputation for honesty, truthfulness and integrity in **[his/her]** community.  Such evidence may indicate to you that it is improbable that a person of such character would commit the crime charged, and, therefore, cause you to have a reasonable doubt as to **[his/her]** guilt.  You should consider any evidence of **[defendant]**'s good character along with all the other evidence in the case and give it such weight as you believe it deserves.  If, when considered with all the other evidence presented during this trial, the evidence of **[defendant]**'s good character creates a reasonable doubt in your mind as to [his/her] guilt, you should find **[him/her]** not guilty.

---

[42] Adapted from First Circuit Pattern Instruction 2.19 (Updated 6/14/2002).

**Defendants' Proposed Final Instruction No. 24**

**STATEMENTS BY DEFENDANT(S) (IF APPLICABLE)**[43]

You have heard evidence that **[defendant]** made a statement in which the government claims [he/she] admitted certain facts.

It is for you to decide (1) whether **[defendant]** made the statement, and (2) if so, how much weight to give it. In making those decisions, you should consider all of the evidence about the statement, including the circumstances under which the statement may have been made **[and any facts or circumstances tending to corroborate or contradict the version of events described in the statement]**.

---

[43] Adapted from First Circuit Pattern Instruction 2.11 (Updated 5/18/17).

**Defendants' Proposed Final Instruction No. 25**

**CROSS-EXAMINATION OF WITNESS ON DEFENDANT'S CHARACTER
(IF APPLICABLE)[44]**

The prosecution asked certain questions on cross-examination of the defendant's character witness about specific acts supposedly committed by the defendant. **[Adjust identification of defendant as appropriate.]** I caution you that the prosecution was allowed to ask these questions only to help you decide whether the witness was accurate in forming his opinion or in describing the reputation of the defendant's character. You may not assume that the acts described in these questions are true, nor may you consider them as evidence that the defendant committed the crime for which he is charged. You may therefore consider the questions only in deciding what weight, if any, should be given to the testimony of the character witness and for no other purpose. You should not consider such questions as any proof of the conduct stated in the question.

---

[44] Adapted from Sand et al., *Modern Federal Jury Instructions (Crim.)*, Inst. 5-16 (2018).

**Defendants' Proposed Final Instruction No. 26**

**OPINION AS TO CHARACTER OF WITNESS TO IMPEACH WITNESS'S CREDIBILITY (IF APPLICABLE)[45]**

You have heard **[name of witness]** testify that in his opinion **[name of other witness]**, one of the other witnesses who testified, is an untruthful person.  Since you are the sole judges of the facts and the credibility of witnesses, you may consider such evidence in deciding whether or not to believe the witness whose character for truthfulness has been questioned, giving such character evidence whatever weight you deem appropriate.

---

[45] Adapted from Sand et al., *Modern Federal Jury Instructions (Crim.)*, Inst. 5-18 (2018).

**Defendants' Proposed Final Instruction No. 27**

**STIPULATIONS (IF APPLICABLE)**[46]

The evidence in this case includes facts to which the lawyers have agreed or stipulated. A stipulation means simply that the government and the defendant accept the truth of a particular proposition or fact. Since there is no disagreement, there is no need for evidence apart from the stipulation. You must accept the stipulation as fact to be given whatever weight you choose.

---

[46] Adapted from First Circuit Pattern Instruction 2.01 (Updated 6/3/2009).

**Defendants' Proposed Final Instruction No. 28**

**CHARTS AND SUMMARIES—ADMITTED AS EVIDENCE**
**(IF APPLICABLE)[47]**

The **[government or defense]** has presented exhibits in the form of charts and summaries.  I decided to admit these charts and summaries in place of the underlying documents that they represent in order to save time and avoid unnecessary inconvenience.  You should consider these charts and summaries as you would any other evidence.

---

[47] Adapted from Sand et al., *Modern Federal Jury Instructions (Crim.)*, Inst. 5-12 (2018).

**Defendants' Proposed Final Instruction No. 29**

**CHARTS AND SUMMARIES—NOT ADMITTED AS EVIDENCE
(IF APPLICABLE)[48]**

The **[government or defense]** has presented exhibits in the form of charts and summaries.  These charts and summaries were shown to you in order to make the other evidence more meaningful and to aid you in considering the evidence.  They are no better than the testimony or the documents upon which they are based, and are not themselves independent evidence.  Therefore, you are to give no greater consideration to these schedules or summaries than you would give to the evidence upon which they are based.

It is for you to decide whether the charts, schedules or summaries correctly present the information contained in the testimony and in the exhibits on which they were based.  You are entitled to consider the charts, schedules and summaries if you find that they are of assistance to you in analyzing and understanding the evidence.

---

[48] Adapted from Sand et al., *Modern Federal Jury Instructions (Crim.)*, Inst. 5-13 (2018).

**Defendants' Proposed Final Instruction No. 30**

**MARKINGS ON EXHIBITS**[49]

Some of the exhibits in this case were stamped "confidential" or "redacted" or with identification numbers and/or letters before being provided to the parties as part of the litigation process.  It is routine to stamp documents confidential or with identification numbers and/or letters in the litigation process.  You are to draw no inference from the fact that a document was stamped confidential or with identification numbers and/or letters before being provided.

---

[49] Adapted from *United States v. Forbes*, No. 3:02-CR-264, Dkt. No. 2597 at 65 (D. Conn. Oct. 31, 2006).

### III.C.   FINAL INSTRUCTIONS: ELEMENTS OF THE OFFENSE

### Defendants' Proposed Final Instruction No. 31

### OVERVIEW OF THE INDICTMENT

The indictment in this case contains one count against each of the six defendants.  It charges each of the defendants separately with a conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act, commonly referred to as the RICO Act or simply RICO.

**Defendants' Proposed Final Instruction No. 32**

**THE RICO CONSPIRACY STATUTE[50]**

The indictment charges each of the defendants with violating Section 1962(d) of Title 18 of the United States Code.  That section reads as follows: "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

The indictment in this case is limited to allegations concerning subsection (c).

Subsection (c) provides as follows:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

---

[50] Adapted from Sand et al., *Modern Federal Jury Instructions (Crim.)*, Inst. 52-26 (2018).

**Defendants' Proposed Final Instruction No. 33**

**PREJUDICE FROM THE WORD "RACKETEERING"[51]**

The word "racketeering" has certain implications in our society.  Use of that term in this statute and in this courtroom should not be regarded as having anything to do with your determination of whether the guilt of the defendants has been proven.  The term is only a word used by Congress to describe the statute.

---

[51] Adapted from Sand et al., *Modern Federal Jury Instructions (Crim.)*, Inst. 52-27 (2018).

**Defendants' Proposed Final Instruction No. 34**

**ELEMENTS OF THE OFFENSE[52]**

In order to prove that a defendant violated section 1962(d), the government must establish beyond a reasonable doubt each of the following seven elements of the offense:

*First*, that at or about the time alleged in the indictment, the enterprise alleged in the indictment existed.

*Second*, that the enterprise alleged in the indictment affected interstate or foreign commerce.

