# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 16-CR-10343-ADB |
| | ) | |
| MICHAEL GURRY et al., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' OPPOSITION TO THE GOVERNMENT'S MOTION FOR CLARIFICATION OR TO AMEND ITS LIST OF UNINDICTED CO-CONSPIRATORS

The "narrowest" request that the government makes in its motion is for permission to treat Dr. Bart Gatz as an unindicted co-conspirator for the remainder of trial.  The broadest request that the government makes is for permission to point to any of the physicians with whom Insys Therapeutics had a financial relationship and argue to the jury that Defendants tried to bribe them. If the Court grants either one of the government's requests, it will cause substantial unfair prejudice to Defendants and inject constitutional error in this trial.

In opposition to the government's motion, Defendants wish to focus the Court on the following key points.

***1. The government's omission of Dr. Gatz from its list of unindicted co-conspirators was not plausibly "inadvertent."***  The First Superseding Indictment ("FSI") identified Dr. Gatz as "Practitioner #10," alleging that the speaker fees he received from Insys were bribes.[1]  After learning of the FSI's allegations, Dr. Gatz, who has never been charged with any crime, responded by publicly denying that he took bribes from Insys, including telling the *Palm Beach Post*: "I never conspired to break the law.  All I did was treat my patients.  I didn't do anything wrong. . . .

---

[1] The government's motion mistakenly refers to Dr. Gatz as "Practitioner #9" from the FSI.

[Subsys] was my go-to medication for cancer patients." Thus, when the government revamped its charges and streamlined its allegations in the Second Superseding Indictment ("SSI"), it had good strategic reasons to avoid mischaracterizing Dr. Gatz as a participant in the alleged bribery scheme. This, and not some mistake that a team of experienced prosecutors failed to catch until a month into trial, explains why the government both removed Dr. Gatz from the SSI and left him off of the list of co-conspirators that it provided to Defendants on September 25, 2018. *See* Exh. A, at 3-5 (government's 28-Day Letter).

The government's claim of inadvertence is further contradicted by the fact that, in an October 18, 2018 discovery letter, the government identified six individuals it "neglected to include" on its September 25, 2018 co-conspirator list, and Dr. Gatz was not among them. *See* Exh. B, at 4 (government's October 18, 2018 discovery letter). Likewise absurd is the government's reliance on the fact that an FBI 302 for Alec Burlakoff, which the government produced to Defendants on December 3, 2018, references Insys's hiring of Dr. Gatz's supposed girlfriend as an Area Business Liaison ("ABL"). The government's September 25, 2018 discovery letter referenced three ABLs as co-conspirators, but Dr. Gatz's supposed girlfriend was not among them. *See* Exh. A, at 4-5.

*2. Defendants have relied in good faith on the government's pre-trial co-conspirator list.*

The government's request to add Dr. Gatz to its co-conspirator list one month into trial, and to present evidence concerning other physicians with whom Insys Therapeutics had a financial relationship, ignores a critical fact—that we are one month into trial. Defendants have spent the entire trial relying in good faith on the government's September 25, 2018 co-conspirator list. Defendants' reliance influenced their pretrial investigations and preparation, their opening statements, and their examinations of the prosecution's witnesses, especially Matt Napoletano and

Michael Babich.  For example, company documents show that Mr. Napoletano recruited Dr. Gatz as a key opinion leader in November 2011, four months prior to the launch of Subsys.  Mr. Napoletano's relationship with Dr. Gatz may have dated back to Cephalon.  At Mr. Napoletano's request, Dr. Gatz participated in Insys's initial round of advisory boards in January and February 2012.  Not surprisingly, Dr. Gatz was among the earliest adopters of Subsys, writing 16 prescriptions before Insys even launched its speaker program.

Had Mr. Napoletano been presented with questions regarding Dr. Gatz, he might have offered uniquely exculpatory information regarding him.  Defendants, however, saw no need to present Mr. Napoletano with any questions regarding Dr. Gatz, in light of the fact that the government had long withdrawn the bribery allegations relating to him.[2]  So too with Mr. Babich. With their opportunity to examine Messrs. Napoletano and Babich regarding Dr. Gatz now gone, it would be constitutional error to allow the government suddenly to assert that Dr. Gatz in fact took bribes from Defendants.[3]  For this same reason, the government should not be allowed to assert that any healthcare practitioners other than the 13 identified in its September 25, 2018 discovery letter took bribes from Defendants.

