UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MICHAEL GURRY et al.,<br><br>Defendants. | )<br>)<br>)  Criminal No. 16-cr-10343-ADB<br>)<br>)<br>)<br>)<br>) |

**DEFENDANTS' REPLY TO THE GOVERNMENT'S OPPOSITION
TO THE ADMISSION OF THE EXCULPATORY TAPE RECORDINGS**

The government's memorandum of law opposing the admission of the secret tape recordings made by *qui tam* whistleblowers Maria Guzman and Raymond Furchak mischaracterizes the exculpatory purpose for which Defendants will seek to introduce the tape recordings, as well as the hearsay rules and case law. The tapes record several events, including: weekly sales team conference calls that Defendant Joseph Rowan conducted to supervise the sales effort; scheduled sales team meetings at Insys's National Sales Meeting in 2013; Mr. Rowan's calls to Mr. Furchak to oversee Mr. Furchak's efforts to sell Subsys; and a call from Mr. Furchak to Defendant Michael Gurry to discuss an insurance reimbursement issue related to a particular prescription. All of these events are routine business meetings and conversations, and the vehicles that the government claims Defendants used to implement the RICO conspiracy.[1]

---

[1] In the opening paragraph of its opposition memorandum, the government describes the tape recordings as "interviews" of Mr. Rowan and Mr. Gurry. Gov't Opp., at 1. This is nonsense. The tape recordings were clandestinely made by a pair of sales representatives who were trying to gather information that would inculpate Insys Therapeutics and assist their under-seal False Claims Act *qui tam* complaints. Ms. Guzman and Mr. Furchak were not "interviewing" Mr. Rowan and Mr. Gurry. Quite the contrary, Ms. Guzman and Mr. Furchak were engaging Mr. Rowan, Mr. Gurry, and others in ordinary business conversations, secretly tape recording them in the hopes they would make incriminating statements regarding kickbacks to physicians and insurance fraud.

**ARGUMENT**

The government argues that Ms. Guzman's and Mr. Furchak's secret tape recordings are inherently "untrustworthy" because they contain statements by Mr. Rowan and Mr. Gurry that are "self-serving," Gov't Opp., at 1-2, by which the government means the statements are inconsistent with its RICO charges. The government uses this argument as a talisman, suggesting that any out-of-court statement made by a defendant is hearsay if it has exculpatory value. That is not the law, and the government knows it. Federal Rule of Evidence 801(c) defines hearsay as an out-of-court statement that "a party offers in evidence to prove the truth of the matter asserted in the statement." Whether an out-of-court statement is being offered for the truth of the matter asserted therein is the *sole* criterion for whether the statement is hearsay. If the statement is not being offered to prove the truth of the matter asserted, it is not hearsay—period, end of story. It does not matter how "self-serving" the prosecution believes the statement to be.

If the prosecution believes the defendant's non-hearsay statement is "self-serving," its recourse is to argue to the jury in closing that it should not afford the statement any weight—not to ask the district judge to invent a new rule of evidence. The government's recourse is likewise the jury—and not the district judge—with respect to exculpatory statements made by the defendant that, though being offered for a hearsay purpose, are admissible pursuant to Federal Rule of Evidence 803(3)'s hearsay exception. As Judge Friendly, writing for the court, explained in *United States v. DiMaria*, 727 F.2d 265, 271 (2d Cir. 1984), the "the self-serving nature" of a statement that satisfies the enumerated criteria of Rule 803(3) goes "only to its weight." The Federal Rules of Evidence were drafted that way because the Committee "thought [it] preferable to [a system] requiring preliminary determinations of the judge with respect to trustworthiness, with attendant possibilities of delay, prejudgment and encroachment on the province of the jury." *Id.* at 272; *see also United States v. Farhane*, 634 F.3d 127, 172 (2d Cir. 2011) ("Thus, the self-serving nature of

a statement expressing a state of mind does not automatically preclude application of Rule 803(3). That concern is properly considered by the jury in deciding what weight to accord the statement."); *United States v. Lawal*, 736 F. 2d 5, 8 (2d Cir. 1984) (holding that "relevant declarations which fall within the parameters of Rule 803(3) are categorically admissible, even if they are self-serving"); *Chestnut v. Ford Motor Co.*, 445 F.2d 967, 972 (4th Cir. 1971) ("The term 'self-serving' is a misnomer that ought to be interred.  It has long obscured the proper application of the hearsay rule to the reception of evidence, and is not an independent ground of objection. . . . Whether self-serving, neutral, or disserving, a hearsay statement that does not fit within one of the exceptions to the hearsay rule is inadmissible, and the reverse is [also] true."); *Maher v. City of Chicago*, 406 F. Supp. 2d 1006, 1014 n.6 (N.D. Ill. 2006) ("Statements of motive, intent, and mental state, admissible under Rule 803(3), are not excludable even when highly self-serving.").

