UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CRIMINAL NO.  16-10343-ADB |
| | ) | |
| JOHN N. KAPOOR, et al. | ) | |
| Defendants. | ) | |

**UNITED STATES' MOTION FOR RESTITUTION**
**PURSUANT TO THE MANDATORY VICTIM RESTITUTION ACT**

Defendants stand convicted of multiple crimes that stem from a fraud scheme in which they bribed doctors to prescribe a powerful opioid, and defrauded and misled insurance companies to extract payment for these opioids.  Defendants committed these crimes to boost profits, and did so at the expense of victims nationwide.  As this Court noted, the Defendants' "fixation on increasing the number and dosage of Subsys prescriptions combined with prescribers' interest in increased speaker payments, ***ultimately harmed an untold number of patients***."  *See* ECF No. 1028 at 21.

The Mandatory Victim Restitution Act of 1996 ("MVRA") makes restitution ***mandatory*** for victims of "any offense committed by fraud or deceit."  *See* 18 U.S.C. § 3663A(c)(1)(A)(ii). Consistent with the intent of this mandatory restitution statute, and the harm Defendants caused to multiple categories of victims in this case, the United States requests the court enter restitution orders against each of the Defendants in an amount that will, as the statute requires, make these victims whole.   In total, the harm to the victims of this case exceeds $306 million.  As co-conspirators, the Court should enter restitution against each Defendant in this amount, jointly and

severally.[1]   The following table breaks down the categories of victim losses in support of this restitution request:[2]

| Victim Type | Amount Requested | Exhibit No. |
|---|---|---|
| Patients (six) | $10,198.20 | 1a-f (under seal) |
| Medicare | $136,768,059.00 | 2 |
| Commercial Payors | $169,650,045.02 | 3-9 (under seal) |
| Total Restitution | $306,428,302.22 | |

## I.   Legal Framework for Mandatory Restitution Pursuant to the MVRA

Congress enacted the MVRA to strengthen protections for crime victims.  One of those protections is ***mandatory restitution*** for any offense against property, including crimes committed by fraud or deceit, in which an identifiable victim has "suffered a physical injury or pecuniary loss."  *See* 18 U.S.C. §§ 3556, 3663A(a)(1) ("the court shall order"), 3663A(c)(1)(A)(ii), and 3663A(c)(1)(B).  Here, where Defendants were convicted of crimes that indisputably involved

---

[1] Restitution should also be joint and several with any restitution entered against defendants in *United States v. Insys Therapeutics, et. al.*, 1:19-cr-10191-RWZ, and *United States v. Elizabeth Gurrieri*, 1:17-cr-10083-MLW.  Elizabeth Gurrieri's case, who testified at trial pursuant to an agreement with the government, is presently assigned to the Honorable Judge Wolf.  Gurrieri's motion to transfer the criminal action from Judge Wolf to this Court is pending.  *See* 1:17-cr-10083-MLW, ECF No. 47.

[2] The government provided information to potential non-government victims (individuals and insurance companies) regarding the restitution process and what is, and is not, recoverable.  The government invited these victims to provide documents or other support for their restitution requests.  A number of insurance companies and, thus far, 14 patients submitted documents to the government in support of restitution.  The government also performed its own review of information to support restitution.  Based upon a review of available information, this request, as outlined below, includes only those restitution requests that the government believes satisfy the burden of proof.  The government will provide notice of this filing to all potential victims and will inform them that they have a right to be heard at sentencing.  The government believes it is necessary and appropriate for the Court to receive all the documents submitted by victims because the victims provided them to the government for that purpose.  The government will provide a copy of those documents to the Court and counsel, collectively, as Exhibit 10, under seal.

fraud and deceit, and where the Court has recognized that the criminal conduct "ultimately harmed an untold number of patients," the MVRA applies—thus, making full and complete restitution to Defendants' victims mandatory, regardless of Defendants' ability to pay.  The framework for application of the MVRA is set forth below.

*Victims*.  A victim includes those "directly and proximately harmed" by the commission of the crime, including those harmed by a defendant's conduct in the course of a conspiracy.  *See* 18 U.S.C. § 3663A(a)(2).  Defendants' victims fall broadly into two categories:  (1) individual victims; and (2) government or commercial insurance payors.  These categories include victims of the entire scheme, all of whom are entitled to restitution.  When the underlying criminal conduct involves a conspiracy, victims of the entire conspiracy are entitled to restitution.  *See United States v. Hensley*, 91 F.3d 274, 277 (1st Cir. 1996).  In other words, restitution is not limited solely to the victims of the individual charged fraud counts.

> [T]he district court may order restitution to every victim directly harmed by the defendant's conduct "in the course of the scheme, conspiracy, or pattern of criminal activity" that is an element of the offense of conviction, without regard to whether the particular criminal conduct of the defendant which directly harmed the victim was alleged in a count to which the defendant pled guilty, or was even charged in the indictment.

