UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

<table>
<tr><td>UNITED STATES OF AMERICA,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>v.</td><td>)</td><td>CRIMINAL NO.  16-10343-ADB</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>JOHN N. KAPOOR</td><td>)</td><td></td></tr>
<tr><td>Defendant.</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
</table>

## <u>UNITED STATES' MOTION FOR FORFEITURE</u>

*The [racketeering] forfeiture provision, in particular, constitutes one of the crucial weapons in the RICO arsenal and should be liberally construed to accomplish its purpose of attacking the economic power of illegal enterprises.*

*United States v. Angiulo*, 897 F.2d 1169, 1216 (1st Cir. 1990).  With this powerful mandate in mind, the United States of America respectfully seeks to forfeit the ill-gotten gains of defendant John N. Kapoor ("Defendant" or "Kapoor")—the lead racketeer in a conspiracy to bribe doctors and defraud insurers as part of a complex scheme to improve his company's bottom line. Specifically, the government moves this Court for the issuance of Orders of Forfeiture as to the Defendant as follows:  (1) a $113,312,759.14 Order of Forfeiture (Money Judgment); and (2) an Order of Forfeiture (Stock), pursuant to 18 U.S.C. § 1963 and Rule 32.2(b) of the Federal Rules of Criminal Procedure.[1]  Proposed Orders of Forfeiture are attached to this filing.

---

[1]  Forfeiture is part of sentencing; the burden is on the government to establish forfeiture by a preponderance of the evidence.  *See United States v. Cox*, 851 F.3d 113, 129 (1st Cir. 2017). Reliable hearsay is admissible.  Fed. R. Evid. 1101(d) (rules of evidence do not apply to sentencing).

## I.     INTRODUCTION

### a.  The Purpose of Forfeiture

Forfeiture is mandatory and imposed as punishment for a crime.  *See United States v. Monsanto*, 491 U.S. 600, 606–07 (1989) (by using the phrase "shall order," "Congress could not have chosen stronger words to express its intent that forfeiture be mandatory in cases where the statute applied.").  Forfeiture is determined by the amount of proceeds the Defendant obtained throughout his illegal activity; it is not the amount the Defendant was able to *retain* at the time he was apprehended or sentenced.  *See United States v. Carpenter*, No. 14-1641, 2019 WL 5287926, at n.6 (1st Cir. Oct. 18, 2019).

As the First Circuit recently upheld in *Carpenter*, forfeiture has an important role in criminal justice:

> [f]orfeiture orders go beyond disgorgement of profits.  They help to ensure that crime does not pay: they at once punish wrongdoing, deter future illegality, and lessen the economic power of criminal enterprises.

*Id.*  (upholding money judgment of approximately $14 million, which represented funds obtained by defendant, not just his profits) (internal citations and quotations omitted).  Forfeiture is intended to hold a defendant accountable for his actions, whether or not his criminal profit motives are successful.  In *United States v. Hall*, the First Circuit observed:

> to truly separate the racketeer from his dishonest gains, therefore, the statute requires him to forfeit to the United States the total amount of the proceeds of his racketeering activity, ***regardless of whether the specific dollars received from that activity are still in his possession***.

434 F.3d 42, 59 (1st Cir. 2006) (emphasis added), *quoting United States v. Ginsburg*, 773 F.2d 798, 802 (7th Cir. 1985) (en banc).  Thus, forfeiture is intended to reach the proceeds obtained and not merely the remnants that remain at the time of sentencing.  *See Id*.

### b.  The Racketeering Forfeiture Statute

Racketeering forfeiture provisions are more expansive than forfeiture provisions for other criminal conduct.  Congress enacted powerful racketeering forfeiture statutes and directed that those forfeiture provisions be broadly interpreted.  *See* 18 U.S.C. § 1963; *see also Russello v. United States*, 464 U.S. 16, 27-28 (1983); *United States v. Hurley*, 63 F.3d 1, 21 (1st Cir. 1995) ("Supreme Court made clear its desire for generous construction of the RICO forfeiture provisions, in line with Congress' unusual command that RICO (although a criminal statute) be broadly interpreted.").  In *Russello*, the Supreme Court examined the legislative history of the racketeering laws and observed:

> Congress directed…"The provisions of [the Racketeering Statute] ***shall be liberally construed to effectuate its remedial purposes***." So far as we have been made aware, this is the only substantive federal criminal statute that contains such a directive…

*Russello*, 464 U.S. at 27 (emphasis added).  The Court also acknowledged that "Congress emphasized the need to fashion new remedies in order to achieve its far-reaching objectives." *Id*.

