UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>JOHN N. KAPOOR, )<br>)<br>Defendant. )<br>) | Criminal No. 16-CR-10343-7-ADB<br><br>**LEAVE TO FILE SUR-REPLY GRANTED JANUARY 21, 2019** |

## JOHN KAPOOR'S SUR-REPLY TO THE GOVERNMENT'S FORFEITURE MOTION

The government's reply in support of forfeiture as to Dr. Kapoor (Dkt. No 1149) ("Reply") does not actually reply to Dr. Kapoor's arguments. Instead, it mischaracterizes those arguments and attacks a straw man. Perhaps that is all the government can do, because its position is contrary to the language of the forfeiture statute, ignores controlling Supreme Court precedent, is not supported by lower court authorities, and violates the Eighth Amendment. Dr. Kapoor submits this sur-reply so the record is clear on what he is arguing and why the government's position fails.

**I.     18 U.S.C. §1963(a)(3) and *Honeycutt* Foreclose the Government's Approach**

The government begins by assuming what it cannot prove. *See Reply* at 1 ("The United States seeks entry of an Order of Forfeiture in the form of a money judgment, against the Defendant in an amount of *the proceeds he obtained from his crimes*.") (emphasis added). Thus, it wrongly characterizes Dr. Kapoor's opposition as misconstruing entry of a forfeiture money judgment with collection on that judgment. *See id.*

That is not what Dr. Kapoor argued. Rather, as set forth in his response, Dr. Kapoor never *obtained* the IPO value of his unsold Insys shares. As a result, the government is not entitled to that historical share value in a forfeiture money judgment under 18 U.S.C. § 1963(a)(3). *See*

Kapoor Response to Forfeiture (Dkt. No. 1100) ("Response") at 5-7, 13-18.  In addition—because the government also relied in its original motion on the substitute assets provision—Dr. Kapoor explained why it does not provide indirectly what the government cannot obtain directly.  *See id.* at 7-11.  Dr. Kapoor did not conflate the two provisions by explaining why neither applies here.

The government denigrates Dr. Kapoor's core argument that forfeiture should not apply to the historical value of his unsold Insys shares as "without authority and defi[ying] logic."  Reply at 3.  Not so.  As Dr. Kapoor explained, his arguments rests, first and foremost, on the statutory text.  Section 1963(a)(3) authorizes forfeiture of "any ***property constituting, or derived from, any proceeds which the person obtained***, directly or indirectly, from racketeering activity."  (emphasis added).  Stock shares are "***securities***," 18 U.S.C. § 1963(b)(2) (emphasis added), which is one type of "***property***" that is specifically forfeitable under 18 U.S.C. § 1963(a)(3) (emphasis added).  Because those shares remain unsold and are restrained by Court order, they are available to be forfeited.  The government has never attempted to answer this textual argument and explain why the "property constituting, or derived from, any proceeds which the person obtained" extends beyond the unsold Insys shares (which are "property" that Dr. Kapoor obtained) to their historical IPO value (which is not "property" and which Dr. Kapoor did not obtain in any tangible sense).

Moreover, this Court is not reading the statute in a vacuum.  In *Honeycutt v. United States*, 137 S. Ct. 1626 (2017), the Supreme Court held that a forfeiture statute indistinguishable from the one at issue does not extend beyond property actually obtained by the Defendant.  As the Supreme Court reasoned, "[t]he adverbs 'directly' and 'indirectly' modify—but do not erase—the verb 'obtain.'"  *Id.* at 1633.  Thus, the Supreme Court recognized thrice over the statute's "limitation to ***tainted property*** acquired or used by the defendant."  *Id.* (emphasis added)*; see also id.* (holding that the statute does not extend beyond "***tainted property*** obtained as the result of or used to

facilitate the crime") (emphasis added); *id.* (holding that the statute "applie[d] to *tainted property only*") (emphasis added).  Here, the tainted property, on the government's own theory, consists of the shares themselves.[1]

