# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Crim. No. 16-10343-ADB |
| | ) | |
| JOHN KAPOOR, | ) | |
| | ) | |
| Defendant. | ) | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT KAPOOR'S MOTION FOR STAY OF SENTENCE PENDING APPEAL

The motion of the defendant, John Kapoor, to stay his sentence pending appeal should be denied, as he has not identified a substantial question of law or fact likely to result in a reversal or a new trial, and because he has not shown by clear and convincing evidence that he is not a risk to flee.

## STATEMENT OF FACTS

On May 2, 2019, following a 50-day trial and 15 days of deliberations, a jury convicted Kapoor and four other defendants—Michael J. Gurry, Richard L. Simon, Sunrise Lee, and Joseph A. Rowan—of conspiracy to violate the Racketeering Influenced and Corrupt Organizations Act ("RICO"), in violation of 18 U.S.C. §1962(d).  [D.841].  Following the verdicts, all five defendants moved for judgment of acquittal and for a new trial.  [D.859-864].  On November 26, 2019, the Court granted a partial judgment of acquittal in the cases of Kapoor, Simon, Lee and Rowan, as to the Controlled Substances Act ("CSA") and honest services fraud RICO predicates, but otherwise denied the motions.  [D.1028].

On January 23, 2020, the Court sentenced Kapoor to 66 months of imprisonment to be followed by three years of supervised release, and ordered a self-surrender date of March 5, 2020.  [D.1175, at 57-64].  Kapoor has now moved to stay his sentencing pending appeal.  [D.1189].

**LEGAL STANDARD**

Kapoor seeks a stay of his sentence of incarceration pursuant to 18 U.S.C. §3143(b).  That statute provides that a person convicted of an offense and sentenced to a term of imprisonment shall be detained pending appeal "unless the judicial officer finds":

>  (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and

>  (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—

>  (i) reversal,

>  (ii) an order for a new trial,

>  (iii) a sentence that does not include a term of imprisonment, or

>  (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. §3143(b)(1). "If the judicial officer makes such findings, such judicial officer shall order the release of the person * * *."  *Id.*

With respect to the showing required under 18 U.S.C. §3143(b)(1)(B), the First Circuit has stated that it has two distinct parts: "(1) that the appeal raise a substantial question of law or fact and (2) that if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed."  *United States v. Bayko*, 774 F.2d 516, 522 (1st Cir. 1985); *see also United States v. Zimny*, 857 F.3d 97, 99 (1st Cir. 2017) (referring to the former as the "the substantiality prong" and the latter as the "likelihood prong").  In determining whether an appeal raises a substantial question of law or fact, it is not enough for a defendant to show that a disputed point

of law or fact was "fairly debatable" or that a "possibility of reversal" exists.  *Bayko*, 774 F.2d at

523 (vacating district court's order and revoking bail upon finding that the district court

erroneously ordered bail when it concluded that there was a "possibility of reversal" on appeal).

Rather, an appeal must present a "'close question or one that very well could be decided the other

way.'"  *Zimny*. 857 F.3d at 100 (quoting *Bayko*, 774 F.2d at 523).

## ARGUMENT

Kapoor contends that his sentence should be stayed pending appeal because his anticipated

appeal will raise substantial questions of law or fact that will result in a reversal or a new trial, and

because he does not pose a risk of flight.   As shown below, none of the anticipated claims that he

has identified presents a substantial question of law that would warrant a stay of his pending

appeal.  The government also submits that Kapoor has failed to show by clear and convincing

evidence that he is not a risk to flee, although the government acknowledges that the Court has

indicated that it does not see any reason that Kapoor is going to flee.

### A.      Kapoor Has Failed to Show that His Appeal Will Present a Substantial Question of Law or Fact that Will Result in a Reversal or New Trial.

Kapoor contends that his appeal will raise substantial questions of law or fact that are likely

to result in reversal or a new trial.  To the contrary, and as shown below, none of the issues he has

identified satisfies that demanding standard.

#### 1.      Prejudicial spillover

Kapoor first contends (Mot. at 6-11) that is appeal will raise a substantial issue because

prejudicial spillover from the evidence regarding the CSA and honest services fraud RICO

predicates substantially impacted the jury's determination that the mail and wire fraud predicates

were proven.  That claim is unavailing.

