UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | Court No.: 16-CR-10343-7-ADB |
| v. | ) ) |  |
| JOHN KAPOOR | ) ) |  |
| Defendant. | ) ) |  |

GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION TO CONTINUE SURRENDER DATE

Defendant John Kapoor seeks to continue his surrender date beyond May 19, 2020. [D. 1346]. For reasons set forth below, the United States opposes the motion, or in the alternative, seeks a court-monitored bracelet or house arrest.

I. The Current Health Crisis

Over the course of the current public health crisis the United States has recognized the dangers posed by COVID-19 in custodial settings. The government has agreed in certain cases to home confinement of pre-trial detainees where the defendant did not present a substantial risk of flight. To that end, on April 7, 2020, nearly six weeks before their scheduled surrender dates, the government initiated individual conversation with counsel for each of the defendants in this case in order to discuss the possibility of reaching agreement on a joint motion. Thereafter, four of the five defendants sought extensions with the government's assent. [D. 1334, 1336, 1337, 1340].

Counsel for John Kapoor were included in the government's efforts to discuss the possibility of an agreed motion. During the course of the discussion, the government asserted

that in its view, Kapoor remains a risk of flight, but informed counsel that it was willing to discuss conditions that might lead to a joint motion. As the present motion indicates, Kapoor was unwilling to consider conditions of release.

II. Circumstances Unique to John Kapoor

While the risks associated with COVID 19 are real and worthy of considered action, those risks do not require the Court to ignore other factors. To the contrary, multiple courts, while rejecting generalized concerns, have preferred a measured response to motions related to COVID 19. See United States v. Diaz, 1:19-cr-10033-LTS (consideration of the appropriate conditions of release specific to the defendant), April 16, 2020; United States v. Roeder, 18-cr-30003-MGM, April 22, 2020 (consideration of the condition of the facility at which the defendant was confined)[1]; United States v. Guzman Soto, 18-cr-10086-IT, April 23, 2020 (consideration of the amount of sentence served).[2]

The Court's consideration certainly must include the defendant's medical condition, as well as his age. The Court, however, should also consider the risk of flight posed by the defendant. As the Court is very aware, the government asserts that John Kapoor is a substantial risk of flight.[3]  A number of factors contribute to this position.

---

[1] Here, the defendant asks the Court to make a generalized determination about the risk of incarceration without offering any evidence about the conditions at the facility at which he will be detained.
[2] Such considerations are not static. Over time, as experience is gained, medical and institutional understanding grows, and/or more resources, including testing, become available, there will likely be other considerations.
[3] The present motion can be read to infer that the government has taken an inconsistent position in the First Circuit regarding the risk of flight posed by the defendant. [D. 1346] at 1, 9]. Such an inference, if intended, misapprehends the difference between the government's position on the risk of flight and the discretion afforded the District Court's factual findings regarding a risk of flight on appeal. United States v. Tortora, 922 F.2d 880, 882-83 (1st Cir. 1990).

First, John Kapoor has unusual resources that are substantially unlike the resources of any of the other defendants convicted after trial in this case.[4] While the United States does not seek to penalize defendant Kapoor for being wealthy, it is clear that, given his resources, his flight from this country is much easier to accomplish. Likewise, his ability to live a comparable lifestyle out of the United States is sustainable. Other wealthy individuals in this District have done exactly that. See https://www.bostonglobe.com/business/2015/06/23/carlos-wanzeler-fugitive-telexfree-principal-speaks-about a fugitive residing in Brazil (discussing United States v. Carlos Wanzeler (Case No.14-cr-40028-TSH) and describing the United States' difficulties in bringing him back to the country).

Second, when evaluating the risk of flight this Court is entitled to consider the nature and circumstances of the offense charged, as well as the history and characteristics of the defendant. 18 U.S.C. § 3142(g) (3) (A). The present motion, however, does not involve a newly indicted defendant. Rather, through trial and sentencing, John Kapoor's characteristics are not a mystery for the Court.

Kapoor, along with two government cooperators, was principally responsible for the criminal scheme in this case. [D. 1272 at 18]. Kapoor's authority within that scheme was unchecked. [02/14 Tr. 33: 7-8]. Evidence at trial demonstrated that over the course of the three year conspiracy, Kapoor repeatedly used his authority to require almost bizarre obstinance in the face of warnings about the seriousness of the crime, as well as the existence of an ongoing criminal investigation. Kapoor's Vice President of Marketing warned him and others that the company's actions were illegal. [2/1 Tr. at 143; 3/5 Tr. at 180]. Kapoor did not relent. Nor did he relent when the number one prescriber of Subsys in the United States was arrested and

---

[4] A defendant's financial resources are among the factors enumerated by the bail statute. 18 U.S.C. § 3142(g) (3) (A).

charged with illegal distribution of Subsys. [01/31 Tr. 104: 15-17; 02/22 56:23-57:2]; or when the New York Times published a devastating expose [Katie Thomas, "Doubts Raised About Off-Label Use of Subsys, a Strong Painkiller," The New York Times, May 13, 2014]. Kapoor pushed forward even after the federal government served a subpoena on the company. [01/30 Tr. 79:23-80:22 & Ex. 68]. Such evidence provides the Court with overwhelming proof that the defendant, when motivated, is ready and willing to ignore the requirements of the law.

Last, while it is certainly true that to date there is no evidence that Kapoor has violated his terms of release, his options for freedom have significantly diminished. Following his sentencing, this Court denied his motion for release pending appeal. [D.1252]. As such, the only immediate prospect of Kapoor avoiding incarceration is his appeal to the First Circuit of this Court's denial of his motion to stay. [D. 1273]. While the other defendants convicted after trial also appealed the Court's Order, an unsuccessful appeal carries greater meaning for Kapoor, as his sentence is at least two times longer than the sentences of any of the other defendants that have moved for a stay pending appeal. [D. 1292, 1294, 1296, 1299, and 1308].

III. Consideration of Alternatives

Any order requiring surrender, or setting conditions of release prior to surrender, requires some restraint of the defendant's liberty. But the defendant has conceded that, as a practical matter, given existing stay-at-home orders, he is substantially restrained by social distancing. [D. 1346 at 2]. As such, restraint on the defendant's liberty caused by either of the government's proposed alternatives is minimal. Conversely, a condition requiring the defendant to wear a bracelet, or even placing him under plain house arrest, gives the government the ability to act with greater speed and certainty should the defendant attempt to flee.

IV. Conclusion

While the government appreciates that detention facilities present particular risks in the midst of this crisis, detention determinations must still be subject to case-by-case analysis.  In this case, for the aforementioned reasons, the facts and circumstances continue to warrant a surrender date of May 19, 2020.  As such, the government requests that the Court deny the Defendant's Motion.   In the alternative, the government seeks a court-monitored bracelet or house arrest.


Date:   April 24, 2020                              Respectfully submitted,


                                                    ANDREW E. LELLING
                                                    United States Attorney


                                    By:     /s/ K. Nathaniel Yeager
                                            K. NATHANIEL YEAGER (BBO 630992)
                                            Assistant U.S. Attorney
                                            Office of the U.S. Attorney
                                            John J. Moakley Federal Courthouse
                                            One Courthouse Way, Ste. 9200
                                            Boston, MA  02210
                                            (617) 748-3100
                                            nathaniel.yeager@usdoj.gov



**CERTIFICATE OF SERVICE**

I, K. Nathaniel Yeager, I hereby certify that the foregoing document filed through the ECF system will be sent electronically to counsel for the defendant.


                                            By: /s/ K. Nathaniel Yeager
                                            K. NATHANIEL YEAGER
                                            Assistant United States Attorney