UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br>  )<br>  )<br>  )<br>         v.    )<br>  )<br>  )<br>  )<br>JOHN N. KAPOOR   )<br>  )<br>        Defendant   )<br>_____ ) | Case No. 1:16-cr-10343-ADB<br><br>*Redacted Version of Sealed Filing*<br><br>**Motion for leave to file under seal granted January 30, 2023 (DE# 1579)** |

### DEFENDANT JOHN KAPOOR'S EMERGENCY MOTION TO MODIFY SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)

Defendant Dr. John N. Kapoor, through counsel, respectfully moves this Court to modify his original sentence of imprisonment pursuant to the First Step Act of 2018, 18 U.S.C. § 3582(c)(1)(A). Specifically, Dr. Kapoor asks the Court to modify his sentence so that he can complete the remainder of his sentence in home confinement, a request that is consistent with the Bureau of Prison's ("BOP") current policies implementing the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (2020).

As grounds, and as set forth more fully below, Dr. Kapoor's health has worsened significantly since he was sentenced by the Court in January 2020. In late December 2022, Dr. Kapoor was rushed to the emergency department of a local hospital following an acute cardiac event. Medical records from that hospital visit show that he had suffered up to two heart attacks at some time prior to the emergency department admission and that his known bradycardia (abnormally slow heart rate) had worsened. Dr. Kapoor was not, however, provided with any treatment for those conditions despite the fact that he is at high risk of another adverse cardiac

1

event. He urgently requires advanced follow-up care, including potential revascularization of the coronary arteries (*e.g.*, placement of a coronary artery stent) and/or pacemaker placement. The long process for obtaining these medical services in prison will easily take longer than the time he has remaining on his sentence and will put him in grave danger, particularly in light of the current COVID-19 outbreak in the unit where he is housed. Were Dr. Kapoor to be transferred to home confinement, on the other hand, he could receive the care swiftly and at his own expense, rather than at taxpayers' expense, and continue to serve his sentence to completion.

Dr. Kapoor is 80 (or possibly 79) years old.[1] He is currently housed in a unit at FPC Duluth with inmates who have tested positive for COVID-19, are quarantining, and/or are showing symptoms of a COVID-19 infection. Social distancing is not possible given the layout of the facility. One inmate in a bed directly opposite him has tested positive. There is no comprehensive method for testing inmates nor are people masking consistently. Each day that Dr. Kapoor continues to be housed at FPC Duluth puts him at serious risk of a potentially deadly COVID-19 infection. In addition, Dr. Kapoor is suffering from a known and worsening constellation of serious medical problems – including ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ – all of which put his health at grave risk and cannot be adequately addressed in a prison setting. He is fortunate that the episode in late December 2022 was not catastrophic, but every day that he spends without the care that he urgently needs presents a serious risk. These extraordinary and compelling circumstances warrant a modification of his sentence so that he can safely complete his remaining sentence through home

---

[1] As this Court knows, there is some uncertainty about Dr. Kapoor's exact age given the lack of clear records of his birth.

confinement.  This is a modest request given that, under existing BOP policies, Dr. Kapoor already is eligible for such a transfer.

This motion is supported by the expert opinions of cardiologists Dr. Michael Gaziano and Dr. Roderick Woods.  Dr. Gaziano received his Medical Doctorate from the Yale University School of Medicine.  He completed his internship and residency, as well as a fellowship in cardiology, at Brigham and Women's Hospital.  Dr. Gaziano has been board certified in cardiovascular disease since 1993.  He is currently a professor at Harvard Medical School, serves as the Chief of the Division of Aging at Brigham and Women's Hospital, and is the Director of the Preventive Cardiology Section and the associated Fellowship Program at the Veterans Affairs Boston Healthcare System.  Dr. Woods received his Medical Doctorate from the Johns Hopkins University School of Medicine, where he also completed his residency. He completed a fellowship in cardiovascular disease at the University of California San Francisco and holds a Master's in Public Health from the Johns Hopkins University School of Public Health.  He is fellowship trained in cardiovascular research, clinical cardiology and interventional cardiology and is board certified in Internal Medicine and Cardiovascular Medicine.  He has over 40 years of experience.