*Third*, that the defendant in question was employed by or associated with the enterprise.

*Fourth*, that there was an agreement—also known as a "conspiracy"—among two or more persons to participate in the conduct or affairs of the enterprise through a pattern of racketeering activity.

*Fifth*, that the defendant in question knowingly and willfully agreed to be a member of the criminal conspiracy alleged in the indictment.

*Sixth*, that the defendant in question knowingly and willfully agreed to conduct, or to participate in the conduct, of the affairs of the enterprise.

*Seventh*, that when the defendant in question agreed to become a member of the criminal conspiracy alleged in the indictment, he or she agreed and specifically intended that a member of the conspiracy would commit conduct that constitutes two or more racketeering acts.

Next, I am going to discuss each of these requirements in detail.

_____

[52] Adapted from *United States v. Ramirez-Rivera*, 800 F.3d 1, 18 (1st Cir. 2015); First Circuit Pattern Instruction 4.18.371(1) (Conspiracy Under 18 U.S.C. § 371; 21 U.S.C. § 846) (Updated 5/9/18); Sand et al., *Modern Federal Jury Instructions (Crim.)*, Inst. 52-28 (2018); Eleventh Circuit Pattern Instruction O75.2 (RICO—Conspiracy Offense) (2017).

**Defendants' Proposed Final Instruction No. 35**

**FIRST ELEMENT: EXISTENCE OF THE ENTEPRISE[53]**

The first element the government must prove beyond a reasonable doubt is that at or about the time alleged in the indictment, an enterprise existed.

The meaning of the term "enterprise" is any legal entity, such as a partnership, corporation, or association.

The government has alleged in this case that the enterprise was Insys Therapeutics, Inc. If you find that Insys Therapeutics was, in fact, a legal entity such as a partnership, corporation or association, then you may find that an enterprise existed.

---

[53] Adapted from Sand et al., *Modern Federal Jury Instructions (Crim.)*, Inst. 52-20 (2018).

**Defendants' Proposed Final Instruction No. 36**

**SECOND ELEMENT: EFFECT ON INTERSTATE OR FOREIGN COMMERCE[54]**

The second element the government must prove beyond a reasonable doubt is that the enterprise was engaged in or had an effect on interstate or foreign commerce.

Interstate commerce includes the movement of goods, services, money, and individuals between states (or between states and the District of Columbia or a U.S. Territory or possession or between the United States and a foreign state or nation).

The government must prove that the enterprise engaged in interstate commerce or that its activities affected interstate commerce in any way, no matter how minimal.  It does not have to prove that the racketeering activity affected interstate commerce, although proof that racketeering acts did affect interstate commerce is sufficient to satisfy this element.  It is not necessary to prove that the acts of any particular defendant affected interstate commerce as long as the acts of the enterprise had such effect.  Finally, the Government is not required to prove that any defendant knew he or she was affecting interstate commerce.

---

[54] Adapted from Sand et al., *Modern Federal Jury Instructions (Crim.)*, Inst. 52-21 (2018).

**Defendants' Proposed Final Instruction No. 37**

**THIRD ELEMENT: ASSOCIATION OR EMPLOYMENT[55]**

The third element that the government must prove beyond a reasonable doubt is that the defendant in question was employed by or associated with the enterprise.

The government need not prove both; either "employed by" or "associated with" is sufficient to establish this element. The term "employed by" should be given its common, plain meaning. Thus, a person is "employed by" an enterprise when, for example, he is on the payroll of the enterprise, performs services for the enterprise, or holds a position in the enterprise. "Associated with" also should be given its plain meaning. As stated in Webster's Third New International Dictionary (1971 ed.), to "associate" means "to join, often in a loose relationship as a partner, fellow worker, colleague, friend, companion or ally . . . to join or connect with one another." Therefore, a person is "associated with" an enterprise when, for example, he joins with other members of the enterprise and he knowingly aids or furthers the activities of the enterprise, or he conducts business or other activity with or through the enterprise.

It is not required that the defendant have been employed by or associated with the enterprise for the entire time that the enterprise existed. It is required, however, that the government prove, beyond a reasonable doubt, that at some time during the period indicated in the indictment, the defendant in question was employed by or associated with the enterprise.

A person cannot be associated with or employed by an enterprise if he or she does not know of the enterprise's existence or the nature of its activities. Thus, in order to prove this element, the government must prove beyond a reasonable doubt that the defendant was

---

[55] Adapted from Sand et al., *Modern Federal Jury Instructions (Crim.)*, Inst. 52-22 (2018); *United States v. Napout*, No. 15-CR-252, Dkt. No. 872 (E.D.N.Y. Dec. 26, 2017).

connected to the enterprise in some meaningful way, and that the defendant knew of the

existence of the enterprise and of the general nature of its activities.

**Defendants' Proposed Final Instruction No. 38**

**FOURTH ELEMENT: CONSPIRACY TO VIOLATE RICO[56]**

The fourth element the government must prove beyond a reasonable doubt is that there existed a criminal conspiracy among two or more persons to participate in the conduct or affairs of the enterprise through a pattern of racketeering activity.  This conspiracy must be the conspiracy alleged in the indictment, and not some other conspiracy or conspiracies.

I will address the meaning of "conspiracy" and "pattern of racketeering activity" in turn, as these are not everyday terms but rather terms that have specific legal meaning.

A "conspiracy" is an agreement among two or more persons to achieve an unlawful object.  To show a conspiratorial agreement, the government is not required to prove that two or more people entered into a solemn pact where everyone involved sat down together and worked out all the details.  Rather, the government must show that two or more persons explicitly or implicitly came to an understanding to achieve the specified unlawful object, whether or not they were successful.  Mere similarity of conduct among various people, or the fact that they may have associated with each other or discussed common aims and interests—for example, increasing the sales of Subsys—does not necessarily establish proof of the existence of a conspiracy, but you may consider such factors.

Next, I will address the "pattern of racketeering activity."   The government has alleged that the pattern of racketeering activity was made up of the following five specific crimes: distribution of a controlled substance in violation of the Controlled Substances Act; honest

---

[56] Adapted from Sand et al., *Modern Federal Jury Instructions (Crim.)*, Inst. 52-23 (2018); First Circuit Pattern Instruction 4.18.371(1) (Conspiracy Under 18 U.S.C. § 371; 21 U.S.C. § 846) (Updated 5/9/18).

services mail fraud; honest services wire fraud, mail fraud to obtain money or property, and wire fraud to obtain money or property.

To prove the "pattern of racketeering" element, the government must prove that there was a conspiratorial agreement that the enterprise, Insys, would commit multiple acts constituting those crimes. I will describe in detail the elements of each of these crimes in a few minutes so you can determine whether they constituted part of the pattern of racketeering activity alleged in the indictment.

But that is not all the government must prove to prove the "pattern of racketeering activity" element. In addition, the government must prove that (1) the crimes are related to each other and (2) those crimes pose a threat of continued criminal activity. It is not enough for the government to prove only that there was an agreement between two or more persons to commit the racketeering acts I have just described. A series of disconnected acts does not constitute a pattern, and a series of disconnected crimes does not constitute a pattern of racketeering activity, nor do they amount to or pose a threat of continued racketeering activity.