### 3. *Defendants would be unconstitutionally prejudiced if the government were allowed to allege bribes to healthcare practitioners other than the 13 identified in the 28-Day Letter.*

---

[2] Contrary to what the government tries to suggest in its motion, Defendants have never suggested at trial that Messrs. Napoletano, Babich, or Burlakoff bribed or attempted to bribe as part of the conspiracy charged in the SSI healthcare practitioners not identified in the government's September 25, 2018 discovery letter.

[3] It would be especially prejudicial to Defendants Richard Simon and Joseph Rowan, given that they had some personal contacts with Dr. Gatz, including a night out at a club that the government alleges and they dispute.  Dr. Gatz practiced in Florida, which Rowan supervised for part of the alleged conspiracy period.  If Dr. Gatz had been timely identified as an unindicted coconspirator, Rowan would certainly have changed his cross of Mr. Napoletano and would not have passed on any cross of Mr. Babich.

With respect to both the FSI and the SSI, Defendants moved for a bill of particulars providing further specificity regarding the bribes that the government intended to allege at trial. In successfully opposing Defendants' bill of particulars motions, the government emphasized that its evidence at trial would be limited to what it called the "targeted practitioners." *See* Exh. C, at 15:25 (transcript of November 5, 2018 motions hearing). Judge Boal specifically asked, "And you've identified who the targeted practitioners are?" *Id.* at 16:6-7. In response to Judge Boal's question, the government referred to the eight practitioners listed in the SSI. *See id.* at 16:8-18. Counsel for Dr. Kapoor then immediately acknowledged that the government was also intending to introduce at trial evidence that Defendants also sought to bribe the five additional practitioners identified as unindicted co-conspirators in the September 25, 2018 discovery letter. *See id.* at 17:1-3 ("Looking at the 28-day letters . . . we're down to 13 in total."). Dr. Kapoor's counsel told Judge Boal, "We understand that the Government is limiting itself to those 13. . . . *So if that's not the case, that is certainly nothing that we have been told, and I think it's another reason for specificity [regarding the bribes the government intends to allege at trial].*" *Id.* at 17:2-7 (emphasis added). The government did not interject that it planned at trial to introduce evidence of specific alleged bribes not related to the 13 healthcare practitioners identified in its September 25, 2018 discovery letter.[4]

After successfully opposing Defendants' bill of particulars motion, the government defeated Defendants' appeal of Judge Boal's order by arguing to this Court that Defendants could adequately prepare for trial because the government had (1) "disclosed a list of bribes paid as

---

[4] Indeed, in opposing Defendants' first motion to dismiss, the government in unambiguous terms represented that it its proof at trial would be limited to the practitioners identified in its 28-Day Letter. *See* Exh. D, at 62:14-16 ("We've listed our co-conspirator practitioners in our 28-day letters and made it clear we're limiting it to [them]."); *see also id*. at 62:25-63:8 (reaffirming point in response to question from the Court).

honoraria to each of the eight co-conspirator practitioners" listed in the SSI, and (2) "given notice of 13 co-conspirator practitioners."  *See* Gov't Opp., ECF No. 616, at 1, 7.  To be sure, the government also stated in its submission to the Court that it might "seek to offer proof that Defendants and their co-conspirators attempted to bribe additional medical professionals." *Id.* at 7.  But this general statement did not describe what the government apparently now is seeking the Court's permission to do—to introduce without any meaningful pre-trial notice evidence of *specific remuneration* that Defendants allegedly provided or offered to *specific doctors* and to argue to the jury that these payments were intended to be bribes.  If the Court allows the government to do this, it will cause Defendants the precise unconstitutional prejudice that Defendants, in their bill of particulars motion, predicted would occur if the government's trial evidence was not cabined to its 28-day letter.  Indeed, it would be even worse than Defendants predicted in their bill of particulars motion, because Defendants already have (1) lost the ability to examine certain key witnesses, such as Mr. Napoletano and Mr. Babich, regarding whatever heretofore unidentified healthcare practitioners the government might say were targeted with bribes, and (2) made strategic decisions in their opening statements and their cross-examinations of prosecution witnesses in reliance on the government's 28-day letter.