> A. **Mr. Rowan's and Mr. Gurry's Non-Hearsay Instructions and Directions to the Sales Representatives Are About What They Can and Cannot Do in the Field.**

Tacitly acknowledging that the "self-serving" nature of a non-hearsay statement is not a basis for exclusion, the government argues that each and every statement that Mr. Rowan and Mr. Gurry make on the tape recordings is being offered for the truth.  *See* Gov't Opp., at 2-3.  As an example, the government points to Mr. Rowan's statements to sales representatives in his region regarding the appropriate use of speaker programs and promotion of Subsys.  *Id.* at 3.  The government says that Mr. Rowan will be offering those statements "to describe [his] . . . and Insys sales representatives' actions." *Id.*  This is not true at all.  The tape recording makes clear as day that Mr. Rowan was providing *instructions* and *directions* to the sales representatives about future actions—what they can and cannot say to physicians regarding speaker programs (*viz.*, they are not to dangle out speaker programs as inducements), and how they can and cannot promote Subsys (*viz.*, they are not to promote off-label).  Instructions and directions, of course, are not hearsay,

because they are not assertive statements offered for the truth.[2] This is black letter law. *See, e.g., United States v. Bailey*, 270 F.3d 83, 87 (1st Cir. 2001) ("[D]irections from one individual to another . . . do not constitute hearsay.").[3]

In arguing that Mr. Rowan's statements to the sales representatives are assertive statements rather than directions or instructions, the government misleadingly seizes on the verbiage that Mr. Rowan used to convey certain of his directions and instructions. For example, Mr. Rowan stated: "You don't talk about money ever." 1/28/2019 Tr. at 181:18-19. This statement is akin to what undersigned counsel from Ropes & Gray LLP instructed his daughter Elsie when she bit her twin brother Owen during a particularly vicious fight over a toy when they were toddlers: "You don't bite your brother!" When undersigned counsel made that statement to Elsie, it was clear that he was giving an instruction to Elsie about how she needed to act in the future, not making an assertion about how she had acted in the past. If the government wants the Court to explain to the jury that Mr. Rowan's statements are being offered as instructions on how to conduct themselves, rather than assertions about how the sales representatives in fact were conducting themselves or had conducted themselves in the past, we would have no objection to that.

### B. The Tape Recordings Can Be Admitted to Prove the Absence of Statements.

The government has sought to elicit testimony that Mr. Rowan instructed sales representatives to dangle out speaker programs to physicians as an inducement. And the

---

[2] Defendants' memorandum filed on February 6, 2019 discussed at length the case law on this point. The government does not appear to dispute that case law, but rather tries to paint Mr. Rowan's and Mr. Gurry's statements as something other than directions and instructions.

[3] The government argues that Defendants' February 6, 2019 memorandum "grossly mischaracterize[d]" the First Circuit's decision in *Bailey*. Gov't Opp., at 3. Really? Defendants cited *Bailey* exactly one time in their memorandum, quoting it for the uncontroversial proposition that "'directions from one individual to another . . . do not constitute hearsay.'" *See* Defs.' Supp. Mem. at 6 (quoting *Bailey*).