*Id*.  Here, as in *Hensley*, the Court must look to the allegations in the Second Superseding Indictment, and award restitution to all victims of the scheme, not just to the 13 named co-conspirator practitioners or named patients.  For example, in the Second Superseding Indictment the government identified certain prescribers and noted that those identified were only "some" of the bribed practitioners.  *See* ECF No. 419 ("some of whom are identified below"); *see also Hensley*, 91 F.3d at 278 (look to the allegations in the Indictment).  In determining the victims harmed by Defendants and to what extent, the Court must look to the "totality of the circumstances,

including the nature of the scheme, the identity of its participants and victims, and any commonality in timing, goals, and modus operandi." *Id*. at 278.

**_Causation._**   For each identified victim, the government must show that the victim was directly or proximately harmed by the defendant's conduct.  The First Circuit has described the government's burden:

> [T]he government must show not only that a particular loss would not have occurred but-for the conduct underlying the offense of conviction, but also that the causal nexus between the conduct and the loss is not too attenuated (either factually or temporally). The watchword is reasonableness.

*United States v. Vaknin*, 112 F.3d 579, 590 (1st Cir. 1997).

**_Amount of Loss._**   The government also bears the burden to establish the amount of loss sustained by a victim and must prove the loss by a preponderance of the evidence.  *See* 18 U.S.C. § 3664(e).  Reliable hearsay, including sworn and unsworn statements, is admissible.  *See* Fed. R. Evid. 1101(d) (rules of evidence do not apply to sentencing); *see also United States v. Naphaeng*, 906 F.3d 173, 180 (1st Cir. 2018), *cert. denied*, 139 S. Ct. 1233 (2019) (affirming restitution award).  The First Circuit has consistently held that the government's restitution calculation need not be precise, so long as it is not speculative or unreasonable.  *See e.g. United States v. Burdi*, 414 F.3d 216, 221 (1st Cir. 2005) ("absolute precision is not required.").  Rather, "[a]s long as the court's order reasonably responds to some reliable evidence, no more is exigible."  *United States v. Sanchez-Maldonado*, 737 F.3d 826, 828 (1st Cir. 2013).

The Court's analysis in *Naphaeng* is instructive.  There, the Defendant pled guilty to multiple counts of mail and visa fraud.  The Court held two sentencing hearings and ultimately awarded restitution.  *Naphaeng*, 906 F.3d at 176.  The Court considered the plea colloquy, the pre-sentence report, and the pre-sentence memoranda of the government and the defendant.  *Id*.  To determine restitution, the Court also relied, in part, on a spreadsheet of data attached to the

government's sentencing memorandum.  *Id*.  This was not error because the Court is not "expected to undertake a full-blown trial" and "absolute precision is not required."  *Id*. at 179.

Once the government meets its preponderance of the evidence standard with credible evidence to support restitution, the defendant then bears the burden to rebut the government's calculations.  *See US v. Gushlak*, 728 F.3d 184, 202 n.15 (2nd Cir. 2013); *see also* 18 U.S.C. § 3664(e) ("burden of demonstrating such other matters as the court deems appropriate shall be upon the party designated by the court as justice requires.").  Evidence of a defendant's inability to pay is inapposite for purposes of determining mandatory restitution, because each victim is entitled to full and timely restitution and the Court may not mitigate or offset the amount of restitution ordered based upon any of the Defendants' financial circumstances or ability to pay.  *See* 18 U.S.C. § 3664(f)(1)(A) (forbidding "consideration of the economic circumstances of the defendant.").

* * * * *

Throughout the process of determining restitution, crime victims have "the right to be treated with fairness and respect for the victims' dignity and privacy."  *See* Crime Victim Rights Act, 18 U.S.C. § 3771(a)(8).[3]  As set forth below, to further serve the interests of justice, to avoid further burdening those victims harmed by the Defendants, and to streamline the restitution process, the government seeks to establish the restitution based upon a combination of reliable documents and evidence, including sworn declarations and unsworn letters to the Court with supporting evidence.

---

[3]  The law also requires information tendered in support of restitution be kept private "to the greatest extent possible."  *See* 18 U.S.C. § 3664(d)(4).  To protect their privacy, the individual victims will only be referenced by their Victim Notification System numbers.