Specifically, the RICO forfeiture statute directs forfeiture of several broad categories of assets, applicable in the instant case.  First, pursuant to 18 U.S.C. § 1963(a)(3), the Defendant must forfeit "[a]ny property constituting, or derived from, any proceeds [he] obtained, directly or indirectly, from racketeering.  Second, pursuant to 18 U.S.C. § 1963(a)(2), the Defendant must forfeit "[a]ny interest in, security of, claim against, or property or contractual right of any kind affording a source of influence over [the Enterprise]."  As set forth below, the government seeks forfeiture of Kapoor's Insys compensation – a money judgement for the value of his Insys stock on each date he obtained it, and also his remaining, nearly worthless, Insys stock, whose net value, if any, can be applied towards that money judgment.

## II.  WHAT IS FORFEITABLE

### a.  A Sum of Money Equal to Kapoor's Gross Proceeds

The law requires that Kapoor forfeit any property constituting or derived from proceeds he obtained – directly or indirectly – as a result of racketeering activity.  18 U.S.C. § 1963(a)(3). Moreover, Kapoor must forfeit gross, not net, RICO proceeds.  *See, e.g., Hurley*, 63 F.3d at 21 (necessary to forfeit gross proceeds under § 1963(a)(3)); *see also United States v. Bucci*, 582 F.3d 108, 122 (1st Cir. 2009) (following *Hurley*, proceeds means gross proceeds, not net profits).

Under the "relation back" doctrine, "all right, title, and interest in property ... vests in the United States upon the commission of the act giving rise to forfeiture."  18 U.S.C. § 1963(c).  This provision codifies the principle that a defendant cannot own the proceeds of criminal activity.  This provision also accomplishes a legal task – it enables the Court to determine when the government's interests vested for purposes of calculating proceeds.

A sentencing court may order forfeiture in one of many different forms.  Here, the government seeks entry of two forfeiture orders: (1) an individual money judgment against Kapoor, and (2) an Order of Forfeiture for Kapoor's shares of Insys stock.  *See*, *e.g.*, *Ponzo*, 853 F.3d at 589-90 (court may order money judgment equal to amount of proceeds); *United States v. Zorrilla-Echevarria*, 671 F.3d 1, 11 n.15 (1st Cir. 2011) ("A criminal forfeiture may take the form of either (1) 'an in personam judgment against the defendant for the amount of money the defendant obtained as proceeds of the offense,' (2) forfeiture of specific assets related to criminal activity, or (3) forfeiture of 'substitute assets' if the specific assets are unavailable.") (citation omitted); *Hall*, 434 F.3d at 59 (same).  The entry of an Order of Forfeiture (Money Judgment), as opposed to forfeiture of specific property, is specifically authorized by Rule 32.2(b)(1) and (c)(1) of the Federal Rules of Criminal Procedure, and such orders are commonplace.  *Id.*  Once a

forfeiture order is entered, the United States may then seek to enforce that order through forfeiture of substitute assets via Section 1963(m) and any other collection tools.  *See* Fed. R. Crim. P. 32.2(e), 18 U.S.C. § 1963(m), and *United States v. Lo*, 839 F.3d 777, 792 (9th Cir. 2016).

During the racketeering conspiracy, Kapoor took Insys public and paid himself in stock from the public offering.  On May 7, 2013, Insys held an IPO and its shares began to trade on the NASDAQ exchange using ticker-symbol INSY.  *See e.g.* Babich Trial Testimony, 02/13 Trial 82:9-13.  Following the IPO, Kapoor also exercised stock options and benefited by purchasing Insys stock at a discount from the market value.

To determine what assets constitute forfeitable RICO proceeds, courts apply the "but for" test.  *See Anguilo*, 897 F.2d at 1213.  Under the "but for" test, "forfeitures are limited to property interests that would not have been acquired or maintained but for the defendant's racketeering activities."  *Id*.  Here, Kapoor paid himself in Insys stock.  Kapoor paid himself on the date of the Insys IPO by converting his debt into Insys shares.  As demonstrated by two failed IPO attempts before the conspiracy began, but for the racketeering conspiracy, the IPO would not have been successful.  Kapoor also purchased Insys stock at a discount from the market price by exercising stock options.  But for the racketeering conspiracy, Kapoor would not have received that stock or those options.  Some criminals spend their proceeds, some put their proceeds in a bank account.  Kapoor kept his proceeds in Insys stock.  *See, e.g., Hall*, 434 F.3d at 59 ("racketeer who dissipates profits or proceeds of his racketeering activity on wine, women, and song has profited from organized crime to the same extent as if he had put the money in his bank account."  (internal quotation omitted)).

Here, the proper measure of Kapoor's proceeds is the *value* of that which he would not have obtained but for his racketeering conspiracy – his payments to himself in stock and his exercise of stock options.  Specifically, the value of his beneficially-owned stock on the date he obtained that stock.