The government's efforts to cast *Honeycutt* aside border on the disingenuous.  In its opening brief, the government argued that *Honeycutt* "does not apply" because it arose in the context of a joint-and-several forfeiture, involved a minor participant in the conspiracy, and did not interpret the RICO forfeiture statute.  *See* Motion for Forfeiture (Dkt. No. 1054) at 9.  Supreme Court decisions are not so easily cast aside.  When the Supreme Court interprets statutory language, as it did in *Honeycutt*, that interpretation is not limited to the factual circumstances in which the holding arose.  Government commentators have recognized as much.  *See, e.g.*, Ralston & Fazio, "The Post-*Honeycutt* Landscape of Asset Forfeiture," DOJ Journal of Federal Law and Practice at 33 (Sept. 2019) (available at https://tinyurl.com/s9g96rf) (article by DOJ attorneys from the Criminal Appellate and Money Laundering Sections conceding that *Honeycutt* "altered the legal landscape regarding criminal forfeitures"); *see also id.* at 51 ("Following *Honeycutt*, the key question is who 'obtained' what during the course of a crime.").  And, as Dr. Kapoor pointed out in his response, the statutory language of the drug forfeiture provision in *Honeycutt* is essentially the same as the RICO forfeiture provision and the First Circuit views decisions interpreting the two provisions interchangeably.  *See* Response at 18 (citing *United States v. Hall*, 434 F.3d 42, 59-60 (1st Cir. 2006)).

The government fares no batter on reply.  It now interprets *Honeycutt* as only limiting the reach of substitute asset provision and asserts that the decision "sets no such barrier prior to entry

---

[1] As *Honeycutt* recognized, the "sole provision . . . that permits the Government to confiscate property untainted by the crime" is the substitute assets provision. 137 S. Ct. at 1633.

of the forfeiture order in the first instance." Reply at 3. That interpretation cannot be squared with what the Supreme Court held. The *Honeycutt* Court was not determining the scope of the substitute assets provision, but rather, the scope of what the government may forfeit in the first instance under the drug analogue to Section 1963(a)(3). *See supra* at 2-3. The Court only referenced the substitute assets provision to confirm its interpretation of the latter. *See Honeycutt*, 137 S. Ct. at 1633-34 (noting that the substitute assets provision would be "rendered futile" if the limitation of forfeiture to property obtained from the crime was read out of the statute). To make matters even clearer, the Court reiterated that forfeiture "is limited to property the defendant himself acquired as a result of the crime." *Id.* at 1635. That is a substantive limitation on the government's forfeiture power, not a procedural gloss on the substitute assets provision.[2]

As for the accusation that Dr. Kapoor's position defies "logic," Reply at 3, Dr. Kapoor provided plenty of it in his response. As explained there, the government's approach would create absurd incentives for anyone under investigation to immediately liquidate any property arguably obtained as a result of the crime. *See* Response at 4-5, 10-11. This would have disastrous results, especially as applied to stock shares, because it would incent individuals to sell potentially compromised stock to the unsuspecting public while the price is still high. Does the government really want to incent such behavior? Or to make defendants face the Catch-22 of either (a) selling their shares and having those sales used against them at trial as consciousness of guilt or (b) holding onto their shares at enormous financial cost as the government's public investigation destroys the stock value that they must later forfeit? Perhaps a private plaintiff could be forgiven for

---

[2] The government's observation that *Honeycutt* did not outlaw money judgments, Reply at 3, is a non-sequitur. Dr. Kapoor is not arguing that *Honeycutt* makes money judgments unavailable. He is arguing that *Honeycutt* limits any forfeiture—including forfeiture money judgments—to what the defendant actually obtained as a result of the offense.

disregarding the broader implications of a legal position, but the Department of Justice really should consider the incentives that its novel position here would create in other cases.

## II.     The Authorities Cited by the Government Are Far Afield

The government attempts to get around the plain text of Section 1963(a)(3) by citing various lower court cases, mostly decided long before *Honeycutt*. These cases provide little support for the government's position and highlight the lack of authority for its approach.