"To prevail on an evidentiary spillover claim, the defendant must prove 'prejudice so pervasive that a miscarriage of justice looms.'" *United States v Paz-Alvarez*, 799 F.3d 12, 30 (1st Cir. 2015) (quoting *United States v. Levy-Cordero*, 67 F.3d 1002, 1008 (1st Cir. 1995) (internal quotation marks omitted).  For four reasons, Kapoor has not made, and cannot make, that showing here.

First, and as the Court noted in its ruling, the Second Superseding Indictment ("SSI") charged a single RICO conspiracy that consisted of bribing healthcare practitioners to prescribe Subsys and then defrauding insurers to pay for those prescriptions, and the patient evidence that Kapoor argues supports his claim of evidentiary spillover "would likely have been admissible against Defendants even if the trial were only on the ordinary mail and wire fraud predicates because the Government could have used the testimony to show a patient's history of cancer or lack of dysphagia."  [D.1028, at 38].  Hence, the Court rightly concluded, the patient evidence "cannot support a claim of spillover prejudice from the CSA predicate."  [*Id.*].

Second, Kapoor's claim of prejudicial evidentiary spillover is not advanced by his assertion (Mot. at 7) that the evidence on the CSA and honest services fraud predicates on the one hand, and the mail and wire fraud predicates on the other, "was largely segregated at trial, with the former the subject of testimony from sales executives, representatives, and medical practitioners, and the latter the subject of testimony from witnesses who worked at the IRC and employees from various insurance companies."  Even accepting Kapoor's premise that the evidence regarding these predicates was largely from each other, "[t]his factor increases the likelihood that the jury engaged in the 'individualized factfinding' to which each defendant was entitled."  *United States v. Mubayyid*, 658 F.3d 35, 73 (1st Cir. 2011) (quoting *United States v. Josleyn*, 99 F.3d 1182, 1188 (1st Cir. 1996)).

Third, the Court "took measures against spillover prejudice from one predicate to another and from one Defendant to another by instructing the jury to consider the evidence as to each Defendant and to treat each Defendant individually."  [*Id.* at 39].  Thus, for example, the Court instructed the jury that:  "You must, as a matter of law, consider each Defendant and his or her involvement with the crime separately . . .  [Y]our verdict as to any Defendant should not control your decision as to any other Defendant."  [4/4/19 Tr. at 29-30].  The Court also not only instructed the jury about the elements of each of the five types of alleged racketeering activity alleged in the SSI, [*id.* at 43-54], but further instructed the jury that it may not find that the government proved the pattern of racketeering element unless the jury "agreed unanimously as to which type or types of racketeering acts the Defendant in question agreed would be committed by a member or members of the conspiracy."  [*Id.* at 42]. In particular, the Court instructed the jury as follows:

> You may not find that the Government has proved this [pattern of racketeering] element unless you all agree unanimously as to which type or types of racketeering acts the Defendant in question agreed would be committed by a member or members of the conspiracy. That is, you cannot find a Defendant guilty if some of you think the Defendant agreed that a member of the conspiracy would commit racketeering acts A and B, but the rest of you think that the Defendant only agreed that a member of the conspiracy would commit acts C and D.

[*Id.*].

These instructions ensured that the jury considered each of the alleged RICO predicates separately and individually.  *See United States v. Trainor*, 477 F.3d 24, 36 n.34 (1st Cir. 2007) ("Additionally, the court minimized the risk of improper spillover by instructing the jury that each count charged a separate offense and that the jury must individually consider each one:"); *United States v. Casas*, 425 F.3d 23, 50 (1st Cir. 2005) ("The court took adequate measures to guard

against spillover prejudice by instructing the jury to consider each charged offense, and any evidence relating to it, separately as to each defendant.").