## FACTUAL BACKGROUND

In 2019, Dr. Kapoor was convicted of racketeering charges related to the marketing and sale of Subsys, which is an FDA-approved transmucosal immediate-release fentanyl. This was his first and only interaction with the criminal justice system.  On January 23, 2020, Dr. Kapoor was sentenced to a 66-month term of incarceration to be followed by a 3-year period of supervised release. (DE# 1308). He has been in BOP custody since April 2021 and is incarcerated at FPC Duluth in Duluth, Minnesota.  Dr. Kapoor completed the BOP Residential Drug and Alcohol Program ("RDAP") in February 2022 and has earned numerous other time credits by completing

other FSA programming. His current release date is March 31, 2024, which means that he has fourteen months remaining on his sentence.

A. **Dr. Kapoor's Medical Condition Has Deteriorated Since Sentencing**

Dr. Kapoor has been told by BOP personnel that he is the oldest inmate at FPC Duluth. He is older than at least 97% of inmates incarcerated by BOP today.[2] Since his original sentencing more than two years ago his health has deteriorated substantially.

At the time of his sentencing, Dr. Kapoor was 77 (or 76) years old. His Pre-Sentence Investigation Report ("PSR") stated that he suffered from ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Additionally, Dr. Kapoor was experiencing cardiac symptoms including chest pains and electrocardiogram ("EKG") examinations had returned abnormal results. PSR at ¶ 185-89. Because he was sentenced prior to the pandemic, the PSR did not address nor did the Court consider his health risks in light of COVID-19. Since the sentencing, Dr. Kapoor has suffered a deterioration of his known medical conditions. His life is at serious risk if he does not receive advanced medical care, and he is serving time in the midst of the COVID-19 pandemic.

On December 27, 2022, Dr. Kapoor went to the medical clinic at FPC Duluth and reported that he was experiencing ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. At that time, his heart rate was very slow. These symptoms prompted the BOP medical personnel to send Dr. Kapoor to the local emergency department outside the prison. When he was transported to St. Luke's emergency room, his heart rate was only ▇▇▇▇▇▇▇▇, and during his brief hospital

---

[2] In fact, the percentage is likely quite a bit higher. BOP's reported statistics state that only 2.7% of federal inmates are 65 years of age or older. Dr. Kapoor, at age 80 (or 79), is likely amongst the oldest individuals within that 2.7%. *See* https://www.bop.gov/about/statistics/statistics_inmate_age.jsp.

4

stay it dropped as low as ▮▮▮▮▮▮▮▮▮▮. See Exhibit ("Ex.") 1: Emergency Room Records at 2 ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮."); *id.* at 1 ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮."). Upon examination by a St. Luke's Hospital emergency physician, the "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." *Id.* at 1, 17. Several EKGs were performed and they showed changes that had not been seen on previous EKGs completed in May 2022, indicating that he had suffered a heart attack sometime in the previous seven months. *See id.* at 11-15. Regrettably, Dr. Kapoor was not provided with follow-up cardiac care during this hospitalization, based on an apparent misperception that there was no indication he had suffered damage to his heart. *Id.* at 25. In fact, however, the medical records show that Dr. Kapoor did suffer one or two heart attacks and that his bradycardia has worsened to the point where he potentially needs a pacemaker. He urgently requires "aggressive measures", including to be evaluated by an electrophysiologist (a cardiologist who treats heart rhythm problems) and undergo a cardiac catheterization to evaluate any potential blockages in his coronary arteries. *See* Ex. 2: Letter from Dr. Gaziano; Ex. 3: Letter from Dr. Woods.