To prove that the acts of racketeering are related, the government must prove that the acts had the same or similar purposes, results, participants, victims, or methods of commission, or that they are otherwise interrelated by distinguishing characteristics and are not isolated events.

To prove that the racketeering acts pose a threat of continued racketeering activity, the government must establish that two or more persons agreed that these racketeering acts would be a regular way of conducting the enterprise's business.

**Defendants' Proposed Final Instruction No. 39**

**FIFTH ELEMENT: MEMBERSHIP IN THE CONSPIRACY[57]**

The fifth element that the government must prove beyond a reasonable doubt is that the

defendant in question knowingly and willfully agreed to join—in other words, knowingly and

willfully agreed to become a member of—the conspiracy alleged in the indictment.

The conspiracy must be the conspiracy as it is alleged in the indictment.  It is not enough

that you conclude the defendant in question may have been party to an agreement to achieve

some unlawful end; it must be the precise conspiracy in the indictment.

The word "knowingly" means that the act was done voluntarily and intentionally and not

because of mistake or accident.

To act "willfully" means to act voluntarily and intelligently and with the specific intent

that the underlying crime be committed—that is to say, with bad purpose, either to disobey or

disregard the law—not to act by ignorance, accident, or mistake.  The government must prove

two types of intent beyond a reasonable doubt before the defendant can be said to have willfully

joined the conspiracy: an intent to agree, and an intent that the underlying crime be committed.

In determining whether the government has proved beyond a reasonable doubt that a

defendant knowingly and willfully joined in the conspiracy, you must consider only that

defendant's own words and or actions. The defendant's knowledge is a matter of inference from

the facts proved.  In that connection, to become a member of the conspiracy, the defendant need

---

[57] Adapted from Sand et al., *Modern Federal Jury Instructions (Crim.)*, Inst. 52-30
(2018); First Circuit Pattern Instruction 2.15 (Definition of "Knowingly") (Updated 10/5/12);
First Circuit Pattern Instruction 4.18.371(1) (Conspiracy, 18 U.S.C. § 371; 21 U.S.C. § 846)
(Updated 5/9/18); First Circuit Pattern Instruction 5.02 (Mental State That Is Inconsistent with
the Requisite Culpable State of Mind) (Updated 6/14/2002).

not have known the identities of each and every other member, nor need he have been apprised of all of their activities.  Moreover, the defendant need not have been fully informed as to all of the details, or the scope, of the conspiracy in order to justify an inference of knowledge on his part.

I want to caution you that mere knowledge or acquiescence, without participation, in the conspiracy is not sufficient.  Moreover, a defendant has not knowingly and willfully joined a conspiracy merely because he or she does something that happens to further or assist the purposes or objectives of the conspiracy.  More is required under the law.  What is necessary is that the defendant must have participated with knowledge of at least some of the purposes or objectives of the conspiracy and with the intention of aiding in the accomplishment of those unlawful ends.

Evidence has been presented that the defendants acted in good faith.  As I told you a few minutes ago, good faith is a complete defense to the charge in the indictment because good faith on the part of the defendant is, simply, inconsistent with criminal intent.  If after considering the evidence of each defendant's good faith, together with all the other evidence, you have a reasonable doubt that defendant acted with the required criminal intent, then you must find the defendant not guilty.

In sum, in order for the government to meet its burden, the defendant in question, with an understanding of the unlawful character of the conspiracy, must have intentionally engaged, advised, or assisted in it for the purpose of furthering the illegal undertaking.  He thereby becomes a knowing and willing participant in the unlawful agreement—that is to say, a conspirator.

**Defendants' Proposed Final Instruction No. 40**

**SIXTH ELEMENT: PARTICIPATION IN CONDUCT OR AFFAIRS[58]**

The sixth element that the government must prove beyond a reasonable doubt is that the defendant in question actually participated in the conduct or affairs of the enterprise.

"Participation in the conduct or affairs of the enterprise" means participation in the operation or management of the criminal enterprise. That means the government must prove that the defendant in question had some part in directing the enterprise's activities.

---

[58] Adapted from *United States v. Ramirez-Rivera*, 800 F.3d 1, 20 (1st Cir. 2015); *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993); *United States v. Napout*, No. 15-CR-252, Dkt. No. 872 (E.D.N.Y. Dec. 26, 2017).

**Defendants' Proposed Final Instruction No. 41**

**SEVENTH ELEMENT: AGREEMENT TO COMMIT PREDICATE ACTS[59]**

The seventh element the government must prove beyond a reasonable doubt is that when the defendant joined the conspiracy, the defendant had the specific intent that a member of the conspiracy in fact would commit conduct that constitutes two or more racketeering acts.

The criminal intent I am describing in this element is the second type of criminal intent that the government must prove beyond a reasonable doubt. A few moments ago I told you that the government must prove beyond a reasonable doubt that the defendant knowingly and willfully agreed to join the alleged conspiracy; that is an intent to agree. The second type of intent, which I am discussing now, is that the defendant agreed and specifically intended that a member of the conspiracy in fact would commit conduct that constitutes two or more racketeering acts as alleged in the indictment as part of a pattern of racketeering; that is, this is an intent that a crime be committed.

As I have told you previously, the indictment alleges that five racketeering acts—distribution of a controlled substance in violation of the Controlled Substances Act, honest services mail fraud, honest services wire fraud, mail fraud, and wire fraud—were or were intended to be the pattern of racketeering acts committed as part of the conspiracy. These are the only alleged racketeering acts you may consider; you may not consider evidence of any other crimes.

Next, I will explain the elements of each of those five crimes so that you may evaluate whether the defendant had the specific intent that a member of the conspiracy would commit

---

[59] Adapted from Sand et al., *Modern Federal Jury Instructions (Crim.)*, Insts. 52-24, 52-31 (2018); *United States v. Reichel*, No. 15-CR-10324, Dkt. No. 244 (D. Mass. June 17, 2016).

conduct that constitutes two or more of those crimes as part of the alleged racketeering conspiracy.

You may not find that the government has proved this element unless you all agree unanimously that the defendant in question agreed that a member of the conspiracy would commit at least *the same* two racketeering acts.  That is, you cannot find the defendant guilty if some of you think the defendant agreed that a member of the conspiracy should commit racketeering acts A and B, but the rest of you think that the defendant only agreed that a member of the conspiracy would commit acts C and D.  To convict the defendant in question, there must be at least two specific racketeering acts that *all* of you believe that the defendant in question agreed a member of the conspiracy would commit as part of the pattern of racketeering activity.

**Defendants' Proposed Final Instruction No. 42**

**FIRST RACKETEERING ACT:
ILLEGAL DISTRIBUTION OF A CONTROLLED SUBSTANCE[60]**

The first alleged racketeering act involves distribution of a controlled substance in violation of the Controlled Substances Act.