***4. The Court's striking of Mr. Babich's testimony on re-direct was correct, and the Court should deny the government's motion to ensure the integrity of the trial.***  The government's motion is an attempt to unwind the Court's decision to strike testimony that Mr. Babich offered on re-direct examination regarding Drs. Fanto, Gatz, Simon, and Freedman—four doctors not identified as co-conspirators in the 28-day letter who the government tried to have Mr. Babich, its star cooperator, prejudicially lump in with six doctors who are.  As Dr. Kapoor's counsel pointed out to the Court at sidebar, the prejudice of allowing the government to move the goal posts like

this in the middle of trial is extreme: "[W]e've already had major witnesses, where we could have asked [questions] about these doctors and we didn't do it," "[w]e had no ability to address it in the opening," and "people who have already taken [the] stand . . . know these doctors [ ] and could have [provided] contrary information . . . ."[5]  Feb. 22, 2019, Tr. 15:20-16:18.  The government apparently agreed at the time, and the Court accordingly instructed the jury "not to consider the testimony that you just heard about Drs. Fanto, Gatz, Simon, and Freedman," as it was "stricken from the record and it needs to be disregarded by you, not considered for any purpose in your deliberations."  *Id.* at 18:20-24.  Not only would granting the government's motion directly contradict the Court's earlier ruling, it would be prejudicial for the same reasons it was prejudicial just 10 days ago.  Indeed, the potential for prejudice from permitting such evidence has not gotten any less over the past week.  If anything, the potential for prejudice is now even greater.

---

[5] Notably, the government on Wednesday evening informed the defense that it is moving former sales representative and *qui tam* whistleblower Torgny Andersson to the "likely call" list.  Mr. Andersson reported to Defendant Simon from the fall of 2012 to the summer of 2013.  One of Mr. Andersson's top prescribers was Dr. Steve Simon, a key opinion leader whom Dr. Kapoor's counsel specifically referenced in her opening statement as a physician disclosed on CMS's Open Payments website as a recipient of roughly $100,000 in speaker fees in 2014.  The timing of this seems too curious to be coincidental.  The government's motion may be motivated by a desire to have Mr. Andersson testify that Dr. Simon was a recipient or target of bribes in a failed effort to convince him to prescribe Subsys off-label, all in an effort to undermine Dr. Kapoor's counsel's opening statement and link Defendant Simon to alleged wrongdoing with regard to a physician who was never previously identified by the government as a target of actual or attempted bribes.

Dated: March 1, 2019

/s/ Tracy A. Miner
Tracy A. Miner (BBO# 547137)
tminer@mosllp.com
Megan Siddall (BBO# 568979)
msiddall@mosllp.com
Miner Orkand Siddall LLP
470 Atlantic Ave, 4th Floor
Boston, MA 02210
Telephone: (617) 273-8421

***Attorneys for Michael Gurry***

/s/ Peter C. Horstmann
Peter C. Horstmann (BBO# 556377)
pete@horstmannlaw.com
Law Offices Peter Charles Horstmann
450 Lexington Street, Suite 101
Newton, MA 02466

***Attorney for Sunrise Lee***

/s/ Aaron M. Katz
Beth A. Wilkinson (admitted *pro hac vice*)
bwilkinson@wilkinsonwalsh.com
Alexandra M. Walsh (admitted *pro hac vice*)
awalsh@wilkinsonwalsh.com
Kosta S. Stojilkovic (admitted *pro hac vice*)
kstojilkovic@wilkinsonwalsh.com
2001 M Street NW
Washington, D.C. 20036
Telephone: (202) 847-4000

Brien T. O'Connor (BBO# 546767)
brien.o'connor@ropesgray.com
Aaron M. Katz (BBO# 662457)
aaron.katz@ropesgray.com
Ropes & Gray LLP
800 Boylston Street
Boston, MA 02199
Telephone: (617) 951-7000

***Attorneys for Dr. John Kapoor***

Respectfully submitted,

/s/ Steven A. Tyrrell
Steven A. Tyrrell (admitted *pro hac vice*)
steven.tyrrell@weil.com
Patrick J. O'Toole, Jr. (BBO# 559267)
Patrick.otoole@weil.com
Weil, Gotshal & Manges LLP
2001 M Street, NW
Washington, D.C. 20036
Telephone: (202) 682-7213

***Attorneys for Richard Simon***

/s/ Michael Kendall
Michael Kendall (BBO# 544866)
michael.kendall@whitecase.com
Alexandra Gliga (BBO# 694959)
alexandra.gliga@whitecase.com
White & Case, LLP
75 State Street
Boston, MA 02109
Telephone: (617) 939-9310

***Attorneys for Joseph Rowan***

## **CERTIFICATE OF SERVICE**

I, Aaron M. Katz, hereby certify that a true and correct copy of this document will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on March 1, 2019.

/s/ Aaron M. Katz_____