government has sought to elicit testimony that Mr. Gurry instructed Insys employees to commit fraud against insurance companies, including the Medicare Part D program. The government has elicited that testimony from cooperators whose credibility is highly questionable, and whose motives to falsely implicate Mr. Rowan and Mr. Gurry are obvious. In response to this questionable testimony, Mr. Rowan and Mr. Gurry surely are entitled to demonstrate to the jury in the clearest possible terms—through tape recordings secretly made in the earliest days of the charged conspiracy by two sales representatives who, unbeknownst to anyone other than their lawyers and the Department of Justice, were *qui tam* whistleblowers—that, even when presented with a clear opportunity to instruct their sales representatives to engage in the conduct charged in the Second Superseding Indictment, they did not. None of the tape recordings that Defendants are seeking to admit memorializes a random conversation disconnected from the business of Insys. To the contrary, all of the meetings and conversations that the tape recordings memorialize occurred during the alleged conspiracy; involved discussion of the topics that are the focus of the RICO conspiracy charge (speaker programs and insurance reimbursement); included alleged co-conspirators; and were of the kind that, if Mr. Rowan and Mr. Gurry really were engaged in kickback and insurance fraud schemes, one would have expected them to make highly incriminating statements. The absence of incriminating evidence on the tape recordings is thus clearly relevant to the jury's determination of Mr. Rowan's and Mr. Gurry's guilt.[4]

---

[4] If the government believes Mr. Rowan's statements on the tape recordings are equivocal or are not all that exculpatory, or that the defense is wrong about the absence of incriminating statements on the recordings, it is free to argue all of that to the jury.

    **C.    The Government's Asserted Grounds for Denying Admission of Mr. Rowan's Statements Under Rule 803(3) Go to the Statements' Weight, Not Their Admissibility.**

Most of Mr. Rowan's and Mr. Gurry's tape recorded statements are admissible as non-hearsay statements (*e.g.*, directions and instructions to the sales representatives in his territory). But a few of the statements that Defendants are seeking to admit—in particular, statements by Mr. Rowan that demonstrate his state of mind at the time statements were made that speaker programs are an effective marketing tool because they can be used to educate an audience of potential Subsys prescribers, and that the speaker programs his sales representatives would be conducting in the future would have real attendees and involve a real educational presentation about Subsys—admittedly require Rule 803(3) to be admissible. All of those statements, however, meet the criteria of Rule 803(3). They are therefore are admissible *per se*, even if the Court considers them potentially self-serving. *See supra* at 2-3 (collecting cases).

The government makes a passing, undeveloped suggestion that Mr. Rowan's statements fail Rule 803(3)'s contemporaneity requirement. The government's principal argument, however, is that Mr. Rowan's state of mind at any given "pinpoints during a years-long conspiracy" has such minimal relevance that evidence of that state of mind should be excluded under Federal Rule of Evidence 403—at least when the evidence is exculpatory, that is.[5] Gov't Opp., at 5. For this argument, the government quotes the following sentence from *United States v. Cianci*, 378 F.3d 71, 106 (1st Cir. 2004): "'[T]hat [a] statement was made at one point during the time of the charged conspiracy cannot be sufficient to mandate its admission.'" Gov't Opp., at 5. That statement from

---

[5] If Mr. Rowan would have stated on the tape recording, "I believe that speaker programs are an excellent way to bribe doctors," the government obviously would be playing that tape recording as often as possible to the jury. It is completely hypocritical for the government to argue that an exculpatory state of mind at a "pinpoint" in time should be excluded under Rule 403, when there is no doubt whatsoever that an inculpatory state of mind at that same "pinpoint" in time would be admissible.

*Cianci* clearly is true so far as it goes—the admissibility of a Rule 803(3) statement obviously depends on the statement being relevant, and not every statement a defendant makes during the time period of a charged conspiracy is relevant, even if the statement reflects favorably on the defendant. *Cianci* does not hold that an exculpatory statement that meets Rule 803(3)'s criteria is irrelevant simply because the government has charged a conspiracy that spans several years.

In *Cianci*, the "district court deemed Cianci's taped statement irrelevant because it did 'not relate to any predicate act or to any specific matter with respect to which the Government has presented any evidence.'" 378 F.3d at 106 (quoting district court). There, the defendant, the mayor of Providence, was on trial for an eight-year bribery scheme involving towing contracts. Coincidentally, in the middle of that eight-year towing contract conspiracy period, an undercover FBI agent conducting a sting operation relating to a wholly different set of city contracts involving different co-conspirators engaged the mayor in a secretly recorded conversation. Without the undercover agent doing anything "to prompt discussion of corruption," the mayor proclaimed in colorful language that he did not tolerate bribery—immediately after which the mayor introduced his confederate to the undercover agent by stating, "He is probably an FBI agent." *Id.* at 105. The First Circuit affirmed the district court's determination that, because the matter that the undercover agent discussed with the mayor was wholly "unrelated" to the bribery scheme for which the mayor was on trial, the mayor's declaration of personal honesty to undercover agent (who the mayor himself described as "probably an FBI agent") was not relevant. *Id.* at 105-06.[6]