## II.      Analysis of Victim Losses

### A.      *Harm caused to individuals*

Given the extraordinary scope of the harm perpetrated by Defendants, the government sought and obtained permission to utilize alternative victim notification procedures. *See* ECF Nos. 93 (motion) and 139 ("Order"). Pursuant to the Order, the government provided notice to potential victims via the websites of the Federal Bureau of Investigation and the United States Attorney's Office. To date, the government has received 14 requests for restitution from individual victims, six of which include ascertainable and recoverable loss for which the government requests restitution.[4] *See* Exhibit 1 (sealed composite exhibit of documents that support the restitution requested by the government for six individual patients) and Exhibit 10 (sealed composite exhibit of all documents submitted from all 14 patients and other potential victims). Of the six patients included in this request, the government seeks restitution equal to the amount of actual out-of-pocket copay costs related to Subsys. Exhibit 1, under seal, supports the figures contained in the table below. Pursuant to 18 U.S.C. § 3663A(b)(1), the Defendants must return to each victim an amount equal to the amount of property they lost. In addition, because the crime resulted in bodily injury to the patients, an order of restitution must require the Defendants to:

> A. pay an amount equal to the cost of necessary medical and related professional services and devices relating to physical, psychiatric, and psychological care, including nonmedical care and treatment rendered in accordance with a method of healing recognized by the law of the place of treatment;

---

[4] The government reserves the right to seek additional restitution for newly discovered or newly ascertained losses, as permitted by 18 U.S.C. § 3664(d)(5). On December 11, 2019, the government was contacted by counsel for additional commercial payors who may submit restitution requests. In May and June 2019, the government requested potential victims provide any restitution requests to the government during the summer of 2019. However, victims have a right to ask this Court for restitution – regardless of the government's deadline. *See* 18 U.S.C. § 3664(d)(5).

B.  pay an amount equal to the cost of necessary physical and occupational therapy and rehabilitation; *and*

C.  reimburse the victim for income lost by such victim as a result of such offense;

18 U.S.C. § 3663A(b)(2).  Each of the six patient-victims submitted proof of out of pocket copay expenses they incurred in connection with the prescription of Subsys.  Exhibit 1, under seal, contains a letter from each of the six patient-victims, a summary, and proof of their claim.  The table below provides the recoverable and presently ascertainable harm caused to these six victims:

| Patient Victim (VNS Identifier) | Amount Requested |
|---|---|
| 5431212 | $1,815.00 |
| 5632738 | $1,140.00 |
| 6002801 | $1,231.41 |
| 6002802 | $965.00 |
| 5431216 | $2,005.56 |
| 5431207 | $3,041.23 |
| **Individual Restitution** | **$10,198.20** |

**B.      Harm caused to insurers**

Defendants defrauded both government and commercial payors in covering the costs of Subsys, and as such are victims entitled to recovery of the losses associated with those payments. Pursuant to 18 U.S.C. § 3663A(b)(1), the Defendants must return to each insurer an amount equal to the amount of property that insurer lost due to the Defendants' crimes.  To calculate the particular loss caused by these Defendants, each payor utilized its own system and followed its own rules and contracts.  As a result, the exact but-for causation methodology used by each payor varies slightly.  The net result, however, is that each payor submitted credible and reliable evidence to demonstrate, by a preponderance of the evidence, actual losses caused by Defendants.

1.    **Medicare**

Medicare paid approximately $169,058,169 for Subsys prescriptions in which the recipient beneficiary had no history of a principal diagnosis of cancer within 365 days preceding a Subsys prescription.   *See* Sworn Declaration of Michael J. Petron ("Petron"), attached as Exhibit 2.[5] Petron is a Managing Director with Stout Risius Ross, LLC, a global financial advisory firm that specializes in Investment Banking, Valuation & Financial Opinions, and Dispute Consulting.  He is a Certified Public Accountant licensed in the Commonwealth of Virginia and a Certified Fraud Examiner.    He holds a Master's degree in Accountancy and a Master's degree in Statistical Science.   *Id*.  Mr. Petron is an expert witness with 19 years' experience in his field.  The Court should credit Mr. Petron's sworn declaration because it is reliable and supported by ample evidence.   Petron describes in detail the reasons these losses are attributable to Defendants' criminal conduct, including his analysis of Medicare payments for "Subsys prescriptions in which the recipient beneficiary had no history of a principal diagnosis of cancer within 365 days preceding a Subsys prescription."  Exhibit 2 at 3.

A few other items are of particular significance to the loss calculation:  ***First,*** it is clear from the testimony of every insurance company or pharmacy benefit manager (PBM) trial witness that Medicare would not have knowingly authorized payment for any Subsys prescription if the prescription was off-label *(i.e.*, not for breakthrough cancer pain).  *See e.g.* Testimony of Amy Moyer-Carey, CVS Caremark,  03/20 Trial 227:3-10; *see also* Testimony of Nicole Schenk, Blue Cross Blue Shield Federal Employee Program, 03/21 Trial 118:19-23. ***Second,*** it is also clear that Medicare would not knowingly authorize payment for any Subsys prescription if that payment

---

[5] To the extent necessary, the United States also intends to rely upon Mr. Petron's Declaration to support loss calculations at sentencing.

authorization request (or non-tier formulary exception) was originated at the Insys Reimbursement Center ("IRC").  *See e.g.* Testimony of Nicole Schenk, 03/21 Trial 132-133 (Medicare only permits prescriber to initiate request).  ***Third,*** according to the pre-sentence report, which is itself further reliable evidence for restitution purposes, it is undisputed[6] that approximately 80.9% of all Subsys prescriptions passed through the IRC.  *See* PSR at ¶120; *see also Sanchez-Maldonado*, 737 F.3d at 828 (court may properly rely upon undisputed information in the PSR).