Using the valuation of the stock, on the date that Kapoor was compensated with the stock grant and on the date he exercised his stock options, is consistent with the relation-back doctrine.  Under the relation back doctrine, 18 U.S.C. § 1963(c), the government's interest in the value of Kapoor's stock vested the moment Insys' stock became Kapoor's.  Kapoor's subsequent decisions (i.e. whether to sell or retain the stock) go to whether he grew or dissipated those proceeds, not whether the value of the proceeds he obtained is forfeitable.  In other words, the United States is entitled to a forfeiture order for the value of that stock when Kapoor obtained it, and whether he dissipated that value on "wine, women, and song" or kept the proceeds invested in stock that is now nearly worthless is irrelevant.

That Kapoor later lost the value of his Insys stock due to his own racketeering scheme also does **not** mean that the value of the stock was not itself proceeds when he obtained it.  It would defy logic to permit any defendant to avoid or mitigate forfeiture simply by choosing or allowing his proceeds to devalue.  Such a rule would incentivize criminals to destroy proceeds, raid corporate entities, and spend lavishly.  Kapoor should not be permitted to escape significant forfeiture now that his enterprise has come crashing down around him, he must instead be directed to forfeit the value of his stock when he obtained those criminal proceeds, as intended by Congress.  *See* 18 U.S.C. § 1963; *Hurley*, 63 F.3d at 21.

The Supreme Court plainly anticipated a scenario such as this, where a racketeer, like Kapoor, drove the racketeering enterprise straight into bankruptcy and then pleaded poverty at sentencing, and made clear that doing so was impermissible.

> Forfeiture of interest in an enterprise often would do little to deter; indeed, it might only encourage the speedy looting of an infiltrated company. ***It is unlikely that Congress intended to enact a forfeiture provision that provided an incentive for activity of this kind while authorizing forfeiture of an interest of little worth in a bankrupt shell***.

*Russello*, 464 U.S. at 28 (emphasis added).

### b. Kapoor's Source of Influence over Insys (his Insys stock)

Kapoor must *also* forfeit ownership and control of the stock, which afforded him his strong source of influence over the Insys racketeering enterprise. *See* 18 U.S.C. § 1963(a)(2)(D). Forfeiture of both proceeds and of a convicted defendant's property affording a source of influence over the criminal enterprise is appropriate because each serves a different purpose.

It is undisputed that Kapoor's beneficial stock ownership permitted him to "individually control [Insys'] direction and policies…." *See* Tr. Ex. 575 (Insys Therapeutics Form S1 filing with the United States Securities and Exchange Commission and amendments thereto). Kapoor had firing and hiring authority and signed off on each critical decision, including how to use the IRC to cheat insurers and how to use speaker payments to bribe prescribers to prescribe Subsys. *Id.*; *see generally* Trial Testimony of Michael Babich and Elizabeth Gurrieri. In fact, Insys warned its shareholders that "[b]y virtue of his holdings, Dr. Kapoor can and will continue to be able to effectively control the election of members of our board of directors, our management and our affairs…." Tr. Ex. 575. Kapoor's Insys stock holdings provided him a controlling interest over the enterprise and his stock ownership was his continuing source of influence over the racket. *See* 18 U.S.C. § 1963(a)(2)(D) (forfeiture of "property or contractual right of any kind affording a source of influence…").

### III.     CALCULATING KAPOOR'S PROCEEDS

#### a.   The Amount of the Order of Forfeiture (Money Judgment)

To determine the value of Kapoor's proceeds, therefore, the Court must determine when Kapoor obtained stock and how much that stock was worth when he obtained it.  *See e.g. Betancourt*, 422 F.3d 240 at 250-51 (forfeiture of lottery winnings).  Bridget Horan, Federal Bureau of Investigation Forensic Accountant and trial witness, examined each of Kapoor's mandatory Securities and Exchange Commission Form 4s, which must be filed anytime an insider, such as Kapoor, transacts in corporate stock.  According to Horan, as of the Initial Public Offering, John Kapoor had beneficial ownership of 14,129,585 shares of Insys Therapeutics common stock valued at $8 per share for a value of $113,036,680.  Then, on May 19, 2014, Kapoor exercised a total of 15,991 stock options and purchased Insys Therapeutics common stock at a price range of $7.26 to $17.08 per share, a discounted rate. The closing price for Insys stock on that date was $26.55.  As a result, Kapoor was paid $276,079.14, the difference between the option price and the market price.  The government, therefore is entitled to seek an Order of Forfeiture (Money Judgment) equal to Kapoor's gross proceeds - $113,312,759.14 ($113,036,680 + $276,079.14).

#### b.   The Forfeiture of the Stock

As set forth above, Kapoor must also forfeit his Insys stock, which he personally owned and which was also owned for his benefit by his trust, the John N. Kapoor Trust dated September 20, 1989, and one of his businesses, EJ Financial/Neo Management LP, because Kapoor's beneficial ownership of the Insys stock afforded him a source of influence over the racketeering enterprise. *See* 18 U.S.C. § 1963(a)(2)(D).