The government starts with a case it did not cite in its opening brief, which was first cited in Dr. Kapoor's response. That case, *United States v. Misla-Aldarondo*, 478 F.3d 52 (1st Cir. 2007), does not help the government. It stands for the unsurprising proposition that:

> If the government has proven that ***there was at one point an amount of cash that was directly traceable to the offense*** . . . ***that is sufficient for a court to issue a money judgment***, for which the defendant will be fully liable whether or not he still has the original corpus of the tainted funds—indeed, whether or not he has any funds at all.

*Id.* at 73-74 (emphasis added). The Defendant there obtained the tainted cash, *see id.* at 73, and it did not matter that he no longer had it by the time of sentencing. Thus, the First Circuit's conclusion that a money judgment may be issued "whether or not the defendant still retains the actual property involved in the offense, or any property at all," *id.* at 75, means that a defendant who obtains tainted moneys is subject to forfeiture even if those moneys—*i.e.*, the specific bills or deposit amounts that he once received—are later not recoverable. Here, by contrast, Dr. Kapoor never obtained the IPO value of his Insys shares; he just obtained the shares themselves and is in position to forfeit them.

*United States v. Zorilla-Echeveria*, 671, F.3d 1 (1st Cir. 2011), is also inapposite. It stands for the unremarkable proposition that a criminal forfeiture may take one of three forms:

> (1) "an *in personam* judgment against the defendant for ***the amount of money the defendant obtained as proceeds*** of the offense"; (2) "forfeiture of specific assets

related to criminal activity, or (3) forfeiture of "substitute assets" if the specific assets are unavailable.

*Id.* at 5 (emphasis added).  Here, Dr. Kapoor (1) never obtained an amount of money equal to the IPO value of his unsold shares, (2) does not oppose forfeiture of the unsold shares, and (3) the substitute assets provision does not help the government (which the government apparently no longer disputes, given its pivot away from that provision in its Reply).

The government again invokes *United States v. Carpenter*, 941 F.3d 1 (1st Cir. 2019), this time for the proposition that the First Circuit valued "investments" when initially made, not when later worthless.  Reply at 4.  But what the government obliquely describes as "investments" were, in truth, moneys provided to defendant by his victims, which he then invested: "clients entrust funds from property sales to an 'intermediary' company, which invests the funds until the client purchases replacement property.  Carpenter was the chairman of such an 'intermediary' company." *Id.*  The defendant may not have had legal title to those funds, but he controlled them and frittered them away.  Here, the situation is precisely the reverse: Dr. Kapoor has legal title to his unsold Insys shares, but he did not obtain any monetary value from them or do anything to fritter it away.

The government also cites three out-of-circuit cases.  *See* Reply at 3 n.3.  Two are beside the point.  *United States v. Holland*, 160 F.3d 377 (7th Cir. 1998) involved defendants who concealed proceeds of bankruptcy fraud by hiding "the original source of funds […] from their creditors."  *Id.* at 380.  *United States v. Diallo*, 2011 WL 135005 (S.D.N.Y., Jan. 13, 2011) concerned the value of cigarettes stolen by the defendant.  Neither case has any bearing on the issue presented here.

The final out-of-circuit case cited by the government is the only one that lends some support to its position.  But *United States v. Crumpler*, 229 Fed. Appx. 832 (11th Cir., April 13, 2007) is an unpublished decision, issued a decade before *Honeycutt*, authored by a Judge from the

6

Court of International Trade sitting by designation, which in a page of fairly perfunctory analysis values stock that a defendant "fraudulently acquired" as of the acquisition date rather than the sale date. *Id.* at 840. Its analysis of the forfeiture statute is largely based on emphasizing the word "any," which does not answer the question of whether a defendant obtains the value of unsold stock. And it is distinguishable on the facts, since—unlike Dr. Kapoor—Crumpler *sold* the stock at issue, and the Court's holding was limited to whether to base a money judgment on that sale price or on the stock value at the time of the fraudulent acquisition. *See id.*

That this is the best authority the government can cite, after two rounds of briefing, confirms Dr. Kapoor's point. The government's position here is not an accepted interpretation of the forfeiture statutes, even before *Honeycutt* curtailed the government's reach in this area. It is more akin to a legal Hail Mary.