Fourth, and finally, that the jury followed the Court's instructions is demonstrated by the fact that the jury unanimously found that Kapoor, Simony, Lee, and Rowan agreed that he, she, or another conspirator would intentionally commit two or more acts of all five of the charged RICO predicates, the jury unanimously found that Gurry agreed that he or another conspirator would commit two or more acts of the mail and wire fraud RICO predicates, and acquitted him of the other three predicates.  [D.841, at 1-7].  The jury's discriminating verdict shows that the jury was able to follow the Court's instructions and differentiate between the Defendants and the alleged RICO predicates.  *See, e.g., Mubayyid*, 658 F.3d at 73 ("Moreover, the jury's acquittal of Al-Monla on his false statement charge, pursuant to the same statute under which Muntasser was convicted, further undercuts the defendants' spillover argument."); *United States v. Edgar*, 82 F.3d 499, 504 (1st Cir. 1996) (because jury acquitted defendant on one of several counts, "[t]he jury thus showed itself clearly capable of discriminating among the evidence applicable to each count"); *United States v. Natanel*, 938 F.2d 302 (1st Cir. 1991) (no prejudice based on evidentiary spillover where the jury acquitted defendant on some counts, the trial court instructed jury to treat defendants as individuals and to consider each charge separately).  Indeed, the Second Circuit has stated that the absence of spillover is most readily inferable where the jury has convicted a defendant on some counts but not on others." *United States v. Hamilton*, 334 F.3d 170, 183 (2d Cir. 2003).  Because that is the case here, Defendants' claim that they are entitled to a new trial due to prejudicial spillover lacks merit.

### 2.     The Wire Fraud Predicate

Kapoor contends (Mot. at 13-14) that his appeal will raise a substantial question because the law is unsettled on whether the intracorporate conspiracy doctrine bars his conviction based on the wire fraud predicate.  In particular, Kapoor asserts that this Court acknowledged a "recognized circuit split" on the issue of whether the intracorporate conspiracy doctrine applies to RICO conspiracies, and that the First Circuit's decision in *United States v. Peters*, 732 F.2d 1004, 1008 (1st Cir. 1984), is distinguishable because that case involved a conviction under 18 U.S.C. §371, not a conviction under the RICO statute.  Thus, he argues, "the possibility remains that the First Circuit could adopt the reasoning of the two circuits that have applied the intracorporate conspiracy doctrine in cases that did involve RICO claims."

No substantial question of law is presented by this issue.  As this Court recognized in rejecting this claim, the circuit split on which Kapoor bases this argument involves whether the intracorporate conspiracy doctrine applies to *civil* RICO conspiracies; and, as this Court noted, "[e]ven courts that have applied the intracorporate conspiracy doctrine in civil cases do not apply it to the criminal context."  [D.1028, at 27 (citing cases).  Thus, for example, the Eleventh Circuit has held that the underlying purpose of the creation of the fiction of intracorporate conspiracy did not apply to criminal conspiracies:

> By personifying a corporation, the entity was forced to answer for its negligent acts and to shoulder financial responsibility for them. The fiction was never intended to prohibit the imposition of criminal liability by allowing a corporation or its agents to hide behind the identity of the other.  We decline to expand the fiction only to limit corporate responsibility in the context of the criminal conspiracy now before us.

*United States v. Hartley*, 678 F.2d 961, 970 (11th Cir. 1982).  Similarly, the Fifth Circuit, in dicta, stated that "a corporation can be convicted of criminal charges of conspiracy based solely on conspiracy with its own employees: because, "[i]n these situations, the action by an incorporated

collection of individuals creates the 'group danger' at which conspiracy liability is aimed, and the view of the corporation as a single legal actor becomes a fiction without a purpose." *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 603 (5th Cir. 1981). These decisions are consistent with Justice Harlan's statement that "the fiction of corporate entity, operative to protect officers from contract liability, had never been applied as a shield against criminal prosecutions when the Sherman Act was passed." *United States v. Wise*, 370 U.S. 405, 417 (1962) (Harlan, J., concurring). No court of which the government is aware has invoked the intracorporate conspiracy doctrine to bar a criminal prosecution.

Kapoor's attempt to distinguish *Peters* likewise fails. In that case, a corporation and its president (Peters) and vice-president (Ellis) challenged their conspiracy convictions under §371 on the ground that the evidence did not indicate that Peters and Ellis conspired together, and that they could not be convicted for conspiring separately with the corporation. The First Circuit rejected this argument, finding that the evidence suggested that Peters and Ellis conspired together and that "[t]he actions of two or more agents of a corporation, conspiring together on behalf of the corporation, may lead to conspiracy convictions of the agents (because the corporate veil does not shield them from criminal liability) and of the corporation (because its agents conspired on its behalf)." 732 F.3d at 1008 (citing *United States v. S & Vee Cartage Co.*, 704 F.2d 914, 920 (6th Cir. 1983); *Hartley*, 678 F.2d at 970-72, and *Dussouy*, 660 F.2d at 603).