  **B.** **Dr. Kapoor Has Acute and Urgent Medical Needs**

  The fact that Dr. Kapoor suffered up to two heart attacks some time before his December 2022 emergency room visit is not surprising given his numerous medical conditions, several of which put him at a high risk of an adverse cardiac event. Most obvious, of course, is the coronary artery disease that caused the heart attack, which must be addressed by an echocardiogram, a cardiac stress test, and/or the performance of a cardiac catheterization by an interventional

cardiologist, and his persistent bradycardia, which requires evaluation by an electrophysiologist. *See* Ex. 3. The bradycardia is a serious problem from which Dr. Kapoor has been suffering for more than a year. *See* Ex. 4: BOP Medical Records at 21 (November 23, 2021 medical record stating that "▮▮▮▮▮▮▮▮▮▮▮▮▮▮"), *id*. at 104 (May 2021 medical record stating that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮). There are many causes of bradycardia, including heart attack, associated heart disease, and untreated obstructive sleep apnea.[3] Bradycardia is an additional sign of systemic vascular disease affecting all of the arteries throughout the body. Prolonged and untreated bradycardia can cause heart failure and has been associated with sudden cardiac arrest.[4]

A BOP physician has attempted to treat Dr. Kapoor's bradycardia by adjusting the medications he takes for heart disease (specifically, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮), *see id.* at 91, but the condition persists. Because the efforts to manage the condition with medication have failed, Dr. Kapoor needs to be evaluated for pacemaker implantation. Indeed, Dr. Gaziano stated that Dr. Kapoor already meets the criteria for a pacemaker. *See* Ex. 2. Unless and until Dr. Kapoor receives this care, he will be at risk of a catastrophic cardiac event. *See* Ex. 3. There is no indication that BOP can ensure he receives this care in a timely manner given that it has been nearly one month since the acute episode and Dr. Kapoor has received no follow-up care.

---

[3] *Bradycardia*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/bradycardia/symptoms-causes/syc-20355474#:~:text=Possible%20complications%20of%20bradycardia%20can,cardiac%20arrest%20or%20sudden%20death.

[4] *Bradycardia: Slow Heart Rate*, Heart.org, https://www.heart.org/en/health-topics/arrhythmia/about-arrhythmia/bradycardia--slow-heart-rate.

Moreover, Dr. Kapoor has additional health problems that further exacerbate these risks. Since entering prison nearly two years ago, he has been diagnosed with peripheral artery disease ("PAD"), which is "the narrowing or blockage of the vessels that carry blood from the heart to the legs. It is primarily caused by the buildup of fatty plaque in the arteries, which is called atherosclerosis."[5] Dr. Kapoor's PAD causes constant and sometimes severe pain in his legs that at times makes it difficult for him to walk. Ex. 5: Letter from John Kapoor. The PAD is evidence that he suffers from atherosclerosis throughout his body, including in the coronary arteries, and reflects a worsening of his cardiovascular health. During his visits to the BOP medical clinic at FPC Duluth, Dr. Kapoor has exhibited signs that his PAD has progressed. Ex. 4 at 5 (noting February 2022 report of worsening symptoms of PAD); *see also id.* at 19, 87. This condition makes it very difficult for Dr. Kapoor to meet the physical demands of incarceration.

Dr. Kapoor also has been diagnosed with severe obstructive sleep apnea, a well-known precursor to heart attack and stroke. Sleep apnea is an obstruction of the upper airway in individuals when they sleep. Prior to his incarceration, Dr. Kapoor was prescribed a CPAP machine to treat his sleep apnea. He brought the machine with him when he self-surrendered to BOP, but in June 2021, that CPAP machine was recalled and Dr. Kapoor's machine was returned. *See* Ex. 6: Certain Philips Respironics Ventilators, BiPAP, and CPAP Machines Recalled Due to Potential Health Risks: FDA Safety Communication. Since the start of the pandemic, BOP has limited inmates' use of CPAP machines because of the concern that they could spread COVID-19. In addition, while some CPAP machines are available to inmates at FPC Duluth, the supplies required to clean and safely use the machines are not available. As a result, Dr. Kapoor has been

---

[5] *Peripheral Arterial Disease (PAD)*, Centers for Disease Control and Prevention, https://www.cdc.gov/heartdisease/PAD.htm.

faced with the unenviable choice of not using a CPAP and thereby increasing his serious health risks or using a machine without the proper supplies, which will expose him to different risks including pneumonia and pneumonitis.  The result is that Dr. Kapoor has gone without his CPAP machine for nineteen months, placing him at high risk. *See* Ex. 7: Letter from Dr. Helene Wechsler; *see also* Ex. 2 (statement of Dr. Gaziano that Dr. Kapoor's sleep apnea should be "carefully monitored and managed to lessen the likelihood that it will impact his heart").