Title 21, United States Code, Section 841(a)(1) makes it a crime for any physician to knowingly or intentionally dispense or distribute a controlled substance outside of the usual course of professional practice and without a legitimate medical purpose.

"Dispense" can mean to prescribe a controlled substance.  "Distribute" can mean to deliver, other than by dispensing, a controlled substance.  In a moment I will provide a separate instruction regarding what it means to be "outside of the usual course of professional practice" and "without a legitimate medical purpose."

I am providing you with the elements for illegal distribution so that you may evaluate whether the defendant in question specifically intended and agreed that a member of the conspiracy would commit conduct that actually constituted illegal distribution.  If the government does not prove beyond a reasonable doubt that a defendant specifically intended and agreed that some member of the conspiracy would engage in this conduct, then the government has failed to prove that illegal distribution was a racketeering act as to this defendant.

In order to prove that a defendant specifically intended and agreed that a member of the conspiracy would commit conduct that would actually constitute illegal distribution, the

_____

[60] Adapted from Sand et al., *Modern Federal Jury Instructions (Crim.)*, Inst. 56-02 (2018); *United States v. Feingold*, 454 F.3d 1001, 1011 (9th Cir. 2006).

government must establish beyond a reasonable doubt each of the following four elements of the offense:

*First*, that the defendant agreed that a healthcare practitioner would dispense Subsys.

*Second*, that the defendant knew at the time of the agreement that Subsys was a controlled substance.

*Third*, that the defendant agreed that the healthcare practitioner would dispense Subsys outside the usual course of medical practice.

*Fourth*, that the defendant agreed that the healthcare practitioner would dispense Subsys without any legitimate medical purpose.

**Defendants' Proposed Final Instruction No. 43**

**SECOND AND THIRD RACKETEERING ACTS:**
**HONEST SERVICES MAIL AND WIRE FRAUD[61]**

The second and third alleged racketeering acts involve honest services mail fraud and honest services wire fraud.

Title 18, United States Code, Section 1347 makes it a crime to commit honest services fraud using either the mails or the wires.

I am providing you with the elements for both kinds of honest services fraud so that you may evaluate whether each defendant specifically intended and agreed that a member of the conspiracy would commit conduct that would actually constitute honest services fraud.  If the government does not prove beyond a reasonable doubt that a defendant specifically intended and agreed that some member of the conspiracy would engage in this conduct, then the government has failed to prove that honest services fraud was a racketeering act as to this defendant.

In order to prove that a defendant specifically intended and agreed that a member of the conspiracy would commit conduct that would actually constitute honest services mail or wire fraud, the government must establish beyond a reasonable doubt each of the following five elements of the offense:

*First*, that healthcare practitioners have a fiduciary duty to their patients to prescribe medication in the usual course of professional practice and for a legitimate medical purpose.

---

[61] Adapted from Eleventh Circuit Pattern Instruction 50.2 (Honest Services Mail Fraud) (2017); Ninth Circuit Pattern Instruction 8.123 (Mail Fraud Scheme to Defraud Deprivation of Intangible Right of Honest Services) (2010); *United States v. Sawyer*, 85 F.3d 713, 732 n.16 (1st Cir. 1996); *United States v. Reichel*, No. 15-CR-10324, Dkt. No. 244 (D. Mass. June 17, 2016) (instructing the jury with respect to the *qui pro quo* requirement of the Anti-Kickback Statute).

*Second*, the defendant agreed and specifically intended that healthcare practitioners would prescribe Subsys in exchange for bribes and kickbacks.

*Third*, the defendant agreed and specifically intended that healthcare practitioners would breach their fiduciary duty to their patients by prescribing Subsys outside the usual course of professional practice and not for a legitimate medical purpose.

*Fourth*, the defendant agreed and specifically intended that healthcare practitioners would deceive their patients about the alleged bribes and kickbacks.

*Fifth*, the defendant agreed and specifically intended that, to carry out the scheme to defraud, the defendant would either (1) cause an interstate wire communication to be used, or it was reasonably foreseeable that for the purpose of executing the scheme or in furtherance of the scheme, an interstate wire communication would be used, on or about the date alleged; or (2) use the United States Postal Service by mailing or by causing to be mailed some matter, communication, or item.

A "scheme" includes any plan, pattern or course of action.  It is not necessary that the government prove all of the details alleged in the indictment concerning the precise nature and purpose of the scheme or that the alleged scheme actually succeeded in defrauding anyone.  But the government must prove beyond a reasonable doubt that the agreed-upon scheme was substantially as alleged in the indictment.

A "bribe or a kickback" is any money or compensation of any kind which is provided, directly or indirectly, to a healthcare practitioner for the purpose of inducing or rewarding favorable treatment from the healthcare practitioner in connection with their provision of medical services to a patient.

"Induce" in this context means to undertake to gain corrupt influence over the judgment of the healthcare practitioner making a decision regarding the prescription of drugs.  More specifically, as alleged in the indictment, the contemplated inducement must be what is referred to as a *quid pro quo* (or "this for that") transaction, one in which a member of the conspiracy gives speaker payments or other financial incentives (the "this") to a healthcare practitioner in exchange for the healthcare practitioner prescribing Subsys to their patients (the "that").

The speaker payments or other financial incentives must involve a corrupt intent by the defendant to achieve a *quid pro quo* transaction.  A defendant cannot be convicted of agreeing to deprive a patient of the honest services of their healthcare practitioner by bribery or kickbacks merely because he or she intended to cultivate a business relationship or create a reservoir of goodwill that might ultimately affect the healthcare practitioner's prescribing decisions.

If the inducement is for a purpose other than seeking to effect a *quid pro quo* transaction of money or other compensation in exchange for prescriptions of Subsys, then it is not illegal under the honest services fraud statute.  However, a person may act with a mixture of motives and the government's burden is to prove that part of the payment is intended to corruptly compensate for prescriptions and/or corruptly induce future prescriptions.

When considering whether the scheme caused or would cause an interstate wire to be used, you should understand that an "interstate wire communication" includes a telephone communication from one state to another.  The term also includes a wire transfer of funds between financial institutions as well an e-mail transmission or other internet communication. The wire communication does not itself have to be essential to the scheme, but it must have been made for the purpose of carrying it out.  There is no requirement that a defendant him or herself was responsible for the wire communication, that the wire communication itself was fraudulent

or that the use of wire communications facilities in interstate commerce was intended as the specific or exclusive means of accomplishing the alleged fraud.  But the government must prove beyond a reasonable doubt that each defendant knew, or could reasonably have foreseen, that use of a wire communication would follow in the course of the scheme.

When considering whether the scheme utilized or would utilize the U.S. mails, any mailing does not itself have to be essential to the scheme, but it must have been made for the purpose of carrying it out.  There is no requirement that a defendant him or herself was responsible for the mailing, that the mailing itself was fraudulent or that the use of the mail was intended as the specific or exclusive means of accomplishing the alleged fraud.  But the government must prove beyond a reasonable doubt that the defendant knew, or could reasonably have foreseen, that use of the mail would follow in the course of the scheme in furtherance of the scheme or for the purpose of executing the scheme.