---

[6] The district court also held that, to the extent Cianci was offering the statements to prove "past acts and events," the statements did not satisfy Rule 803(3)'s hearsay exception. *Id.* This ruling was clearly correct; Rule 803(3) precludes a statement of memory or belief from being offered to prove the truth of the "fact remembered or believed . . . ." Fed. R. Evid. 803(3); *see also Lawal*, 736 F.2d at 8 ("[S]tatements of what [the declarant] or someone else had done in the past . . . [are] inadmissible hearsay not within the terms of Rule 803(3)."). Mr. Rowan is not offering any of his statements to prove past acts; if the government wants the Court to issue a limiting instruction to make this clear to the jury, it can request one.

The facts of this case bear no resemblance to the facts of *Cianci*. The government's core allegation against Mr. Rowan is that he did not use speaker programs to educate prescribers attending the events, but rather directed his sales team to bribe potential "whales" with speaker programs and, in order to accomplish the bribery, schedule sham speaker programs that more often than not did not include any legitimate attendees or product education. Speaker programs—including their appropriate and inappropriate uses—are precisely what is discussed on the tape recordings. Furthermore, the tape recorded conversations do not occur at some inconsequential "pinpoint in time" during the charged conspiracy period. To the contrary, they occur early in the charged conspiracy period, with most of the statement occurring in October 2012 and some in April 2013. To this extent, Mr. Rowan's instructions to his sales representatives that they are not to discuss honoraria with physicians or dangle speaker programs as inducements, and his statements of belief that speaker programs are an effective marketing tool because they help educate a room full of potential prescribers on the merits of Subsys, directly rebut the testimony that Alec Burlakoff offered about Mr. Rowan at pages 161:19 through 162:2 of the March 1, 2019 trial transcript. As to Mr. Gurry, his October 2012 instruction to Mr. Furchak not to cover a Medicare patient's $60 co-pay (conduct that would constitute Medicare fraud), even if it meant the patient would not fill the prescription and Insys would lose out on a sale, directly rebuts Elizabeth Gurrieri's testimony that Mr. Gurry directed her to defraud insurance companies (including the Medicare program) essentially from the minute she arrived at the company in October 2012. *See, e.g.*, 2/22/2019 Tr. 154-157.

As a further asserted basis to exclude Mr. Rowan's statements reflecting his then-present state of mind regarding the value of speaker programs, the government again goes back to the refrain that the statements are "self-serving," again citing to *Cianci*. Once again, however, the government's reliance on *Cianci* is misplaced. The prosecution's argument for exclusion in *Cianci*

was that the defendant's tape recorded "statements were self-serving, and hence outside the ambit of Rule 803(3), *because he knew that he was talking to a federal agent.*" 378 F.3d at 106 (emphasis added). The defendant's knowledge that he was talking to an undercover federal agent was proven by statements that the defendant made on the very same tape recording that he was seeking to admit—immediately after making his "exculpatory" statement, the defendant stated to his confederate (on tape), "He is probably an FBI agent." *See id.* *Cianci* thus stands for the simple proposition that, where the declarant makes a generic exculpatory statement to someone that he *knows is a law enforcement agent,* a district court does not abuse its discretion when it determines that the statement cannot be construed as one actually reflecting "the declarant's then-existing state of mind," but can only be understood as the declarant's attempt to "cover tracks already made," which fails to satisfy Rule 803(3)'s plain language. *Id.* at 106. Here, the government has no evidence that Mr. Rowan or Mr. Gurry knew that Ms. Guzman, Mr. Furchak, or any other the other sales representative in the company was secretly tape recording their phone calls and sales meetings. *Cianci* is therefore inapposite.

      **D.**      **Defendants Defer to the Court's Rule of Completeness Determinations.**

Defendants respectfully defer to whatever determination the Court makes on the rule of completeness. Defendants do wish to point out, however, that neither the Court nor the government should have any hearsay concerns with respect to statements that third parties, including Ms. Guzman and Mr. Furchak, are heard making on the tape recordings. If any of those third party statements are assertive, the Court can simply instruct the jury that none of them are being introduced for the truth of the matters asserted therein, but are simply be providing for context that will enable the jury to understand the non-assertive or Rule 803(3) statements of Mr. Rowan or Mr. Gurry. This would basically be the same limiting instruction that the Court has

given to the jury numerous times during the trial already with respect to various items of prosecution evidence.