As set forth in Petron's declaration, Medicare paid in excess of $169 million for Subsys prescriptions, of which 80.9% passed through the IRC.  But for Defendant's fraud, Medicare would not have paid $136,768,059 in Subsys claims ($169,058,169 x 80.9%) because those claims originated at the IRC (breakthrough cancer pain or otherwise).

| Government Payor | Amount Requested | Payor Methodology | Payor Supporting Evidence | Exhibit No. |
|---|---|---|---|---|
| **Medicare** | $136,768,059 | Amount paid for Subsys prescribed to non-cancer patients and payment made by Medicare following request from the IRC | Sworn Declaration of Michael J. Petron with detailed analysis and supporting data | 2 |

### 2.    Commercial Payors

Defendants' crimes also harmed commercial payors, such as private insurance companies. Each commercial payor submitted documents and evidence to support restitution and demonstrate the losses incurred.  These documents are reliable and the Court should credit them because, to the extent they are hearsay, reliable hearsay is admissible.  *See* Fed. R. Evid. 1101(d) (rules of evidence

---

[6] Despite submitting lengthy and detailed challenges to specific words, phrases, and details in the pre-sentence reports, no Defendant challenged the accuracy of the 80.9% IRC utilization.

do not apply to sentencing).  The table on the following page demonstrates the restitution owed to each commercial payor:

| Commercial Payor | Amount Requested | Payor Methodology | Payor Supporting Evidence | Sealed Exh. No. |
|---|---|---|---|---|
| Aetna | $15,769,912.00 | Amount paid for Subsys prescribed to non-cancer patients | Letter and supporting documents | 3 |
| Anthem Blue Cross Blue Shield | $19,310,973.00 | Amount paid for Subsys when Insys mis-represented who they were when they called for pre-certification and there was no indication patient had cancer or met criteria for payment | Statement under penalty of perjury, and supporting spreadsheet | 4 |
| Cigna | $13,467,942.56 | 80.9% of amount paid for Subsys | Sworn Affidavit | 5 |
| Caremark | $76,024,612.98 | Amount paid for Subsys via the IRC, relying upon government's assertion of 80.9% IRC utilization | Declaration and supporting spreadsheets | 6 |
| Silverscript | $7,983,771.48 | Amount paid for Subsys via the IRC, relying upon government's assertion of 80.9% IRC utilization | Supporting Spreadsheets* *declaration to be filed upon receipt | 7 |
| Horizon Blue Cross Blue Shield [NJ] | $2,088,066.00 | Conservative calculation for identified non-cancer patients caused by kickbacks, fraud and the conspiracy. | Letter from Counsel for Horizon BCBS of NJ and supporting spreadsheets | 8 |
| United HealthCare Services | $35,004,767.00 | Analysis of paid Subsys claims where patient had no cancer diagnosis within 6 months of request for payment. | Letter sent by counsel explaining but-for causation with supporting exhibits | 9 |
| Total Commercial Payor Restitution | | | $169,650,045.02 | |

## III.    Conclusion

WHEREFORE, for the reasons stated herein, the Court should order restitution against each of the Defendants in the amount of $306,428,302.02.  The restitution should enter as joint and several among all Defendants in this case, as well as joint and several with any restitution order entered against defendants in *United States v. Insys Therapeutics, et. al.*, 1:19-cr-10191-RWZ, and *United States v. Elizabeth Gurrieri*, 1:17-cr-10083-MLW, in the amount of $306,428,302.02.  To the extent any Defendant challenges all or part of the government's restitution request, the government respectfully requests an opportunity to be heard, to supplement this request, and to present additional evidence and/or testimony.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

Date:  December 13, 2019          By:      /s/ David G. Lazarus
                                          DAVID G. LAZARUS, BBO # 624907
                                          K. NATHANIEL YEAGER
                                          FRED WYSHAK
                                          Assistant United States Attorneys
                                          1 Courthouse Way, Suite 9200
                                          Boston, MA 02210
                                          Tel. No. (617) 748-3373
                                          Fax No. (617) 748-3972
                                          David.Lazarus2@usdoj.gov

## Certificate of Service

I hereby certify that the foregoing Motion was filed through the Electronic Case Filing system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

                                          /s/ David G. Lazarus
                                          DAVID G. LAZARUS
Dated: December 13, 2019                  Assistant U.S. Attorney