> **c.** ***Honeycutt v. United States*** **Is Inapplicable Because Kapoor Personally Obtained Proceeds and Because the Order of Forfeiture (Money Judgment) is Not Joint and Several**

In previous filings before this Court, Kapoor argued that forfeiture will likely be limited by the Supreme Court's decision in *Honeycutt v. United States,* 137 S.Ct. 1626 (2017).   In *Honeycutt*, a narcotics trafficking case involving forfeiture pursuant to 21 U.S.C. § 853, the Supreme Court only held "a defendant may not be held jointly and severally liable for property that his co-conspirator derived from the crime but that the defendant himself did not acquire." *Id*. *Honeycutt* does not apply here because *Honeycutt* (1) applied to joint and several liability forfeiture judgments; (2) concerned a minor player in a drug dealing operation who did not personally obtain the majority of the proceeds; and (3) did not involve the RICO forfeiture statute.   Unlike *Honeycutt*, the requested forfeiture judgment is not joint and several.   In this case, the United States seeks forfeiture from each defendant commensurate with the income, i.e. proceeds, the defendant acquired from Insys.   *Honeycutt* is inapplicable here because Kapoor <u>personally obtained</u> the proceeds in the form of the value of his stock.   Under the Supreme Court's ruling in *Honeycutt*, the Defendant must have "obtained" proceeds sought for forfeiture – Kapoor plainly did so.

It is not correct to say that Kapoor never **obtained** anything – he obtained the shares of Insys stock and then *elected* to hold them.   The government's interest in the stock vested as soon as Kapoor obtained each share.   *See* 18 U.S.C. § 1963(c) (relation back doctrine).   There is a fundamental difference between an Order of Forfeiture of equal value to the proceeds obtained by the defendant, as requested here, and a joint and several money judgment of equal value to the proceeds of the entire conspiracy, never obtained by the defendant, such as the type overturned in *Honeycutt*.

*Honeycutt* did not bar forfeiture in the form of an Order of Forfeiture (Money Judgment). *See e.g. United States v. Gorski*, 880 F.3d 27, 40–41 (1st Cir. 2018) (*Honeycutt* did not ban personal money judgments)*; Nejad*, 933 F.3d at 1166 (same); *United States v. Elbeblawy*, 899 F.3d 925, 941 (11th Cir. 2018) (same), *cert. denied*, 139 S. Ct. 1322, 203 L. Ed. 2d 573 (2019).

Recently, in *Carpenter*, the defendant challenged his forfeiture order under several theories including that *Honeycutt* precluded forfeiture of proceeds he did not own. *Carpenter*, No. 14-1641, 2019 WL 5287926, at n.6. The First Circuit dispatched this argument, noting that *Honeycutt* was inapplicable because it only stands for the proposition that joint and several liability cannot be used to require forfeiture of proceeds a co-conspirator never obtained. *Id*. The First Circuit held that a defendant obtains property when "the property was at some point under the defendant's control." *Id*. at *9. In upholding the $14 million forfeiture order, the First Circuit confirmed that it was not unlawful or improper to require a defendant forfeit more than he gained or his victim lost. *Id*.

## IV.    CONCLUSION

WHEREFORE, the United States respectfully requests that this Court:

(a)    enter the $113,312,759.14 Order of Forfeiture (Money Judgment) in the form submitted herewith;

(b)    enter the Order of Forfeiture (Stock) in the form submitted herewith;

(c)    retain jurisdiction in this case for purposes of enforcing the forfeiture;

(d)    include the forfeiture, as set forth in the Orders of Forfeiture, in the oral pronouncement of the Defendant's sentence; and

(e)     incorporate the Orders of Forfeiture in the criminal judgment entered against the

Defendant, pursuant to Federal Rule of Criminal Procedure 32.2(b)(4).

                                        Respectfully,

                                        ANDREW E. LELLING
                                        United States Attorney

Dated: December 17, 2019        By:     /s/ David G. Lazarus
                                        DAVID G. LAZARUS (BBO #624907)
                                        K. NATHANIEL YEAGER (BBO # 630992)
                                        FRED M. WYSHAK, JR. (BBO #535940)
                                        Assistant United States Attorneys
                                        One Courthouse Way, Suite 9200
                                        Boston, MA  02210
                                        (617) 748-3100
                                        david.lazarus2@usdoj.gov

**Certificate of Service**

        I hereby certify that the foregoing Motion was filed through the Electronic Case Filing
system and will be sent electronically to the registered participants as identified on the Notice of
Electronic Filing.

                                        /s/ David G. Lazarus
                                        DAVID G. LAZARUS
Dated: December 17, 2019                Assistant U.S. Attorney