### III.   The Government Fails to Grapple with the Constitutional Issue

The government's sole response to the Eighth Amendment challenge raised by Dr. Kapoor is to incorporate by reference its response to an Eighth Amendment challenge by Mr. Gurry. *See* Reply at 4. But Dr. Kapoor's arguments are materially different from Mr. Gurry's. While Gurry and other defendants have argued that forfeiture equal to the money they obtained from working at Insys constitutes an excessive fine, that is an issue the Court "need not reach" in Dr. Kapoor's case, Response at 12 n.8, because the government is seeking that he—and only he—forfeit something that he never obtained. *See id.* at 11-12.

It does not require an accounting degree to see this point. Dr. Kapoor invested $78.4 million into Insys. *See id.* at 2 n.2. It is undisputed that he held onto the lion's share of his Insys stock, which was worth more than $113 million at the IPO but is now essentially worthless in the aftermath of the government's investigation and prosecution of Insys—and the company's ensuing

bankruptcy. In reality, Dr. Kapoor has lost money—nearly $80 million—through his association with Insys. He does not expect anyone to feel sorry for him for that loss, and he is of course facing other sentencing consequences that cannot be expressed in monetary terms. But if forfeiture of $357,144 by a defendant who did not profit from the crime violated the Eighth Amendment, *see United States v. Bajakajian*, 524 U.S. 321, 336-37 (1998), then how could forfeiture of more than $113 million by a defendant who *lost* nearly $80 million comply with the same? At some point, the government's forfeiture position reduces to an unauthorized taking of money from a defendant simply because he has money. The government has reached that point here.

## IV.   Conclusion

For all these reasons, and those set forth in his response, the law does not support the government's forfeiture position as to Dr. Kapoor. He should forfeit his unsold Insys shares but not their historical value at the time of the IPO. The outer-most value of any money judgment that can be imposed in his case is the $276,079.14 in call options values relative to the market price at which exercised them, *see* Response at 11-12, plus the $1,300,384.06 he obtained by selling and giving away a small amount of Insys stock (which the government has not even sought in forfeiture but which Dr. Kapoor forthrightly acknowledged in his response), *see id.* at 2 n.1.[3]

---

[3] Dr. Kapoor supports the arguments of other defendants that their forfeitures should be reduced by the value of taxes paid, but he does not ask for similar treatment as to his own forfeiture. Unlike the other defendants, Dr. Kapoor obtained Insys's publicly traded stock not as a form of compensation for work performed at Insys, but because of his personal investment in Insys before the IPO. Dr. Kapoor only asks the Court to make clear, in its order, that any money judgment in his case was not reduced by taxes paid and thus does not hinge on the outcome on appeal of *United States v. Chin*.

Dated: January 21, 2020						Respectfully submitted,

<u>/s/ Kosta S. Stojilkovic</u>
Beth A. Wilkinson (*admitted pro hac vice*)
bwilkinson@wilkinsonwalsh.com
Kosta S. Stojilkovic (admitted *pro hac vice*)
kstojilkovic@wilkinsonwalsh.com
Andrew W. Croner (admitted *pro hac vice*)
acroner@wilkinsonwalsh.com
Wilkinson Walsh LLP
2001 M Street NW
Washington, D.C. 20036
Telephone: (202) 847-4000

Brien T. O'Connor (BBO# 546767)
brien.o'connor@ropesgray.com
Aaron M. Katz (BBO# 662457)
aaron.katz@ropesgray.com
Ropes & Gray LLP
Prudential Tower 800 Boylston Street
Boston, MA 02199
Telephone: (617) 951-7000

*Attorneys for Dr. John Kapoor*

## **CERTIFICATE OF SERVICE**

    I hereby certify that the foregoing document will be served on counsel for all parties of record through the ECF system.

                                                  /s/ Kosta S. Stojilkovic
                                                  Kosta S. Stojilkovic
                                                  Counsel for Dr. John Kapoor