Kapoor's suggestion that the First Circuit might distinguish *Peters* on the ground that that case involved §371 as opposed to the RICO statute thus goes nowhere, as the court's rationale in *Peters* was not limited to §371. To the contrary, the First Circuit stated its express agreement in *Peters* with those decisions that had rejected application of the intracorporate conspiracy doctrine to criminal conspiracies:

> These cases reject the syllogism, at least in the criminal context, that since the acts of corporate officers constitute acts of the corporation, and since a corporation cannot conspire with itself, it cannot conspire with its officers.  There is a world of difference between invoking the fiction of corporate personality to subject a corporation to civil liability for acts of its agents and invoking it to shield a corporation or its agents from criminal liability where its agents acted on its behalf.

732 F.2d at 1008 n.7 (citing *Hartley*, 678 F.2d at 970).  This language forecloses the possibility that the First Circuit might apply the intracorporate conspiracy doctrine to criminal RICO conspiracy cases, as Kapoor here asserts,

Finally, and as the government has argued previously, this conclusion is only underscored by the fact that the intracorporate conspiracy doctrine arose in the antitrust context, *see Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 775 (1984), and the Supreme Court has never extended that doctrine outside the antitrust context.  *See Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158,166 (2001) (in holding that a president and sole shareholder of corporation was a "person" distinct from the enterprise subject to liability under RICO, stating that this conclusion  was not "inconsistent with antitrust law's intracorporate conspiracy doctrine" because "that doctrine turns on specific antitrust objectives") (citing *Copperweld Corp.*, 467 U.S. at 770–71) (emphasis added); *see also Ziglar v. Abassi*, 137 S. Ct. 1843, 1868 (2017) (stating that the Court had not given approval to the intracorporate conspiracy doctrine in the specific context of 28 U.S.C. §1985(3)).

For these reasons, no substantial question of law is presented with respect to the wire fraud predicate.


### 3.      The Mail Fraud Predicate

Kapoor contends (Mot. at 12-13) that his appeal will raise a substantial question of law or fact because the mail fraud predicate is not supported by sufficient proof that the mailings were used to facilitate the insurance fraud scheme.  For several reasons, that claim, too, is insubstantial.

As a threshold matter, this Court need not even consider this issue because, as shown above, Kapoor has not shown that his challenge to the wire fraud predicate presents a substantial question of law.  The jury unanimously found that Kapoor agreed that he or another conspirator would intentionally commit two or more acts of wire fraud.  [D.841, at 6].  Because that determination alone satisfies the pattern of racketeering element of the RICO conspiracy charged in the SSI, Kapoor cannot show that even if he is successful on appeal with respect to his challenge to the mail fraud predicate, that would lead to reversal or a new trial.

In any event, even if considered on the merits, Kapoor's challenge lacks merit.     The federal mail fraud statute, 18 U.S.C. §1341, makes it a crime to (1) devise a scheme to defraud (2) with the intent to defraud and (3) to use the mails "for the purpose of executing" the scheme. *United States v. Hebshie*, 549 F.3d 30, 35 (1st Cir. 2008).  The Supreme Court and the First Circuit have given the third element—that the mails were used "for the purpose of executing" the scheme to defraud, otherwise known as the "in furtherance of" requirement—"a liberal construction," *United States v. Serino*, 835 F.2d 924, 928 (1st Cir. 1987), meaning that it is "broadly read and applied." *Hebshie*, 549 F.3d at 36.  To satisfy this requirement, a mailing "need not be an essential element of the scheme"; rather, it need only be "incident to an essential part of the scheme" or a "step in [the] plot." *Schmuck v. United States*, 489 U.S. 705, 710-11 (1989).  In other words, there need not be a "but for" link between the mailing and the fraudulent scheme; "a mere 'connection or relationship' is sufficient." *Hebshie*, 549 F.3d at 36 (quoting *United States v. Pimental*, 380 F.3d 575, 587 n.5 (1st Cir. 2004)).  Accordingly, mailings designed to lull a victim into a false

sense of security and postpone his or her ultimate complaint to authorities are sufficient to establish the "in furtherance of" element. *See United States v. Maze*, 414 U.S. 395, 403 (1974); *Pimental*, 380 F.3d at 587-88 (citing cases).