Dr. Kapoor's worsening PAD and obstructive sleep apnea together present serious risks to his health.  Patients diagnosed with PAD are at an increased risk of stroke.  Ex. 8: Peter M. Rothwell et al., *Associations Between Peripheral Artery Disease and Ischemic Stroke: Implications for Primary and Secondary Prevention*, Stroke, Volume 41, Issue 9, 1 September 2010; Pages 2102-2107 (stating that "[a]symptomatic and symptomatic patients with PAD have increased stroke/TIA risk compared with patients without PAD").  Dr. Kapoor's sleep apnea likewise renders him more susceptible to stroke or cardiac problems and increases his risk of other health problems, including dementia.

Separate from his known and worsening heart and vascular disease, bradycardia, and sleep apnea, Dr. Kapoor also has been suffering from ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬, yet has not been able to undergo the testing needed to diagnose a potential clotting disorder.  *See*, *e.g*., Ex. 3 at 27, 49, 55, and 87 (June 22, 2021 record noting ▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬).

To mitigate the very serious health risks he currently faces, Dr. Kapoor has undertaken a weight loss program and has lost 20 pounds, which has improved his blood pressure readings. However, there is nothing he can do to reduce the risk posed by his heart disease, PAD, bradycardia, and untreated sleep apnea.  These are very serious concerns in a man who is eighty

years old, who has a significant family history of deadly heart disease, *see* Ex. 4 at 151, and who has recently suffered an acute cardiac event that could be a precursor to a devastating cardiac event.

## C. Other Family Circumstances

Prior to his incarceration, Dr. Kapoor was the primary source of emotional support for numerous members of his family. He held a medical power of attorney for his brother, Robert Kapoor, who became permanently disabled and housebound in 1991 following carbon monoxide poisoning. Before he reported to prison, Dr. Kapoor communicated with Robert daily. This emotional and mental support was vital to Robert's well-being given his disability and worsening dementia. Robert's mental health has plummeted over the last twenty-one months without the daily communication from his brother that he had come to depend on over the last twenty years. Ex. 9: Letter from Dr. Gerald Osher. This is another extraordinary and compelling circumstance that supports the request set forth in this motion.

## **ARGUMENT**

Dr. Kapoor has only fourteen months left on his sentence. Unfortunately, if the status quo remains and he is required to complete those months in BOP custody, he may not outlive his incarceration. This risk is no longer simply theoretical; Dr. Kapoor has had one or two acute cardiac events and every day that passes without treatment puts him at risk of another. There is no question that the risks facing Dr. Kapoor during his incarceration at FPC Duluth are much greater than the health risk he would face in home confinement, where he would be able to receive treatment for his medical conditions, including specialized care from a board-certified electrophysiologist and interventional cardiologist, and safely use a CPAP machine every night. Given Dr. Kapoor's poor health and the current COVID-19 outbreak at FPC Duluth, the risks he is facing, his advanced age, his status as a first-time non-violent offender, and the very high

likelihood that he will succeed in home confinement, a modest sentence adjustment to facilitate a transfer to home confinement is warranted under both the FSA and the CARES Act.