**Defendants' Proposed Final Instruction No. 44**

**FOURTH RACKETEERING ACT: MAIL FRAUD**[62]

The fourth alleged predicate racketeering act I will discuss is mail fraud to obtain money or property.

Title 18, United States Code, Section 1341 makes it a crime to commit fraud using the mails.

I am providing you with the elements for mail fraud so that you may evaluate whether each defendant specifically intended and agreed that a member of the conspiracy would commit conduct that actually constituted mail fraud.  If the government does not prove beyond a reasonable doubt that a defendant specifically intended and agreed that some member of the conspiracy would engage in this conduct, then the government has failed to prove that mail fraud was a racketeering act as to this defendant.

In order to prove that a defendant specifically intended and agreed that a member of the conspiracy would commit conduct that would actually constitute mail fraud, the government must establish beyond a reasonable doubt each of the following four elements of the offense:

*First*, the defendant agreed that there would be a scheme, substantially as alleged in the indictment, to defraud.

*Second*, the defendant agreed that the scheme to defraud would involve the making of false statements of material fact.

*Third*, the defendant agreed that one or more members of the conspiracy would knowingly and willfully participate in this scheme with the intent to defraud.

---

[62] Adapted from First Circuit Pattern Instruction 4.18.1341 (Updated 5/5/17).

*Fourth*, the defendant agreed that for the purpose of executing the scheme or in furtherance of the scheme, one or more members of the conspiracy would cause the U.S. mail to be used, or it was reasonably foreseeable that for the purpose of executing the scheme or in furtherance of the scheme, the U.S. mail would be used, on or about the date alleged.

In the context of mail fraud, the term "defraud" means to deceive another in order to obtain money or property.

A "material" fact is one that has a natural tendency to influence or be capable of influencing the decision of the decisionmaker to whom it was addressed.

## Defendants' Proposed Final Instruction No. 45

## FIFTH RACKETEERING ACT: WIRE FRAUD[63]

The second alleged predicate racketeering act I will discuss is wire fraud of money or property.

Title 18, United States Code, Section 1343 makes it a crime to commit fraud using the wires.

I am providing you with the elements for wire fraud so that you may evaluate whether each defendant specifically intended and agreed that a member of the conspiracy would commit conduct that actually constituted wire fraud. If the government does not prove beyond a reasonable doubt that a defendant specifically intended and agreed that some member of the conspiracy would engage in this conduct, then the government has failed to prove that wire fraud was a racketeering act as to this defendant.

In order to prove that a defendant specifically intended and agreed that a member of the conspiracy would commit conduct that would actually constitute wire fraud, the government must establish beyond a reasonable doubt each of the following four elements of the offense:

*First*, the defendant agreed that there would be a scheme, substantially as alleged in the indictment, to defraud.

*Second*, the defendant agreed that the scheme to defraud would involve the making of false statements of material fact.

*Third*, the defendant agreed that one or more members of the conspiracy would knowingly and willfully participate in this scheme with the intent to defraud.

---

[63] First Circuit Pattern Instruction 4.18.1343 (Updated 2/1/13).

*Fourth*, the defendant agreed that for the purpose of executing the scheme or in furtherance of the scheme, one or more members of the conspiracy would cause an interstate wire communication to be used, or it was reasonably foreseeable that for the purpose of executing the scheme or in furtherance of the scheme, an interstate wire communication would be used, on or about the date alleged.

As in the context of mail fraud, in the context of wire fraud, the term "defraud" means to deceive another in order to obtain money or property.

**Defendants' Proposed Final Instruction No. 46**

**GOOD FAITH**[64]

The "good faith" of a defendant is a complete defense to the charge in the indictment because good faith on the part of the defendant is, simply, inconsistent with both knowingly and willfully agreeing to become a member of the alleged conspiracy and specifically intending that a member of the alleged conspiracy will commit conduct that constitutes two or more racketeering acts.

A person who acts, or causes another person to act, on a belief or an opinion honestly held is not punishable under the law merely because the belief or opinion turns out to be inaccurate, incorrect, or wrong. An honest mistake in judgment or an honest error in management does not rise to the level of criminal conduct. The law is written to subject to criminal punishment only those people who act with criminal intent.

While the term "good faith" has no precise definition, it encompasses, among other things, a belief or opinion honestly held, an absence of malice or ill will, and an intention to avoid taking unfair advantage of another.

In determining whether or not the government has proven that the defendant acted with an intent to criminal intent or whether the defendant acted in good faith, you must consider all of the evidence received in the case bearing on the defendant's state of mind.

The burden of proving good faith does not rest with the defendant because the defendant does not have any obligation to prove anything in this case. It is the government's burden to

---

[64] Adapted from O'Malley et al., *Federal Jury Practice and Instructions* § 19:06 (2018).

prove to you, beyond a reasonable doubt, that the defendant acted with criminal intent, not good faith.

If the evidence in the case leaves you with a reasonable doubt as to whether the defendant acted with the criminal intent or in good faith, you must find the defendant not guilty.

**Defendants' Proposed Final Instruction No. 47**

**MEANING OF "USUAL COURSE OF PROFESSIONAL PRACTICE"
AND "LEGITIMATE MEDICAL PURPOSE"[65]**

In the course of explaining the elements for honest services fraud and illegal distribution under the Controlled Substances Act, I used two terms: "usual course of professional practice" and "legitimate medical purpose."  I will now explain those terms to you.

In making a medical judgment concerning the right treatment for an individual patient, there is no single national standard.  Instead, healthcare practitioners have a lot of discretion to choose among a wide range of options.  Therefore, in determining whether a defendant agreed that healthcare practitioners should prescribe Subsys without a legitimate medical purpose or outside the usual course of professional practice, you should examine all of the surrounding circumstances.

With respect to a "legitimate medical purpose," if you conclude that a healthcare practitioner could prescribe a patient Subsys in good faith, then the healthcare practitioner would have prescribed that controlled substance for a legitimate medical purpose even if the practitioner had received a financial inducement to do so.  In order to establish that a practitioner lacked any legitimate medical purpose in prescribing Subsys, the government must prove,

---

[65] *Gonzalez v. Oregon*, 546 U.S. 243, 269–70 (2006) ("The [CSA] statute . . . regulates medical practice insofar as it bars doctors from using their prescription-writing powers as a means to engage in illicit drug dealing and trafficking as conventionally understood.  Beyond this, however, the statute manifests no intent to regulate the practice of medicine generally."); *United States v. Moore*, 423 U.S. 122 (1975); *United States v. Smith*, 573 F.3d 639 (8th Cir. 2009); *United States v. Merrill*, 513 F.3d 1293 (11th Cir. 2008); *United States v. Feingold*, 454 F.3d 1001 (9th Cir. 2006); *United States v. McIver*, No. 8:04-CR-745, Dkt. No. 27 (D.S.C. Apr. 18, 2005) (final jury instructions), *affirmed by United States v. McIver*, 470 F.3d 550 (4th Cir. 2006); *United States v. Zolot*, No. 1:11-CR-10070, Dkt. No. 631 at 25–26 (D. Mass. May 7, 2015) (Saris, J.) (final jury instructions).

beyond a reasonable doubt, that a practitioner could not in good faith prescribe Subsys to a given patient, but rather was prescribing Subsys for something other than medical use, such as for the purpose of illicit drug dealing or drug trafficking. In other words, it is not enough for the government to show that someone might disagree with the practitioner's decision to prescribe Subsys to the patient, or that in hindsight Subsys was not the right drug for that patient, or that the practitioner was a bad or negligent physician or nurse practitioner. This is not a medical malpractice lawsuit.