      **E.    The Government's Concession That the Tape Recordings are Forensically Sound Means That, in Order to Demonstrate the Tapes' Authenticity, Defendants Need Only to Have a Witness Identify the Voices of the Speakers.**

The government in its opposition memorandum concedes that the tape recordings are forensically sound (*i.e.*, not digitally manipulated). *See* Gov't Opp., at 8 n.2. Thus, the only question with respect to authenticity is whether the voices on the tape recordings are who Defendants say they are (Mr. Rowan, Mr. Gurry, Ms. Guzman, Mr. Furchak, and several other Insys sales representatives who are on the government's unindicted co-conspirator list). The witness who is presently on the stand—Alec Burlakoff—should be quite capable of identifying the voice of each speaker on each recording. Defendants presume that the government will not object to Mr. Burlakoff being asked on cross examination to identify the voices. After all, this would be no different than what the government had Elizabeth Gurrieri do last week, and what federal agents do all the time. Last week, Ms. Gurrieri authenticated tape recordings made by insurance companies, even though she was not on the tape recordings, had no role in making the tape recordings, and heard the recordings only after being presented with them by the prosecutors. The Court allowed Ms. Gurrieri to do so because she was able to identify, from personal knowledge, the Insys employee whose voices were heard on the recordings. Mr. Burlakoff is identically situated with respect to the tape recordings made by Ms. Guzman and Mr. Furchak.

Once Mr. Burlakoff identifies the voices on the tapes, this will resolve the question of authenticity without wasting any more of the Court's time on this issue.

Dated: March 4, 2019

/s/ Tracy A. Miner
Tracy A. Miner (BBO# 547137)
tminer@mosllp.com
Megan Siddall (BBO# 568979)
msiddall@mosllp.com
Miner Orkand Siddall LLP
470 Atlantic Ave, 4th Floor
Boston, MA 02210
Telephone: (617) 273-8421

***Attorneys for Michael Gurry***

/s/ Peter C. Horstmann
Peter C. Horstmann (BBO# 556377)
pete@horstmannlaw.com
Law Offices Peter Charles Horstmann
450 Lexington Street, Suite 101
Newton, MA 02466

***Attorney for Sunrise Lee***

/s/ Aaron M. Katz
Beth A. Wilkinson (admitted *pro hac vice*)
bwilkinson@wilkinsonwalsh.com
Alexandra M. Walsh (admitted *pro hac vice*)
awalsh@wilkinsonwalsh.com
Kosta S. Stojilkovic (admitted *pro hac vice*)
kstojilkovic@wilkinsonwalsh.com
2001 M Street NW
Washington, D.C. 20036
Telephone: (202) 847-4000

Brien T. O'Connor (BBO# 546767)
brien.o'connor@ropesgray.com
Aaron M. Katz (BBO# 662457)
aaron.katz@ropesgray.com
Ropes & Gray LLP
800 Boylston Street
Boston, MA 02199
Telephone: (617) 951-7000

***Attorneys for Dr. John Kapoor***

Respectfully submitted,

/s/ Steven A. Tyrrell
Steven A. Tyrrell (admitted *pro hac vice*)
steven.tyrrell@weil.com
Patrick J. O'Toole, Jr. (BBO# 559267)
Patrick.otoole@weil.com
Weil, Gotshal & Manges LLP
2001 M Street, NW
Washington, D.C. 20036
Telephone: (202) 682-7213

***Attorneys for Richard Simon***

/s/ Michael Kendall
Michael Kendall (BBO# 544866)
michael.kendall@whitecase.com
Alexandra Gliga (BBO# 694959)
alexandra.gliga@whitecase.com
White & Case, LLP
75 State Street
Boston, MA 02109
Telephone: (617) 939-9310

***Attorneys for Joseph Rowan***

- 11 -

## **CERTIFICATE OF SERVICE**

    I, Aaron M. Katz, hereby certify that a true and correct copy of this document will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on March 4, 2019.

                                                           /s/ Aaron M. Katz