In this case, the Court correctly determined that the mail fraud predicate was established in at least two ways. First, the fraudulent scheme in the SSI "deceived insurers into paying for prescriptions for which they otherwise would not have paid," and "[t]he mailing of bribes to prescribers facilitated the execution of the fraudulent scheme by incentivizing prescriptions from high-volume practitioners." [D.1028, at 29]. Kapoor asserts (Mot. at 12) that the jury's verdict "appears to be inconsistent with the Court's rationale," inasmuch as the jury found that the mail fraud predicate met "even as to Gurry," whom the jury did not find the CSA and honest services fraud predicates were proven. But the jury reasonably could have found that the mailings were incident to an essential part of the mail fraud scheme even if the jury also determined that the elements of the CSA and honest services fraud predicates were not proven as to Gurry. The jury's discriminating verdict as to Gurry, in other words, does not suggest that the jury "improperly equated the ordinary mail fraud allegations with the ordinary wire fraud allegations," as Kapoor erroneously suggests.

Second, and as the Court also found, the evidence at trial "demonstrated that insurers would not cover certain prescriptions, that the IRC sought coverage from insurers for these prescriptions, and that, to gain prior authorizations, IRC employees known as prior authorization specialists misled insurers" in several different ways. [*Id.* at 29]. These misrepresentations, the Court found, "made it more likely that the prior authorizations would be obtained and that they were material to the insurer's decision to cover the prescription. [*Id.*]. Kapoor does not address this rationale in his memorandum, but instead attacks the Court's determination that the government did not need

to prove that the prescriptions for which the IRC sought reimbursement were in fact medically illegitimate. Here, too, he misses the mark, as even accepting *arguendo* the premise of his challenge, the Court expressly found that "if proof of mail fraud did require proof of medically illegitimate prescriptions, the argument would still fail as the evidence at trial demonstrated that prior authorization specialists did mislead insurers concerning off-label prescriptions that were in fact medically illegitimate." [*Id.*]. Hence, no matter how framed, Kapoor's challenge to the mail fraud predicate founders.

### 4. Rebuttal argument

Kapoor contends (Mot. at 14-17) that he will raise a substantial question on appeal that the supplemental instructions given by the Court following the government's rebuttal argument were inadequate. That claim also is insubstantial.

First, with respect to the "loaded gun" metaphor, the Court correctly determined that all three considerations that bear on whether a remark in closing or rebuttal "so poisoned the well that the trial's outcome was likely affected"—"(1) the severity of the misconduct, including whether it was isolated or deliberate; (2) whether curative instructions were given; and (3) the strength of the evidence against the defendant," *United States v. Peake*, 804 F.3d 81, 93 (1st Cir. 2015) (internal quotation omitted)—counseled against a finding that a new trial was warranted. The Court found that that remark was isolated as the government only used the metaphor once during a rebuttal that lasted approximately 30 minutes; the Court gave a supplemental instruction that addressed the legal principles implicated by the remark; and the strength of the evidence against Kapoor and the other Defendants on the mail and wire fraud predicates was strong. [D.1028, at 45-46].

Neither of Kapoor's challenges to this determination withstands scrutiny. His assertion (Mot. at 15) that the "loaded gun" metaphor was part of a "much broader campaign" to equate

Defendants to street-level drug dealers fails to appreciate that the Court specifically instructed the jury, both in its final charge and in the supplemental instructions, that the CSA and honest services fraud predicates required proof that the Defendants specifically intended that healthcare practitioners would prescribe Subsys outside the usual course of medical practice and without any legitimate medical purpose.  [4/4/19 Tr. at 43-54; 4/8/19 Tr. at 20-21].  And his claim (Mot. at 15) that the Court's supplemental instruction did nothing to cure the imagery created by this metaphor fails for to appreciate that the Court repeatedly instructed the jury that arguments of counsel were not evidence.  [1/28/19 Tr. at 33; 4/4/19 Tr. at 19-20; 4/5/19 Tr. at 132, 188; 4/8/19. Tr. at 21].  Kapoor's attempt to magnify the significance of this metaphor thus fails.