### A. Relief Is Appropriate Under the FSA

#### 1. Relevant Legal Standards

Section 3582(c) of the First Step Act provides that upon the motion of the Director of BOP or a defendant, a court may "reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction." *Id*. § 3582(c)(1)(A). A defendant who seeks a change in sentence under this provision must show, therefore, that his request is supported by "extraordinary and compelling reasons," that he does not present a danger to the public, and that adjustment is appropriate based on an analysis of the sentencing factors set forth in Section 3553(a). These factors include "provid[ing] the defendant with needed [ . . .] **medical care**, **or other correctional treatment in the most effective manner**," *id*. § 3553(a)(1)(D) (emphasis added) and "the kinds of sentences available," *id*. § 3553(a)(3).[6]

Under § 3582(c)(1)(A)(ii), a court that considers a motion for compassionate release under the FSA should evaluate whether the request for a sentence reduction "is consistent with applicable policy statements issued by the Sentencing Commission." One such policy statement is U.S.S.G.

---

[6] Section 3582 also includes an administrative exhaustion requirement. However, the First Circuit recently held that failure to administratively exhaust a compassionate release request is not a jurisdictional defect foreclosing consideration by a district court. *United States v. Texeira-Nieves*, 23 F.4th 48 (1st Cir. 2022). In any event, Dr. Kapoor has satisfied the exhaustion requirement. He has twice requested and twice been denied compassionate release from the Warden of FPC Duluth. *See* Ex. 10: Letters from Warden.

§ 1B1.13, which was promulgated by the Sentencing Commission to govern motions under § 3582(c)(1)(A). Importantly, § 1B1.13 predates the FSA and was issued at a time when BOP had the sole authority to bring motions for release under § 3582(c)(1)(A). Thus, the U.S. Court of Appeals for the First Circuit and many other federal circuit courts have held that §1B1.13 applies only to motions filed by the BOP, not to motions filed by defendants. *United States v. Ruvalcaba*, 26 F.4th 14, 16 (1st Cir. 2022) ("After careful consideration, we hold that a district court — when adjudicating a prisoner-initiated motion for compassionate release — is not bound by the Sentencing Commission's current policy statement.").

Although the federal courts are not cabined by the Sentencing Guidelines in determining what qualifies as "extraordinary and compelling," *see Ruvalcaba*, 26 F.4th at 21, they nevertheless provide useful guidance. The Guidelines state that "a medical condition qualifies as an 'extraordinary and compelling' reason for release if it is a 'serious physical or medical condition,' a 'serious functional or cognitive impairment,' or 'deteriorating physical or mental health because of the aging process' that is severe enough to 'substantially diminish[ ] the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.'" *United States v. Mackenzie*, 458 F. Supp. 3d 53, 55 (D. Mass. 2020) (Saylor, J.) (quoting U.S.S.G. § 1B1.13 cmt. n.1(A)).

### 2. Dr. Kapoor's Age, Poor Health, and Medical Needs Constitute Extraordinary and Compelling Circumstances Justifying A Change in Sentence.

Dr. Kapoor's age, poor health and complex medical needs, and the limitations on the medical care that he can receive while in BOP custody during the pandemic together present extraordinary and compelling reasons to adjust his sentence so that he can serve the remaining fourteen months in home confinement. For the reasons outlined above, it is crucial that Dr. Kapoor

11

receive advanced cardiac care immediately. Each day that passes without addressing his coronary artery disease and heart rhythm problems increases his risk of sudden death or catastrophic illness.

The record of medical care received by Dr. Kapoor over the last 21 months establishes the limitations on what can be provided by BOP and shows that he is very unlikely to receive the care he needs in a timely manner. Dr. Kapoor has been provided with no follow-up care for the heart attack he suffered during his incarceration, nor has BOP provided him with adequate treatment for his bradycardia despite it having persisted now for more than a year. His apparent clotting disorder, which arose in the time he has been incarcerated, is as yet undiagnosed and worsening. *See supra*. He has gone without treatment for his obstructive sleep apnea for the last 21 months, which is a further risk factor for another cardiac event.