"Good faith" in this context means good intentions and the honest exercise of professional judgment about the patient's needs. It means that the healthcare practitioner would act in accordance with what he or she reasonably believed to be proper medical practice, even if the doctor's decisionmaking was influenced by other factors, such as a financial inducement. Thus, a practitioner would be acting in good faith if he or she believed that Subsys would treat a patient's pain even though the practitioner chose to prescribe Subsys instead of a competing drug because of a financial inducement to prescribe Subsys.

With respect to the "usual course of professional practice," a healthcare practitioner's negligence, failure to meet a standard of care, or medical malpractice, on its own, is not enough to establish that the healthcare practitioner's conduct was outside the "usual course of professional practice." Rather, to prove that the healthcare practitioner would act outside the course of usual practice in prescribing Subsys to a given patient, the government must prove, beyond a reasonable doubt, that the defendant in question knew that the physician's decision to prescribe Subsys to that patient would be inconsistent with *any* accepted method of treating the patient—that the defendant knew that the physician would operate not as a physician, but as a drug pusher.

None of the defendants are healthcare practitioners and none of them prescribed Subsys to a patient.  Therefore, to show that the defendant in question agreed that a member of the enterprise would violate the Controlled Substances Act, the government must prove that the defendant agreed and specifically intended that a healthcare practitioner would prescribe Subsys to a patient without a legitimate medical purpose and outside the course of usual professional practice.

**Defendants' Proposed Final Instruction No. 48**

**FRAUD BY OMISSION (IF APPLICABLE)[66]**

The indictment alleges that the defendants agreed and specifically intended that members of the conspiracy would act to defraud insurance companies by failing to disclose certain information to them.  With regard to the alleged failure to disclose, a failure to disclose alone is not sufficient to establish fraud.  That is, a person does not commit fraud by simply failing to provide information that the receiving party might want to know.

A person's failure to disclose information may form the basis of a crime only in three situations:

*First*, if the person had a legal duty to disclose the material fact that was allegedly omitted.[67]

*Second*, if a person said something that was literally true but ultimately misleading because of what that person did not disclose.  It is not sufficient for a statement to be merely

---

[66] Adapted from this Court's preliminary instruction in *United States v. Facteau*, No. 15-CR-10076, Dkt. No. 440 at 19 (D. Mass. Aug. 4, 2016).

[67] *United States v. Anzalone*, 766 F.2d 676, 683 (1st Cir. 1985) ("[I]t is incumbent upon the government to prove that the defendant had a *legal duty* to disclose the material facts at the time he was alleged to have concealed them.") (emphasis in original); *accord Bonilla v. Volvo Car Corp.*, 150 F.3d 62, 69–70 (1st Cir. 1998) (finding no basis for imputing a legal duty to disclose, and hence no basis for fraud by concealment); *see also United States v. Richeson*, 825 F.2d 17, 20 (4th Cir. 1987) ("Ordinarily, a defendant may not be convicted of concealment unless the defendant had a duty to disclose."); Sand et al., *Modern Federal Jury Instructions (Crim.)*, Instr. 36-4 cmt. (2018) ("There must be a legal duty to disclose to the government the material facts allegedly concealed. This generally requires that the government show some statute, regulation or form which requires disclosure.") (collecting cases); Sand et al., *Modern Federal Jury Instructions (Crim.)* Instr. 44-4 (2018) ("The failure to disclose information may also constitute a fraudulent representation if the defendant was under a legal . . . duty to make such a disclosure, the defendant actually knew such disclosure was required to be made, and the defendant failed to make such disclosure with intent to defraud.").

incomplete.  Rather, the government must prove the statement was intentionally misleading because the defendant deliberately created a material misimpression through his omission.[68]

*Third*, if a person concealed information with an intent to deceive.  In order to prove concealment, the government must prove that a person took active steps to cover up material information with an intent to deceive.  Mere nondisclosure of information, without more, does not constitute concealment.[69]

Outside of these three situations, a failure to disclose information is not a crime.  Rather, as I just said, a failure to disclose can be a crime only where there is a duty to disclose, an intentional omission that makes what was said misleading, , or an intentional concealment of material information.  In addition, to prove fraud, the Government must also prove intent to defraud, as I instructed you previously.

---

[68] *Bonilla v. Volvo Car Corp.*, 150 F.3d 62, 70 (1st Cir. 1998) (statute reaches "a statement that is literally true but is made misleading by a significant omission").

[69] *United States v. Colton*, 231 F.3d 890, 899 (4th Cir. 2000) (describing "concealment" as "deceptive acts or contrivances intended to hide information, mislead, avoid suspicion, or prevent further inquiry into a material matter."); *United States v. Rigdon*, 874 F.2d 774, 779 (11th Cir. 1989) (reversing conviction on concealment count for failure to prove affirmative act of concealment); *United States v. Weiss*, 491 F.2d 460, 466 (2d Cir. 1974) (contrasting "concealment" with "mere failure to produce the documents"); Sand *et al.*, *Modern Federal Jury Instructions (Crim.)*, Instr. 36-4, cmt. ("Concealment of a material fact requires more than mere nondisclosure. It requires proof of an affirmative act which actively conceals a material fact.") (collecting cases).

**Defendants' Proposed Final Instruction No. 49**

**OFF-LABEL USE OF PRESCRIPTION DRUGS**

You heard evidence about the medical practice of prescribing Subsys and other medications for uses not approved by the FDA—a practice referred to as prescribing "off-label." As I told you at the outset of the trial, prescribing and using approved medications off-label is a common and legal practice in medicine.[70]  Although the FDA regulates the label that appears on medications and how pharmaceutical companies may market those medications, it does not regulate the practice of medicine or how and when physicians prescribe drugs.  In fact, it specifically permits healthcare practitioners to prescribe drugs for off-label use.  In other words, healthcare practitioners are allowed to prescribe a drug for uses for which it has not been approved by the FDA.  A healthcare practitioner is permitted to prescribe a medication for any indication if it is that healthcare practitioner's medical judgment that doing so is in the best interests of the patient.[71]  An off-label use may even be the kind of care that healthcare practitioners are expected to provide when treating certain conditions.  Thus, you may not conclude that a particular prescription was outside the usual course of professional practice, not

---

[70] FDA, Understanding Unapproved Use of Drugs "Off label," ttps://www.fda.gov/forpatients/other/offlabel/default.htm (last visited Nov. 27, 2018); *United States v. Caronia*, 703 F.3d 149, 152 (2d Cir. 2012).