Kapoor also argues (Mot. at 16-17) that the Court's conclusion that he waived other objections to the government's rebuttal argument presents a substantial question on appeal fares no better.  As the government has argued previously, by moving for curative instructions in lieu of a mistrial—Defendants' request for a mistrial was only in the event the Court declined to give curative instructions, which did not happen—Defendants implicitly conceded any complaints they had with the government's rebuttal could be cured if their requested curative instructions were given.  When the Court thereafter circulated draft instructions to the parties and the Defendants offered edits without objecting that the supplemental instructions were inadequate (with the exception of the loaded gun metaphor), Defendants again signaled that the supplemental instructions proposed by the Court were acceptable.  And, after the Court read the supplemental instructions to the jury and asked whether any party wanted a sidebar, no party requested a sidebar or voiced an objection.  [4/8/19 Tr. at 22].  Put simply, and with the exception of the "loaded gun" metaphor, at no time did Defendants alert the Court that its proposed supplemental instructions

were inadequate.  In these circumstances, and as the Court correctly determined, "Defendants' silence can be interpreted as approval of the Court's instruction."  [D.1028, at 44].

This conclusion is consistent with Fed. R. Crim. P. 30(d), which requires a party who objects to "any portion" of a district court's jury instructions or the failure to give a requested instruction must inform the court of "the specific objection and the grounds for the objection before the jury retires to deliberate."  Thus, "[t]o preserve an objection to a jury instruction under Fed. R. Crim. P. 30(d), a litigant must lodge a specific objection and state the grounds for the objection *after* the court has charged the jury and before the jury begins deliberations."  *United States v. Roberson*, 459 F.3d 39, 45 (1st Cir. 2006) (emphasis in original).  Here, once again, after the Court read the supplemental instructions to the jury and asked whether any party wanted a sidebar, no party requested a sidebar or voiced an objection.  That failure underscores the conclusion that Defendants' objections to the government's rebuttal (with the exception of the loaded gun metaphor) were waived.

In sum, Kapoor has failed to show that his anticipated challenge on appeal to the government's rebuttal presents a substantial question of law.

## 5.    Evidence on the mail and wire fraud predicates

Kapoor lastly asserts (Mot. at 17-19) that he will present a substantial question on appeal that he is entitled to a new trial under Fed. R. Crim. P. 33 because the evidence on the mail and wire fraud predicates against him was "very thin."  The Court addressed the evidence of Kapoor's guilt in rejecting this argument in its post-trial ruling: Kapoor "approved strategies and funds for the IRC, demanded upwards of a 90% success rate for prior authorizations, and insisted on being kept apprised of what was working," and Kapoor also "was briefed on and approved the misleading strategies that allowed prior authorizations to reach the quotas set for them, including relying on

dysphagia, the history of cancer, and the spiel." [D.1028, at 62-63 & n.100-101 (citing evidence)].

Kapoor attacks this conclusion much on the same ground as he did in his post-trial motion; he attacks (Mot. at 19) the credibility of the testimony, for example, of Michael Babich that Liz Guerrieri openly discussed the IRC's fraudulent strategies on daily management calls. But, as the Court noted in its post-trial ruling, each of the witnesses in this case (including Guerrieri) underwent lengthy cross-examination and both their credibility and any discrepancies in their testimony was emphasized in Kapoor's closing. [*Id.* at 63]. The jury nonetheless found that the mail and wire fraud predicates were proven. In these circumstances, Kapoor has failed to show that he will raise a substantial question of fact or law that the sparingly-used remedy of a new trial is warranted in this case because there would be "a miscarriage of justice and where the evidence preponderates heavily against the verdict." *United States v. Merlino*, 592 F.3d 22, 32 (1st Cir. 2010) (quoting *United States v. Wilkerson*, 251 F.3d 273, 278 (1st Cir. 2001)).

> **B.     Kapoor Has Not Shown by Clear and Convincing Evidence that He is not a Risk to Flee.**

As the government argued at sentencing, Kapoor has significant connections overseas, he has substantial resources, many of which are overseas, and he is now facing a sentence of more than five years in prison. In these circumstances, the government believes that Kapoor is a flight risk and that he cannot demonstrate by clear and convincing evidence that he is not. The government nonetheless acknowledges that the Court has indicated that it does not see any reason that Kapoor is going to flee.

## CONCLUSION

For the foregoing reasons, Kapoor's motion for a stay of sentence pending appeal should be denied.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By:      /s/ *Mark T. Quinlivan*
         K. NATHANIEL YEAGER
         FRED WYSHAK, JR.
         DAVID G. LAZARUS
         MARK T. QUINLIVAN
         Assistant U.S. Attorneys

## Certificate of Service

I, Mark T. Quinlivan, hereby certify that the foregoing document filed through the ECF system will be sent electronically to counsel for the defendants.

By:      /s/ *Mark T. Quinlivan*
         MARK T. QUINLIVAN