Dr. Kapoor's inability to receive the needed treatment for his cardiac conditions presents an extraordinary and compelling circumstance justifying the relief requested in this motion. *See, e.g.*, *United States v. Patton*, No. 2:02-CR-93, 2023 WL 144115, at *1–3 (W.D. Pa. Jan. 10, 2023) (finding extraordinary and compelling circumstances where defendant suffered a serious heart attack while incarcerated); *United States v. Calhoun*, 539 F. Supp. 3d 613, 616 (S.D. Miss. 2021) (finding extraordinary and compelling circumstances where sixty-five-year-old defendant suffered a heart attack while incarcerated). As Dr. Gaziano explained in his letter summarizing his opinions and recommendations based on his review of Dr. Kapoor's emergency room records, Dr. Kapoor has already suffered one or two heart attacks, and requires aggressive measures to manage all cardiovascular risk, including the placement of a pacemaker. Dr. Woods also explained in his letter that Dr. Kapoor's ongoing symptoms indicate that he is at risk of another adverse cardiac event, which risk will persist unless and until he is examined and treated by both an electrophysiologist (to diagnose and treat his heart rhythm problem) and an interventional

12

cardiologist (to determine which, if any, of his coronary arteries are blocked and putting his heart muscle at risk). Dr. Woods concluded based on his review of Dr. Kapoor's records that this specialized care is urgently needed, and that a delay in this treatment could have catastrophic results. Put simply, if Dr. Kapoor must wait months for this care, his life will be in jeopardy.

The deprivation of adequate treatment for obstructive sleep apnea also has been determined to constitute extraordinary and compelling circumstances in a number of cases throughout the United States, as this issue has arisen repeatedly due to the risks of using such a machine in a congregate setting during the pandemic. In *United States v. Nuzzolilo*, 517 F. Supp. 3d 40 (D. Mass. 2021), the BOP facility at issue, FCI Schuylkill, had a COVID-19 policy that "prohibit[ed] use of CPAP machines by inmates, but purport[ed] to allow those who have severe/life threatening sleep apnea to use them." *Id*. at 43. Judge Hillman determined that Mr. Nuzzolilo's serious health problems including Type II diabetes, high cholesterol, obesity, and severe obstructive sleep apnea, combined with the living conditions in the prison and the facility's refusal to permit him to use a CPAP, "constitute[d] extraordinary and compelling reasons for a reduction of his sentence under § 3582(c)(1)(A)." *Id.*; *see also United States v. Page*, No. 3:15-CR-00055 (AWT), 2020 WL 7258034, at *1 (D. Conn. Dec. 10, 2020) (recognizing that sleep apnea can lead to the development "of cardiac arrhythmia, heart attack and stroke").

*Nuzzolilo* is instructive here. Although Dr. Kapoor theoretically could obtain a CPAP machine from BOP, presuming the medical personnel at FPC Duluth found his sleep apnea severe enough to warrant its issuance, it would be unsafe to do so because of the lack of appropriate supplies. And the risk being borne by Dr. Kapoor because of this lack of care is much more severe than it was in *Nuzzolilo*. Dr. Kapoor is 80 (or 79) years old, already has suffered one or two heart attacks and is at risk for another, as well as for a stroke or other vascular event, given his active

PAD, bradycardia, systemic atherosclerosis, and apparent clotting disorder for which he is receiving no treatment.

Moreover, Dr. Kapoor also is at risk of contracting COVID-19 while incarcerated at FPC Duluth. Just this month, one of the inmates housed on his floor in the prison tested positive for COVID-19, and other inmates have been placed in quarantine. At his age and with serious comorbidities, Dr. Kapoor is already a high-risk patient, and a COVID-19 infection would put his life at risk. *See United States v. Belanger,* No. 1:15-cr-00072-JDL, 2020 WL 5351028, at *3 (D. Me. Sept. 4, 2020) (recounting CDC guidance stating that COVID-19 poses increased risks for people over the age of 60). And although Dr. Kapoor has been vaccinated against the COVID-19 virus approximately six months ago, this does not foreclose the possibility of compassionate release given his advanced age and underlying health conditions. *United States v. Moe*, 571 F. Supp. 3d 267, 273 (D.N.J. 2021) (holding that compassionate release was warranted for elderly and ill defendant, vaccination status notwithstanding).