[71] *See* 21 U.S.C. § 396 ("Nothing in [the Federal Food, Drug and Cosmetic Act] shall be construed to limit or interfere with the authority of a health care practitioner to prescribe or administer any legally marketed device to a patient for any condition or disease within a legitimate health care practitioner-patient relationship."); *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 350 (2001) ("[T]he 'FDA itself recogniz[es] the value and propriety of off-label use[.]'") (citation omitted); *see also Sita v. Danek Med., Inc.*, 43 F. Supp. 2d 245, 262-63 n.13 (E.D.N.Y. 1999); *Ortho Pharm. Corp. v. Cosprophar, Inc.*, 32 F.3d 690, 692 (2d Cir. 1994).

for a legitimate medical purpose, or in violation of a healthcare practitioner's fiduciary duty

simply because it was off-label.

**Defendants' Proposed Final Instruction No. 50**

**SPEAKER PROGRAMS**

To prove to you that the defendants agreed to intentionally bribe and provide kickbacks to healthcare practitioners to prescribe Subsys outside the course of professional practice, without any legitimate medical purpose, and in breach of the healthcare practitioners' fiduciary duty to their patients, the government presented evidence that Insys paid healthcare practitioners to speak to other healthcare professionals about their experience with Subsys over dinner at a restaurant or other similar venue.

As I said at the outset of the trial, paying a healthcare practitioner to speak to other healthcare professionals about their experience with Subsys is not illegal.  Nor is it illegal to target the high prescribers of a particular drug to become speakers.  Such "speaker programs" are a common way for pharmaceutical companies to help educate and inform healthcare professionals about the benefits, risks, and appropriate uses of medications.[72]  There is nothing wrong about them.  Indeed, the indictment itself notes that "some speaking engagements and corresponding payments to key opinion leaders functioned as legitimate marketing events."[73]

In determining whether the defendants agreed to commit conduct that constitutes two or more racketeering acts, the issue for you to determine will be whether the defendants agreed and specifically intended that Insys's speaker programs go beyond legitimate marketing events because they were bribes and kickbacks intended to induce the speakers to prescribe Subsys outside the course of professional practice and without any legitimate medical purpose.

---

[72] Pharmaceutical Research and Manufacturers of America, Code on Interactions with Healthcare Professionals (2009) at 9.

[73] Second Superseding Indictment ¶ 27.

**Defendants' Proposed Final Instruction No. 51**

**RETURN ON INVESTMENT OR "ROI"** [74]

During the trial, the government presented evidence that Insys performed return on investment ("ROI") analyses on its speaker program.  It is not illegal for a company to perform ROI analyses on its speaker program.  Although you may consider as evidence a witness's testimony that he conducted the ROI analysis—and you may give it whatever weight you think it is entitled to—it does not violate any law for a pharmaceutical company to analyze whether healthcare practitioners whom it is paying to be speakers are prescribing the company's product.

---

[74] This cautionary instruction is consistent with the final jury charge that Judge Woodlock gave in *United States v. Reichel*, No. 15-CR-10324, Dkt. No. 244 (D. Mass. June 17, 2016).  As Judge Woodlock explained, the government must prove a *quid pro quo* relationship, and a defendant cannot be convicted "merely because he sought to cultivate a business relationship or create a reservoir of goodwill that might ultimately affect one or more unspecified purchase or order decisions."  *Id.* at 5.

**Defendants' Proposed Final Instruction No. 52**

**PATIENT SUPPORT PROGRAMS**[75]

To prove to you that the defendants agreed to instruct Insys employees to make materially false statements to insurance companies in order to induce the insurance companies to reimburse patients for Subsys prescriptions, the government presented evidence that Insys established a separate department that contacted insurance companies directly in order to seek approval of insurance reimbursements on behalf of patients who were prescribed Subsys.

As I said at the outset of the trial, establishing such a department is not illegal.  Such patient support programs have been established by other pharmaceutical companies to help patients secure reimbursement for their prescriptions. There is nothing wrong with doing so.

In determining whether the defendants agreed to commit conduct that constitutes two or more racketeering acts, the issue for you to determine will be whether the defendants agreed and specifically intended that employees at Insys's patient support programs should engage in a scheme to defraud insurance companies—that is, that the employees would be instructed to make materially false representations to insurance companies in order to deceive the insurance companies into paying for patients' Subsys prescriptions.

---

[75] *See* Celgene, "Understand your insurance plan" <https:// www.celgenepatientsupport.com/understand-insurance-plan> (last visited Nov. 27, 2018) (noting that "[i]f your health insurance has denied coverage of the Celgene medicine your doctor has prescribed, we can assist with the appeals process"); Biogen, "Above MS Support" <https://www.tysabrihcp.com/en_us/home/hcp-patient-resources/above-ms.html> (last visited Nov. 27, 2018) (noting that Biogen's "Above MS" support program is a "great resource" that provides medical practices and patients with "assistance with the process of prior authorizations and denied claims").

### Defendants' Proposed Final Instruction No. 53

### BRIBES AND KICKBACKS INSUFFICIENT TO CONVICT

You heard evidence that bribes or kickbacks were provided to healthcare providers in order to increase the number of prescriptions they wrote or to increase the dosage of those prescriptions.  The defendants dispute that they agreed to any such bribes or kickbacks.  However, even if you find in the government's favor on this point, you cannot convict the defendants on that basis.  Rather, as I will explain to you in more detail after you have heard all of the evidence, the government must prove, among other things, that defendants agreed and specifically intended for Subsys to be prescribed outside the course of professional practice and without a legitimate medical purpose.

**Defendants' Proposed Final Instruction No. 54**

**DIRECT SHIPPING**[76]

To prove to you that the defendants sought to prevent detection of allegedly illegal activities, the government presented evidence that Insys established direct distribution agreements with certain pharmacies. As I said at the outset of the trial, engaging in so-called "direct shipping" to pharmacies is not illegal.

Pharmaceutical manufacturers have two main options when distributing their products to pharmacies. *First*, the manufacturer can use a large wholesaler. You may have heard of some of these wholesalers, such as McKesson and Cardinal Health. *Second*, the manufacturer can use a third-party logistics company. This second option is often called "direct shipping" because the manufacturer is not using a wholesaler, but is selling directly to pharmacies, even though a third-party logistics company is actually arranging storage and transportation of the drug to the pharmacy.

Although wholesaling is the dominant way to distribute branded drugs in this country, the use of a third-party logistics company to "direct ship" to pharmacies is increasingly common. And the DEA has acknowledged that "direct shipping' agreements are not prohibited.

---

[76] Kathleen Iacocca, Yao Zhao, *Resell vs. Direct Models: US Branded Drug Distribution in the Future*, PharmaExec (July 17, 2015), *available at* http://www.pharmexec.com/resell-vs-direct-models-us-branded-drug-distribution-future; Letter from N. Yeager to defense counsel of Oct. 26, 2018.