Dr. Kapoor's urgent need for further treatment from cardiologists, his myriad health conditions, his advanced age, the lack of adequate medical care that he is receiving at FPC Duluth, and the worsening COVID-19 outbreak at that facility, taken together, unquestionably constitute the sort of "extraordinary and compelling" reasons that justify a modification of his sentence.[7] *See United States v. Braccia*, No. 19-cr-202, 2021 WL 322895 (E.D. Pa. Feb. 1, 2021) (court ordered the release of a defendant slightly less than halfway through his 37-month sentence due to a combination of his medical conditions, an ongoing COVID-19 outbreak in the prison, and lack of access to a CPAP machine); *United States v. Miller,* No. 18-cr-30034, 2020 WL 4366088 (C.D.

---

[7] Unlike his co-defendant Rich Simon, who merely complained of ear pain and an injured wrist, Dr. Kapoor has suffered one or two heart attacks and faces extraordinary and compelling medical conditions warranting a modification of his sentence. (DE# 1570).

Ill. July 30, 2020) (release warranted where, amongst other factors, CPAP machine was not provided to defendant for treatment of sleep apnea and underlying medical conditions); *cf. United States v. Hargrove*, 30 F.4th 189 (4th Cir. 2022) (denial of compassionate release warranted where, *inter alia*, sleep apnea was well controlled due to use of CPAP).

### 3. The Section 3553(a) Factors Support a Transfer to Home Confinement

As noted above, compassionate release under the FSA is appropriate where there are extraordinary and compelling circumstances (such as when an individual is at high risk of an adverse cardiac event and cannot receive adequate medical care in prison) and the release otherwise comports with statutory sentencing criteria. *United States v. Ramirez*, 459 F.Supp.3d 333 (D. Mass. 2020) (Young, J.). An analysis of the statutory sentencing criteria set forth in 18 U.S.C. § 3553(a) support the conclusion that it would be appropriate for Dr. Kapoor to serve the remainder of his sentence in home confinement.

Dr. Kapoor is a first-time, non-violent offender who presents zero risk of recidivism or future danger to the public. *Id.* § 3553(a)(1). Obviously, the Court must ensure that Dr. Kapoor's sentence reflects the seriousness of his offense, *see id.* § 3553(a)(2), and granting this motion is not at odds with that goal. The way in which Dr. Kapoor's incarceration has negatively impacted him due to his unique characteristics must be considered. Dr. Kapoor is elderly and in poor health. Having served more than 21 months in prison during a global pandemic and without necessary medical care has been extremely difficult and dangerous. Because of his heart disease, PAD, and bradycardia, he is frequently in pain. He battles severe fatigue due to his slow heart rate that is exacerbated by his inability to sleep because of untreated sleep apnea. He is in a constant state of worry because he knows that, without a CPAP machine, he is at an increased risk of a heart attack or stroke like the one that killed his father. His PAD is increasingly painful and makes it hard to

walk, and he has bruises that will not heal and cannot secure a diagnosis, let alone treatment, for them. Over the past two years, his hearing has deteriorated and he needs hearing aids but has been waiting many months for them to be provided, while in the meantime he has difficulty hearing instructions via the prison intercom system. Serving time in a federal prison is punitive for any inmate, but for Dr. Kapoor, it has been an especially severe punishment.

Similarly, there is no question that the need for Dr. Kapoor's sentence to achieve adequate specific and general deterrence has been satisfied. *See id.* § 3553(a)(2)(B). Dr. Kapoor's prosecution, conviction, and prison sentence were heavily publicized both by the Department of Justice and the press, and his punishment, along with those of his former colleagues, sent shock waves throughout the pharmaceutical industry. Additionally, Dr. Kapoor is the only Insys defendant to remain in prison. *Id.* § 3553(a)(6). He has paid very substantial restitution in this case and a transfer to home confinement will have no impact on restitution. *Id.* § 3553(a)(7). And finally, as has been explained throughout this motion, BOP is unable to provide Dr. Kapoor with adequate medical care given his unique circumstances. *See id.* § 3553(a)(2)(D). All of the § 3553 factors support the conclusion that Dr. Kapoor is entitled to compassionate release under the FSA.