**Defendants' Proposed Final Instruction No. 55**

### VIOLATION OF COMPANY POLICY OR INDUSTRY CODE
### IS NOT A CRIME (IF APPLICABLE) [77]

You have also heard some evidence in this case about various company policies and the

Pharmaceutical Research and Manufacturers of America's Code on Interactions with Healthcare

Professionals, sometimes called the "PhRMA Code." Violating a company policy or the

PhRMA Code is not a crime. You are not tasked with determining whether any actions violated

company policies or the PhRMA Code. Your only task is to decide whether the government has

proved beyond a reasonable doubt that the defendants violated the RICO conspiracy statute.

---

[77] *See United States v. Anderson*, No. 05-CR-249, 2006 WL 1983770, at *3 (D. Minn. July 13, 2006) ("[A] violation of an internal company policy is not a crime."); *see also Skilling v. United States*, 561 U.S. 358, 409–10 (2010) (showing a violation of a workplace rule, by itself, is not punishable under the mail or wire fraud statutes); *United States v. Harvard*, 103 F.3d 412, 422 (5th Cir. 1997) (cautioning the jury they "may not find the Defendant guilty of any crime solely because he may have violated [] an administrative banking regulation or because he may have violated internal bank policies").

## Defendants' Proposed Final Instruction No. 56

## VENUE[78]

Finally, you must also determine if the government has proven venue in this district. Venue refers to the location of the alleged crime.  The indictment alleges that the acts in furtherance of the enterprise occurred in part in this judicial district, the District of Massachusetts.  This District of Massachusetts covers the Commonwealth of Massachusetts.

You have heard some evidence that some Insys employees lived and worked in Massachusetts.  You have heard some evidence that Insys marketed Subsys to some physicians in Massachusetts, and that some Massachusetts physicians might have prescribed Subsys to some patients.  I instruct you that this does not establish venue in Massachusetts.

To establish that venue is appropriate in Massachusetts, the government must prove at least one overt act in fact occurred in Massachusetts.  An "overt act" is an act knowingly committed by someone that the government has proven was a member of the alleged conspiracy for the specific purpose and with the specific intent of accomplishing some purpose of the conspiracy.  Even if other acts were committed outside this district, venue is established in Massachusetts only if some act in furtherance of the conspiracy took place in this district. Unless the government has proven that a member of the alleged conspiracy committed such an overt act in Massachusetts, you must return a verdict of not guilty.

---

[78] Adapted from *United States v. Napout*, No. 15-CR-252, Dkt. No. 872 (E.D.N.Y. Dec. 26, 2017); *see United States v. Josleyn*, 99 F.3d 1182, 1191–92 (1st Cir. 1996) ("[V]enue in a conspiracy case depends upon whether an overt act in furtherance of the alleged conspiracy occurred in the trial district."); *Whitfield v. United States*, 543 U.S. 209, 218, 125 S. Ct. 687, 693, 160 L. Ed. 2d 611 (2005) ("[V]enue is proper in any district in which an overt act in furtherance of the conspiracy was committed, even where an overt act is not a required element of the conspiracy offense.").

While the government's burden as to everything else in the case is proof beyond a reasonable doubt, venue need only be proved by the lesser standard of "preponderance of the evidence."  That means to prove that the fact is more likely true than not true.  I emphasize that this lesser standard applies *only* where I specifically mention it in this charge.  For all other issues, the standard is "beyond a reasonable doubt."

If you find that the government has failed to prove by a preponderance of the evidence that any act in furtherance of the enterprise within this district, you must find the defendants not guilty.

### III.D.  DELIBERATIONS AND VERDICT

### Defendants' Proposed Final Instruction No. 57

### FOREPERSON'S ROLE; UNANMITY[79]

I come now to the last part of the instructions, the rules for your deliberations.

When you retire you will discuss the case with the other jurors to reach agreement if you can do so. You shall permit your foreperson to preside over your deliberations, and your foreperson will speak for you here in court. Your verdict must be unanimous.

---

[79] First Circuit Pattern Instruction 6.01 (Updated 6/14/2002).

**Defendants' Proposed Final Instruction No. 58**

**CONSIDERATION OF EVIDENCE**[80]

Your verdict must be based solely on the evidence and on the law as I have given it to you in these instructions.  However, nothing that I have said or done is intended to suggest what your verdict should be—that is entirely for you to decide.

---

[80] First Circuit Pattern Instruction 6.02 (Updated 4/29/2013).

**Defendants' Proposed Final Instruction No. 59**

**REACHING AGREEMENT**[81]

Each of you must decide the case for yourself, but you should do so only after considering all the evidence, discussing it fully with the other jurors, and listening to the views of the other jurors.

Do not be afraid to change your opinion if you think you are wrong.  But do not come to a decision simply because other jurors think it is right.

This case has taken time and effort to prepare and try.  There is no reason to think it could be better tried or that another jury is better qualified to decide it.  It is important therefore that you reach a verdict if you can do so conscientiously.  If it looks at some point as if you may have difficulty in reaching a unanimous verdict, and if the greater number of you are agreed on a verdict, the jurors in both the majority and the minority should reexamine their positions to see whether they have given careful consideration and sufficient weight to the evidence that has favorably impressed the jurors who disagree with them.  You should not hesitate to reconsider your views from time to time and to change them if you are persuaded that this is appropriate.

It is important that you attempt to return a verdict, but, of course, only if each of you can do so after having made your own conscientious determination. Do not surrender an honest conviction as to the weight and effect of the evidence simply to reach a verdict.

---

[81] First Circuit Pattern Instruction 6.03 (Updated 6/14/2002).

**Defendants' Proposed Final Instruction No. 60**

**RETURN OF VERDICT FORM**[82]

I want to read to you now what is called the verdict form.  This is simply the written notice of the decision you will reach in this case.

**[Read form.]**

After you have reached unanimous agreement on verdicts for all of the defendants, your foreperson will fill in the form that has been given to you, sign and date it, and advise the jury officer outside your door that you are ready to return to the courtroom.  After you return to the courtroom, your foreperson will deliver the completed verdict form as directed in open court.

---

[82] First Circuit Pattern Instruction 6.04 (Updated 10/23/2006).

**Defendants' Proposed Final Instruction No. 61**

**COMMUNICATIONS WITH COURT**[83]

If it becomes necessary during your deliberations to communicate with me, you may send a note through the jury officer signed by your foreperson or by one or more members of the jury. No member of the jury should ever attempt to communicate with me on anything concerning the case except by a signed writing, and I will communicate with any member of the jury on anything concerning the case only in writing, or orally here in open court. If you send out a question, I will consult with the parties as promptly as possible before answering it, which may take some time. You may continue with your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.

---

[83] First Circuit Pattern Instruction 6.05 (Updated 10/05/2012).

**Defendants' Proposed Final Instruction No. 62**

**EACH DEFENDANT SEPARATELY; UNANIMITY**

As I told you at the outset of this case, each defendant must be considered separately.

Your verdict as to each defendant must be unanimous.[84]

---

[84] Adapted from First Circuit Pattern Instruction 1.02 (Updated 7/27/2007); Sand et al., *Modern Federal Jury Instructions (Crim.)*, Inst. 3-7 (2018).