### B. A Transfer To Home Confinement Is Warranted Under the CARES Act

Dr. Kapoor's request that his sentence be modified to permit him to complete his remaining fourteen-month sentence in home confinement is also appropriate in light of the provisions of the CARES Act. Given that he is already eligible to transfer to home confinement under that statute, and all inmates are regularly transferred to home confinement when they have six months remaining on their sentences regardless of whether they seek such relief under the CARES Act, *see* 18 U.S.C. § 3624(c)(2). Dr. Kapoor's request is a modest one.

An inmate's ability to secure a transfer to home confinement under the CARES Act depends on the extent to which he or she has earned time credits under the FSA. As noted earlier, Dr. Kapoor has earned more than enough credits for this purpose. However, because of difficulties within BOP since the implementation of both the FSA and CARES Act, BOP has acted slowly to award inmates the relief to which they are entitled. Indeed, Dr. Kapoor would likely already be in home confinement if BOP calculated inmates' credits more quickly. Dr. Kapoor does not challenge the computation of his credits, but respectfully submits that his eligibility for home confinement under the CARES Act, though not yet implemented, further supports his request for compassionate release to home confinement, which will both allow him to benefit from the time credits he rightfully earned while incarcerated and afford him the chance to receive life-saving medical care.[8]

## CONCLUSION

Dr. Kapoor's advanced age and complex health conditions have placed him in grave danger of a serious cardiac event, particularly when coupled with the inadequate medical care that he has received while in BOP custody. These conditions also render him uniquely susceptible to COVID-19. The extraordinary and compelling circumstances related to Dr. Kapoor's poor health and the other factors addressed in this motion justify a sentence modification under the FSA so that he can complete the final fourteen months of his sentence in home confinement.

Dr. Kapoor has been incarcerated for nearly two years during the worst global pandemic the world has seen in more than a century. He has been deeply punished. At present, under BOP

---

[8] To effectuate this request, the Court could "reduce a sentence to time served, impose a term of supervised release equal to the unserved portion of the term, and order home confinement as a condition of supervised release." *See United States v. Texeira-Nieves*, 23 F.4th 48, 59 (1st Cir. 2022).

17

policy he will be moved to home confinement by BOP in just eight months. This motion simply asks that his sentence be modified so that he can be transferred to home confinement sooner and receive the urgent treatment he requires to protect his already fragile health while serving the remainder of his sentence. The interests of justice would be served if Dr. Kapoor were allowed to complete his sentence in home confinement, a setting that undoubtedly would reduce the grave risks to his health. This would permit him to avail himself of medical care in the community, at his own expense, and allow him to better address his own urgent medical needs.

Dated: January 31, 2023               Respectfully submitted,

**John N. Kapoor**

By his attorneys,

*/s/ Brian T. Kelly*
Brian T. Kelly (BBO No. 549566)
NIXON PEABODY LLP
53 State Street
Boston, MA 02109
(617) 345-1000
bkelly@nixonpeabody.com

Beth A. Wilkinson (admitted *pro hac vice*)
bwilkinson@wilkinsonstekloff.com
Kosta S. Stojilkovic (admitted *pro hac vice*)
kstojilkovic@wilkinsonstekloff.com
Wilkinson Stekloff LLP
2001 M Street NW
Washington, D.C. 20036
Telephone: (202) 847-4000

**LOCAL RULE 7.1(A)(2) CERTIFICATION**

The undersigned has conferred with government counsel regarding this motion and government counsel has indicated he needs additional time to review this motion before taking a position as to its merits.

*/s/ Brian T. Kelly*
Brian T. Kelly

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was filed electronically on January 31, 2023, and thereby delivered by electronic means to all registered participants as identified on the Notice of Electronic Filing.

*/s/ Brian T. Kelly*
Brian T. Kelly